**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **DIGITALSPEED COMMUNICATIONS, INC.,** | : | **Case No. 25-10500 (AMC)** |
| | : | |
| **Debtor.** | : | |
| | : | |

**MOTION OF DEBTOR FOR AN ORDER (A) AUTHORIZING THE DEBTOR TO PAY CERTAIN PRE-PETITION (I) WAGES, SALARIES, AND OTHER COMPENSATION AND (II) REIMBURSABLE EMPLOYEE EXPENSES; (B) CONFIRMING THAT THE DEBTOR MAY CONTINUE PRE-PETITION EMPLOYEE PROGRAMS IN THE ORDINARY COURSE OF BUSINESS; AND (C) DIRECTING BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

DigitalSpeed Communications, Inc. (the "Debtor"), by and through its proposed counsel, Karalis PC, hereby moves this Honorable Court for the entry of an Order (a) authorizing, but not directing, the Debtor to pay certain pre-petition (i) wages, salaries, and other compensation and (ii) reimbursable employee expenses; (b) confirming that the Debtor may continue its pre-petition employee benefit programs in the ordinary course of business; and (c) authorizing and directing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing (the "Motion"), and in support thereof, respectfully represents as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue of this proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a), 363(b)(1), 363(c)(1), 507(a)(4), 507(a)(5), 541(b), and 1129(a)(9)(B) and Fed. R. Bankr. P. 6003.

## BACKGROUND

4. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under Title 11 of the United States Code (the "Bankruptcy Code").

5. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

6. A description of the Debtor's business and the facts precipitating the filing of its Chapter 11 proceeding is set forth in the Declaration of Adam H. Pasternack in Support of Chapter 11 Petition and First Day Motions (the "Pasternack Declaration") filed contemporaneously herewith. Those facts, to the extent relevant, are incorporated herein by reference.

### A. Employees, Programs, and Benefits.

7. As of the Petition Date, the Debtor employed two (2) employees (the "Employees").

8. The Employees' skills and their knowledge and understanding of the Debtor's operations and infrastructure are essential to the Debtor's business.

9. Just as the Debtor depends on its Employees to operate, the Employees depend on the Debtor. The Debtor's Employees rely exclusively on their compensation to continue to pay their daily living expenses and these Employees will be exposed to significant financial difficulties if the Debtor is not permitted to pay them their full unpaid compensation in the ordinary course of business.

10. To minimize the personal hardship that the Employees would suffer if pre-petition Employee-related obligations are not paid when due or as expected, and to maintain morale and stability in the Debtor's workforce during this critical time, the Debtor, by this Motion, seeks authority to pay and honor, in its sole discretion, certain pre-petition claims for, among other items: wages, salaries, and other compensation, federal and state withholding

taxes and other amounts withheld (including, garnishments and taxes), vacation time, and all other benefits that the Debtor has historically provided in the ordinary course of business (collectively, and as more fully described below, the "Employee Obligations") and to pay all costs incident to the foregoing. In an abundance of caution, the Debtor requests the right to modify, change, and discontinue any of its employee compensation in the ordinary course of business during this Chapter 11 case in its sole discretion without the need for further Court approval.

**B. Employee Obligations.**

**1. Unpaid Compensation**

11. In the ordinary course of business, the Debtor incurs payroll obligations to the Employees. Such obligations generally comprise wages and salaries. The Debtor pays its Employees bi-weekly. The last payroll period ended on January 31, 2025.

12. The next payroll is scheduled to be paid on February 14, 2025 and will cover the two (2) week period from February 1, 2025 through February 14, 2025. On average, the Debtor has gross wage and salary expense of approximately $20,000.00 each payroll period.

13. The Debtor uses ADP to process its payroll, pay its taxes, and issue direct deposits.

14. As of the Petition Date, the Employees may not have been paid all of their pre-petition wages, commissions, and compensation. Additionally, some Employees may be entitled to compensation because some checks issued to Employees prior to the Petition Date may not have been presented for payment or may not have cleared the banking system and, accordingly, have not been honored and paid as of the Petition Date (the "Uncashed Checks").

15. The Debtor estimates that, as of the Petition Date, approximately $5,900.00 in pre-petition accrued wages and salaries earned prior to the Petition Date (together with the Uncashed

Checks, the "Unpaid Compensation"). To the extent that there may be uncashed payroll checks as of the Petition Date, the Debtor seeks authority, but not direction, to pay the Unpaid Compensation, along with any costs associated therewith.

16. To the extent any other Unpaid Compensation exceeds the statutory priority cap imposed by sections 507(a)(4) and (5) of the Bankruptcy Code, such payments will be limited to $15,150.00. The Debtor is not hereby seeking authority to pay any of the Employees on account of pre-petition accrued wage obligations in excess of the $15,150.00 priority cap.

**2. Deductions and Withholdings**

17. During each applicable pay period, the Debtor, though ADP, routinely deducts certain amounts from Employees' paychecks, including, without limitation, (a) garnishments, child support, and similar deductions and (b) other pre-tax and after-tax deductions (collectively, the "Deductions"). The Debtor, though ADP, forwards the amount of the Deductions to the appropriate third-party recipients. Due to the commencement of the Chapter 11 case, however, certain Deductions that were deducted from Employees' earnings may not have been forwarded to the appropriate third-party recipients prior to the Petition Date. Accordingly, the Debtor requests authority, but not direction, to forward any unpaid Deductions to the appropriate third-party recipients and to continue to forward these pre-petition Deductions to the applicable third-party recipients on a post-petition basis, in the ordinary course of business as routinely done prior to the Petition Date.

18. Further, the Debtor is required by law to withhold from an Employee's wages amounts related to federal, state and local income taxes, Social Security and Medicare taxes for remittance to the appropriate federal, state, or local taxing authority (collectively, the "Withheld Amounts"). The Debtor must then pay Social Security and Medicare taxes and

pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (collectively, the "Employer Payroll Taxes").

19. Prior to the Petition Date, the Debtor, though ADP, withheld the appropriate amounts from Employees' earnings for the Withheld Amounts and the Employer Payroll Taxes (collectively, the "Payroll Taxes"), but such funds may not yet have been forwarded to the appropriate taxing authorities. The Debtor requests authority, but not direction, to forward any outstanding Payroll Taxes to the appropriate third-parties, and to continue to honor and process the pre-petition payments for Payroll Taxes on a post-petition basis, in the ordinary course of business, as routinely done prior to the Petition Date.

**3. Honoring Checks for, and Payment of, Reimbursable Expenses**

20. Prior to the Petition Date and in the ordinary course of its operations, the Debtor reimbursed Employees for certain reasonable and customary expenses incurred on behalf of the Debtor in the scope of their employment (the "Reimbursable Expenses"). In addition, it is possible that certain Employees may have incurred pre-petition expenses for which they have not yet submitted requests for reimbursement and will submit such requests to the Debtor after the Petition Date.

21. Reimbursable Expenses are all incurred on the Debtor's behalf and with the understanding that they will be reimbursed. Accordingly, to avoid harming Employees who may have incurred the Reimbursable Expenses, the Debtor requests authority, to be exercised in its sole discretion, to (a) continue paying Reimbursable Expenses in accordance with pre-petition practices, (b) modify its pre-petition policies relating thereto as it deems appropriate, and (c) pay all Reimbursable Expenses that relate to the pre-petition period and are submitted to the Debtor post-petition.

22. The Reimbursable Expenses owed to the Employees on a monthly basis are approximately $950.00, plus a vehicle reimbursement in the amount of $846.90.

23. The Debtor estimates that, as of the Petition Date, approximately $400.00 are owed to the Employees for Reimbursable Expenses.

**C. Employee Benefits.**

24. The Debtor offers the Employees the ability to participate in a number of discretionary insurance and benefits programs including term life insurance, accidental death and dismemberment insurance, short term and long term disability plans and a 401(k) plan (collectively, the "Employee Benefit Programs").

**1. Insurance and Disability Plans**

25. The Debtor offers the Employees health insurance, but they opted out and are on their respective spouse's health insurance plans.

26. The Debtor offers term life insurance and accidental death and dismemberment insurance to its Employees (the "Insurance"). The Debtor also offers short term and long term disability plans to its Employees (the "Disability Plans").

27. By this Motion, the Debtor seeks authority, in its sole discretion, to (a) continue the Insurance and Disability Plans for its Employees in the ordinary course of business, (b) continue making contributions to such benefit programs, and (c) pay any amounts related thereto, including on account of any premiums, claim amounts, and administration fees to the extent that they remain unpaid as of the Petition Date.

**2. Vacation and Other Leaves of Absence**

28. The Debtor provides vacation time to its Employees as a paid time-off benefit (the "Vacation Time"). The amount of Vacation Time is one hundred and sixty (160) hours per year.

When an Employee elects to take Vacation Time, that Employee is paid his or her regular hourly or salaried rate. The Debtor also pays its Employees for holidays.

29. The Debtor also allows its Employees to take certain other leaves of absence for personal reasons, many of which are required by law (the "Leaves of Absence"). Leaves of Absence include sick leave, bereavement, military leaves, jury duty, and voting leaves.

30. By this Motion, the Debtor requests that it be authorized, but not directed, to continue to honor its Vacation Time and Leaves of Absence policies in the ordinary course of business, and to honor and pay any pre-petition amounts related thereto. Moreover, the Debtor anticipates that its Employees will utilize any accrued Vacation Time and Leaves of Absence in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtor's normal payroll obligations.

**3. 401(k) Plan**

31. The Debtor maintains a traditional 401(k) retirement plan meeting the requirements of the Internal Revenue Code for the benefit of Employees (the "Retirement Plan").

32. The Debtor matches up to four percent (4%) of the Employees' contributions.

33. By this Motion, the Debtor seeks confirmation that it may continue the Retirement Plan in the ordinary course of business.

## RELIEF REQUESTED

34. By this Motion, the Debtor seeks: (i) authority to pay and honor, in the ordinary course of business and in its sole discretion, pre-petition claims and obligations related to (a) Unpaid Compensation, (b) Deductions and Payroll Taxes, (c) Reimbursable Expenses, and (d) the Employee Benefit Programs, all as defined and described herein.

35. In addition, the Debtor requests that banks and other financial institutions be authorized and directed to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. The Debtor also requests that all such banks and financial institutions be authorized to rely on the Debtor's designation of any particular check or electronic payment request as appropriate pursuant to this Motion.

36. Courts in chapter 11 cases have previously approved the same or substantially similar relief as requested herein. *See*, *e.g.*, *Turning Points for Children*, Case No. 24-11479(AMC) (Bankr. E.D. Pa. May 3, 2024); *In re New Way Machine Components, Inc.*, Case No. 24-11362(AMC) (Bankr. E.D. Pa. April 25, 2024); *In re Domus BWW Funding, LLC*, Case No. 22-11162(AMC) (Bankr. E.D. Pa. May 11, 2022); *In re Roosevelt Inn, LLC*, Case No. 21-11697(AMC) (Bankr. E.D. Pa. June 21, 2021); *In re Cooper-Booth Wholesale Company, L.P.,* Case No. 13-14519 (MDC) (Bankr. E.D. Pa. May 23, 2013); *In re Pennfield Corporation,* Case No. 12-19430 (BIF) (Bankr. E.D. Pa. October 10, 2012); *In re The Philadelphia Orchestra Assoc.*, Case No. 11-13098 (ELF) (Bankr. E.D. Pa. April 20, 2011); *In re Lower Bucks Hospital*, Case No. 10-10239 (ELF) (Bankr. E.D. Pa. January 15, 2010); *In re Philadelphia Newspapers Inc.*, Case No. 0911204 (SR) (Bankr. E.D. Pa. Feb. 22, 2009); *In re Tropicana Entm't, LLC*, No. 0810856 (KJC) (Bankr. D. Del. May 6, 2008); *In re Leiner Health Prods. Inc.*, No. 08-10446 (KJC) (Bankr. D. Del. April 9, 2008); *In re Wickes Holdings, LLC*, No. 08-10212 (KJC) (Bankr. D. Del. Feb. 5, 2008); *In re Tweeter Home Entm't Group, Inc.*, No. 07-10787 (PJW) (Bankr. D. Del. June 13, 2007); *In re Pope & Talbot, Inc.*, No. 07-11738 (CSS) (Bankr. D. Del. Nov. 21, 2007); *In re Hancock Fabrics, Inc.*, No. 07-10353 (BLS) (Bankr. D. Del. Mar. 22, 2007).

## Basis for Relief

**A. Sufficient Cause Exists for the Court to Authorize the Debtor to Honor Employee Obligations**

37. The Debtor seeks authority to satisfy its Employee Obligations to ensure the continued operation of the Debtor's business and to maintain the morale of its Employees, many of whom would suffer extreme personal hardship and financial difficulty if they are not paid. In addition, the Employee Benefit Programs are an important part of each Employee's total compensation. The Debtor estimates that the aggregate cost of providing the Employee Benefit Programs pales in comparison to the value generated by the Debtor's workforce. Moreover, as with non-payment of wages or reimbursable expenses, any indication that the Employee Benefit Programs may disappear or may not be honored will prove detrimental to the Debtor's operations.

38. Paying pre-petition wages and employee benefits will benefit the estate and its creditors by allowing the Debtor's operations to continue without interruption. Indeed, the Debtor believes that without the requested relief, the Employees may seek alternative employment opportunities, perhaps with the Debtor's competitors. Such a development would deplete the Debtor's workforce, hindering the Debtor's ability to meet its customer obligations and, likely, diminishing stakeholder confidence in the Debtor's ability to operate successfully. The loss of valuable Employees and the resulting recruitment of new employees that would be necessary to find replacements of the caliber of the Debtor's current Employees would be distracting and costly at this critical time when the Debtor is stabilizing operations and continuing operational restructuring in Chapter 11. Further, if the Debtor loses valuable Employees, it will incur recruiting expenses in locating replacement staff. Accordingly, there can be no doubt that the Debtor must do its utmost to retain its workforce by, among other

things, continuing to honor all wage and related obligations, including the Employee Obligations that accrued pre-petition.

**1. Payment is Appropriate Pursuant to Section 105(a)**

39. The Court may authorize payment of pre-petition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See*, 11 U.S.C. § 105(a). Under section 105(a), courts may permit pre-plan payments of pre-petition obligations when essential to the continued operation of the debtor's business. Specifically, the Court may use its power under section 105(a) to authorize payment of pre-petition obligations pursuant to the "doctrine of necessity."

40. The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of pre-petition claims if such payment was essential to the continued operation of the debtor. See, Id. (stating that court may authorize payment of pre-petition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"). *See also*, *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-845 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, Debtor may pay pre-petition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 19192 (Bankr. D. Del. 1994) (same).

41. The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." *See*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). *See also*, *Just For Feet*, 242 B.R. at 826 (finding that payment of pre-petition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment"); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of pre-petition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation . . ." is appropriate); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateauguay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of pre-petition worker's compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 3 COLLIER ON BANKRUPTCY, 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay pre-petition claims immediately).

42. Courts also have permitted post-petition payment of pre-petition claims pursuant to section 105(a) in other situations, such as if nonpayment of a pre-petition

obligation would trigger a withholding of goods or services essential to the Debtor's business reorganization plan. *See*, *Ionosphere Clubs*, 98 B.R. at 167-77 (finding that section 105 empowers bankruptcy courts to authorize payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor).

43. This flexible approach is particularly critical where a pre-petition creditor provides vital goods or services to a debtor that would be unavailable if the Debtor did not satisfy its pre-petition obligations. In *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court stated that "a bankruptcy court may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of pre-petition claims where such payment is necessary, to permit the greatest likelihood of survival of the Debtor and payment of creditors in full or at least proportionately. The court explained that "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *See*, *Id.* at 932.

**2. The Proposed Payments Are Accorded Priority Under Section 507**

44. Moreover, all of the Employees' pre-petition wages and other benefits and compensation that the Debtor seeks to pay under the authority sought hereby would be entitled in any event to priority treatment to the extent of $15,150.00 for each individual under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. To the extent that the aggregate amount of such claims accrued prior to the Petition Date exceeds this cap, the Debtor does not seek authority at this time to pay such excess amounts. As priority claims, the Debtor is required to pay these claims in full to confirm a chapter 11 plan. *See*, 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions for contributions to an employee benefit plan). Thus, granting the relief sought herein would only cause such employee

claims to be paid early in the cases, instead of waiting until confirmation, to the extent they constitute priority claims.

45. Indeed, "wage priority has been a feature of the bankruptcy law since 1898." *See*, *In re Garden Ridge Corp.*, No. 04-10324, 2006 WL 521914, at *2 (Bankr. D. Del. Mar. 2, 2006) (quoting *4 Collier on Bankruptcy*, § 507.05[1] (15th Ed. 2005)). "Its purpose is to 'alleviate hardship on workers...' who may have no other source of income and 'to encourage employees to stand by an employer in financial difficulty.' This priority extends to certain other 'benefits that are considered akin to compensation, such as vacation, severance and sick leave pay.'" *See*, *Id.*

46. The Debtor's failure to pay these amounts will devastate morale at a critical time in the Debtor's operations. In addition, all of these amounts have arisen in the ordinary course of the Debtor's operations and are reasonable in relation to the value of the services rendered.

**3. The Proposed Payments Are Appropriate Under Section 363(b)**

47. The Court may also grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code. Section 363 provides that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *See*, 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain pre-petition claims. *See*, *Ionosphere Clubs, Inc.*, 98 B.R. at 175 (affirming lower court order authorizing payment of pre-petition wage claims pursuant to section 363(b)). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *See*, *Id.* at 175.

48. Payment of pre-petition compensation in order to preserve and protect a debtor's business by maintaining the morale and dedication of a debtor's workforce is clearly a sufficient business justification. Accordingly, the payments should be permitted.

**4. Payment of the Deductions and Payroll Taxes is Appropriate Under Section 541**

49. In addition, as part of the relief requested herein, the Debtor seeks authority to pay to the appropriate entities the Deductions and the Payroll Taxes. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' paychecks. Indeed, certain Deductions, such as child support and alimony payments, are not the Debtor's property, but rather, have been withheld from Employees' paychecks on another party's behalf. *See*, 11 U.S.C. § 541(b). Moreover, the Debtor and its officers are required by federal or state laws to make certain tax payments that have been withheld from their Employees' paychecks. *See*, 26 U.S.C. §§ 6672 and 7501(a). *See also*, *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting individual officers of a company may be held personally liable for failure to pay trust fund taxes). Further, because the Deductions and Payroll Taxes are not property of the Debtor's estate, these amounts are not subject to the normal bankruptcy prohibitions against payment. *See*, *In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998). The Debtor, therefore, requests that the Court confirm that such trust fund withholding is not property of the Debtor's estate and that the Debtor may transmit the Payroll Taxes to the proper parties in the ordinary course of business.

50. It is also important to note that at this time, the Debtor does not seek to assume any executory contracts or obligations, and the Motion should not be deemed to be an

assumption or adoption of any employee agreements or policies. Rather, the Debtor merely seeks to take steps that it believes to be necessary to keep its existing workforce intact to maximize the value of the bankruptcy estate. Also, the Debtor will retain the discretion to not make the payments contemplated by the Motion for particular Employees, and nothing in the Motion shall, in and of itself, confer upon any Employees or other parties an entitlement to administrative priority or other preferences in distribution from the Debtor's estate.

### B. Cause Exists to Authorize the Debtor's Financial Institutions to Honor Checks and Electronic Fund Transfers

51. The Debtor represents that checks or wire transfer requests can be readily identified as relating to an authorized payment in respect of the pre-petition claims of the Employees. Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable banks and other financial institutions should be authorized and directed, when requested by the Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the pre-petition claims of the Employees.

### C. Failure to Honor Employee Obligations Within Twenty-One Days of the Petition Date May Cause Immediate and Irreparable Harm

52. Pursuant to Fed. R. Bankr. P. 6003, the Court may grant relief regarding a motion to pay all or part of a pre-petition claim that arose before the Petition Date within twenty-one (21) days after the filing of the petition if the relief is necessary to avoid immediate and irreparable harm.

53. As discussed above, the Employees are integral to the Debtor's operations. Failure to satisfy obligations with respect to the Employees in the ordinary course of business during the first twenty-one (21) days of this case will jeopardize the loyalty and trust of the Employees. Certain of the Employees may leave and thereby cause serious disruption to the

Debtor's operations during this critical period when the Debtor needs the continued support of its Employees.

54. Moreover, the Debtor's Employees rely exclusively on their compensation to continue to pay their daily living expenses and these Employees will be exposed to significant financial difficulties if the Debtor is not permitted to pay the Employees in the ordinary course of business. Accordingly, the Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of the Employee Obligations.

**D. Request for Waiver of Stay**

55. The Debtor also requests that the Court waive the stay imposed by Fed. R. Bankr. P. 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." As described above, the relief that the Debtor seeks in this Motion is immediately necessary in order for the Debtor to be able to continue to operate its business and preserve value for the benefit of creditors. The Debtor respectfully requests that the Court waive the fourteen-day stay as the critical nature of the relief sought herein justifies immediate relief.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**WHEREFORE,** the Debtor respectfully requests that this Honorable Court enter an Order granting the relief requested herein and for such other and further relief as this Court deems just and proper.

**Respectfully submitted,**

**KARALIS PC**

By: /s/ *Aris J. Karalis*
ARIS J. KARALIS
ROBERT W. SEITZER
ROBERT M. GREENBAUM
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
akaralis@karalislaw.com
rseitzer@karalislaw.com
rgreenbaum@karalislaw.com

*Proposed Attorneys for the Debtor*

Dated: February 6, 2025