**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **DIGITALSPEED COMMUNICATIONS, INC.,** | : | **Case No. 25-10500 (AMC)** |
| | : | |
| Debtor. | : | |
| | : | |

---

**PLAN OF REORGANIZATION PROPOSED BY
DIGITALSPEED COMMUNICATIONS, INC., DEBTOR-IN-POSSESSION**

---

**KARALIS PC
Aris J. Karalis
Robert W. Seitzer
Robert M. Greenbaum
1900 Spruce Street
Philadelphia, PA 19103
(215) 546-4500
Attorneys for the Debtor
and Debtor-in-Possession**

**Dated:  April 28, 2025**

# TABLE OF CONTENTS

PAGE NO.

INTRODUCTION ...................................................................................................1

ARTICLE I        Definitions, Rules of Interpretation, and Computation of Time........................1
  A.    Defined Terms ..........................................................................1
  B.    Rules of Interpretation ..............................................................13
  C.    Computation of Time ................................................................13
  D.    Governing Law ........................................................................13
  E.    References to Monetary Figures ..................................................13
  F.    Exhibits .................................................................................14
  G.    Controlling Document ...............................................................14

ARTICLE II       Classification and Treatment of Claims and Interests ...................14
  A.    Classification of Claims and Interests...........................................14
    1.    Classification in General ...............................................14
    2.    Summary of Classification..............................................14
  B.    Treatment of Claims and Interests ...............................................15
    1.    Class 1.    PADOR Secured Claim..............................15
    2.    Class 2.    Other Priority Claims................................16
    3A.   Class 3A.   Ongoing General Unsecured Claims ...........17
    3B.   Class 3B.   Other General Unsecured Claims ...............17
    4.    Class 4.    Equity Interests in Debtor.........................18
  C.    Special Provisions Governing Unimpaired Claims ............................18
  D.    Elimination of Vacant Classes ....................................................18
  E.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the
    Bankruptcy Code .....................................................................18
  F.    Controversy Concerning Impairment ............................................19
  G.    Subordinated Claims.................................................................19

ARTICLE III      Administrative Expense Claims, Professional Fee Claims, and
    Priority Tax Claims...................................................................19
  A.    Administrative Expense Claims....................................................19
    1.    Administrative Expense Claims Generally.............................19
  B.    Professional Fee Claims.............................................................20
    1.    Final Fee Applications and Payment of Professional Fee
      Claims ...................................................................20
    2.    Professional Fee Escrow Account .......................................20
    3.    Professional Fee Amount.................................................21
    4.    Post-Effective Date Fees and Expenses.................................21
  C.    Priority Tax Claims...................................................................21

ARTICLE IV       Means for Implementation of the Plan........................................22
  A.    General...................................................................................22
  B.    Settlement of Claims and Interests ..............................................22

        1.      Pasternack Settlement Agreement ............................................................22
C.     Continued Legal Existence of the Debtor.............................................................22
D.     Operations of the Debtor between Confirmation and the Effective Date............................................................................................................22
E.     Equity Security Holder's Contribution ................................................................23
F.     Class 3A Fund....................................................................................................23
G.    GUC Fund..........................................................................................................23
H.    Sources of Consideration for Distributions.........................................................23
I.     Reorganized Debtor's Directors and Officers .....................................................23
J.     Due Authorization..............................................................................................23
K.    Release of Liens.................................................................................................24
L.     Effectuating Documents and Further Transactions...............................................24
M.   Disbursing Agent ...............................................................................................24
N.    Single Satisfaction of Allowed General Unsecured Claims ..................................24
O.    Exemption from Certain Transfer Taxes and Recording Fees...............................24
P.     Preservation of Causes of Action........................................................................24

ARTICLE V     Treatment of Executory Contracts and Unexpired Leases ............................25
A.     Assumption and Rejection of Executory Contracts and Unexpired Leases..............................................................................................................25
B.     Rejection Damages Claims .................................................................................26
C.     Cure of Defaults under Executory Contracts and Unexpired Leases ....................26
D.     Dispute Resolution.............................................................................................27
E.     Contracts and Leases Entered into After the Petition Date....................................28
F.     Insurance Policies ..............................................................................................28
G.    Modifications, Amendments, Supplements, Restatements, or Other Agreements........................................................................................................28
H.    Reservation of Rights.........................................................................................29

ARTICLE VI.    Provisions Governing Distributions................................................................29
A.     Distributions Generally.......................................................................................29
B.     Distributions on Account of Certain Claims Allowed as of the Effective Date....................................................................................................29
C.     Distributions on Account of Allowed General Unsecured Claims........................29
D.     Distributions on Account of Disputed Claims Allowed After the Effective Date....................................................................................................29
E.     Rights and Powers of Disbursing Agent..............................................................29
F.     Delivery of Distributions and Undeliverable or Unclaimed Distributions......................................................................................................30
        1.      Claims Record Date ................................................................30
        2.      Delivery of Distributions ........................................................30
        3.      Special Rules of Distributions to Holder of Disputed Claims ....................................................................................................30
G.    Undeliverable and Non-Negotiated Distributions ...............................................30
        1.      Undeliverable Distributions.....................................................30
        2.      Non-Negotiated Distributions..................................................31

|   |   |   |   |
|---|---|---|---|
| H. | Manner of Payment under the Plan | 31 |
| I. | Satisfaction of Claims | 31 |
| J. | Minimum Cash Distributions | 31 |
| K. | Postpetition Interest | 31 |
| L. | Setoffs | 31 |
| M. | Claims Paid or Payable by Third Parties | 31 |
| N. | Compliance with Tax Requirements and Allocations | 32 |

ARTICLE VII    Procedures for Resolving Contingent, Unliquidated, and Disputed Claims .......................................................................32

A.    Applicability ........................................................................32
B.    Allowance of Claims...........................................................32
C.    Claims Administration Responsibilities .............................32
D.    Estimation of Claims...........................................................32
E.    No Distributions Pending Allowance .................................33
F.    Distributions after Allowance ............................................33
G.    Disputed Claims Reserve ....................................................33
H.    Adjustment to Claims Register without Objection .............34
I.    Time to File Objections to Claims .....................................34
J.    Treatment of Untimely Claims ..........................................34

ARTICLE VIII    Conditions Precedent to Confirmation and Effective Date.............35

A.    Conditions Precedent to Confirmation of the Plan ............35
B.    Conditions Precedent to the Effective Date .......................35
C.    Waiver of Conditions Precedent .........................................36
D.    Substantial Consummation of the Plan ...............................36
E.    *Vacatur* of Confirmation Order; Non-Occurrence of Effective Date .....................................................................36

ARTICLE IX    Effect of Plan Confirmation.......................................................36

A.    Vesting of Assets in Reorganized Debtor...........................36
B.    Retention of Certain Causes of Action ...............................36
C.    Binding Effect .....................................................................37
D.    Post-Confirmation Interim Injunction Stays......................37
E.    Discharge .............................................................................37
    1.    Discharge of the Debtor .........................................37
    2.    Discharge Injunction ..............................................38
F.    Exculpation .........................................................................38
G.    Injunction Related to Exculpation ......................................38
H.    Disallowed Claims ..............................................................39
I.    No Successor Liability ........................................................39

ARTICLE X    Retention of Jurisdiction ............................................................39

A.    Jurisdiction..........................................................................39
B.    General Retention ................................................................39
C.    Specific Purposes ................................................................39

|       | D.   | Courts of Competent Jurisdiction | 41 |

| ARTICLE XI | | Miscellaneous Provisions | 41 |
|  | A. | Closing of Chapter 11 Case | 41 |
|  | B. | Amendment or Modification of the Plan | 41 |
|  |  | 1.   Plan Modifications | 41 |
|  |  | 2.   Other Amendments | 42 |
|  | C. | Revocation or Withdrawal of Plan | 42 |
|  | D. | Request for Expedited Determination of Taxes | 42 |
|  | E. | Non-Severability of Plan Provisions | 42 |
|  | F. | Notices | 43 |
|  | G. | Notices to Other Persons | 43 |
|  | H. | Immediate Binding Effect | 43 |
|  | I. | Timing of Distributions or Actions | 43 |
|  | J. | Deemed Acts | 44 |
|  | K. | Entire Agreement | 44 |
|  | L. | Plan Supplement | 44 |
|  | M. | Withholding of Taxes | 44 |
|  | N. | Filing of Reports and Payment of Quarterly Fees | 44 |
|  | O. | Effective Date Actions Simultaneous | 44 |

# INTRODUCTION

DigitalSpeed Communications, Inc., the Debtor and Debtor-in-Possession in the above captioned Chapter 11 Case (a "Debtor") proposes this plan of reorganization (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") for the resolution of the outstanding Claims against, and Interests in, the Debtor pursuant to chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101, et seq. Capitalized terms used in the Plan and not otherwise defined shall have the meanings ascribed to them in Article I.A of the Plan. The Debtor is the proponent of the Plan within the meaning from section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, properties and operations, projections, risk factors, a summary and analysis of the Plan, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

# ARTICLE I
## Definitions, Rules of Interpretation, and Computation of Time and Governing Law

A.    Defined Terms.

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "Accrued Professional Fees" means, as of any date, and regardless of whether such amounts are billed or unbilled, all of a Professional's accrued fees and reimbursable expenses for services rendered in the Chapter 11 Case up to and including such date, whether or not such Professional has then filed an application for the Allowance and payment of such fees and expenses: (a) to the extent that any such fees and expenses have not been previously paid by the Debtor; and (b) after each Professional has applied to such accrued fees and expenses the balance of any retainer that has been provided by the Debtor to such Professional, if applicable. No amount of a Professional's fees or expenses denied by a Final Order of the Bankruptcy Court shall constitute Accrued Professional Fees.

2.    "Administrative Expense Claim" means any right to payment from the Debtor that constitutes a cost or expense of administration incurred during the Chapter 11 Case of the kind specified under 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estate or continuing the operations of the Debtor incurred during the period from the Petition Date to the Effective Date; (b) Professional Fee Claims; and (c) Quarterly Fees.

3.    "<u>Administrative Expense Claim Bar Date</u>" means the deadline for filing requests for payment of Administrative Expense Claims, which shall be the later of (a) 30 days after the Effective Date or (b) in the event an Executory Contract is rejected following the Effective Date, solely as to the Administrative Expense Claim related to such rejected Executory Contract, 30 days after notice to the counterparty to such rejected Executory Contract.

4.    "<u>Administrative Expense Claim Objection Bar Date</u>" means the deadline for filing objections to requests for payment of Administrative Expense Claims (other than requests for payment of Professional Fee Claims), which shall be the first Business Day that is 75 days following the Effective Date; provided that the Administrative Expense Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and hearing.

5.    "<u>Affiliate</u>" has the meaning with respect to any person, or any other person, which directly or indirectly controls, or is under common control with, or is controlled by, such Person and shall include the meaning of "affiliate" set forth in section 101(2) of the Bankruptcy Code as if such Person were a debtor in a case under the Bankruptcy Code.

6.    "<u>Allowed</u>" means

a.    with respect to any Claim that is asserted to constitute an Administrative Expense Claim: (i) a Claim that represents an actual and necessary cost or expense of preserving the Estate or continuing the operations of the Debtor incurred during the period from the Petition Date to the Effective Date for which a request for payment is filed, (A) to the extent such Claim is determined by the Debtor to constitute an Administrative Expense Claim or allowed by a Final Order of the Bankruptcy Court or (B) as to which no objection to allowance has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law; (ii) other than with respect to a Professional Fee Claim, a Claim that arises during the period from the Petition Date to the Effective Date for which a request for payment is filed that is Disputed by the Debtor, which Claim is allowed in whole or in part by a Final Order of the Bankruptcy Court to the extent that such allowed portion is determined by a Final Order to constitute a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code; (iii) a Claim that arises during the period from the Petition Date to the Effective Date in the ordinary course of the Debtor's operations that is determined by the Debtor to constitute an Administrative Expense Claim; (iv) a Professional Fee Claim, to the extent allowed by a Final Order of the Bankruptcy Court; or (v) any Claim that is expressly allowed as provided in <u>Article III.A.1</u>; and

b.    with respect to any Priority Tax Claim, Other Priority Claim, Secured Claim, Ongoing General Unsecured Claim, Other General Unsecured Claims, or any portion of any of the foregoing, a Claim that is: (i) listed in the Schedules as not being disputed, contingent or unliquidated and with respect to which no contrary or superseding Proof of Claim has been filed, and that has not been paid pursuant to an order of this Court prior to the Effective Date; (ii) evidenced by a Proof of Claim filed on or before the applicable Bar Date, not listed in the Schedules as disputed, contingent or unliquidated, and as to which no objection has been filed on or before the Claims Objection Deadline; (iii) not the subject of any objection to Allowance, which Claim (A) was filed on or before the Claims Objection Deadline and (B) has not been settled, waived,

withdrawn or Disallowed pursuant to a Final Order; or (iv) expressly Allowed (x) pursuant to a Final Order, (y) pursuant to an agreement between the holder of such Claim and the Debtor or Reorganized Debtor, as applicable, or (z) pursuant to the terms of the Plan.  For the avoidance of doubt, the holder of a Claim evidenced by a Proof of Claim filed after the applicable Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution. "Allowance" and "Allowing" have correlative meanings.

7.      "<u>Assumed Contracts and Unexpired Leases Schedule</u>" means the schedule of Executory Contracts or Unexpired Leases to be assumed by the Debtor under the Plan and the Cure Amount for each such Executory Contract or Unexpired Lease, as set forth in the Plan Supplement, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof.

8.      "<u>Avoidance Actions</u>" means any and all avoidance, recovery, subordination or other Claims, actions, or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code, or under similar or related state, federal, or foreign statutes or common law, including preference and fraudulent transfer and conveyance laws, whether or not litigation to prosecute such Claim(s), Cause(s) of Action or remedy(ies) were commenced prior to the Effective Date.

9.      "<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101 1532, as in effect on the Petition Date.

10.      "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Eastern District of Pennsylvania or such other court having jurisdiction over the Chapter 11 Case, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 156, the District Court.

11.      "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 28 U.S.C. § 2075, as applicable to the Chapter 11 Case, and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

12.      "<u>Bar Date</u>" means (a) March 28, 2025 for any Claim (other than an Administrative Expense Claim or a Claim of a Governmental Unit), or (b) August 6, 2025 for any Claim of a Governmental Unit, as established by the Bar Date Order.

13.      "<u>Bar Date Order</u>" means the *Order, Pursuant to 11 U.S.C. §§ 502, Bankruptcy Rules 2002(a)(7) and 3003(c)(3), and Local Rule 9014-2 (7), (I) Establishing Deadlines for Filing Proofs of Claim, and (II) Establishing the Form and Manner of Notice Thereof.*

3

14.     "<u>Business Day</u>" means any day, other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a), on which commercial banks in Philadelphia, Pennsylvania are required or authorized by law to close.

15.     "<u>Cash</u>" means legal tender of the United States of America.

16.     "<u>Cause of Action</u>" or "<u>Causes of Action</u>" means any Claim, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, Lien, indemnity, guaranty, interest, damage, remedy, cause of action, proceeding, agreement, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, Secured or unsecured, capable of being asserted, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, whether arising before, on, or after the Petition Date. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and Claims under contracts or for breaches of duties imposed by law or in equity; (b) any claim based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of local, state, federal, or foreign law, or breach of any duty imposed by law or in equity, including securities laws, negligence, and gross negligence; (c) the right to object to or otherwise contest Claims or Interests; (d) Claims pursuant to sections 362 or chapter 5 of the Bankruptcy Code; (e) such Claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any Avoidance Actions arising under chapter 5 of the Bankruptcy Code or under similar local, state, federal or foreign law, including any fraudulent transfer laws.

17.     "<u>Chapter 11 Case</u>" means the case filed by the Debtor under chapter 11 of the Bankruptcy Code (Case No. 25-10500(AMC)).

18.     "<u>Claim</u>" means any "claim," as defined in section 101(5) of the Bankruptcy Code.

19.     "<u>Claims Objection Deadline</u>" means the deadline for filing an objection to any Claim (other than a Professional Fee Claim), which deadline shall be: (a) 120 days following the Effective Date with respect to all such Claims and Interests, subject to any extensions approved by an order of the Bankruptcy Court; <u>provided</u>, <u>however,</u> that the Debtor shall not be bound by the Claims Objection Deadline with respect to any Claim filed after the Bar Date.

20.     "<u>Claims Record Date</u>" means the Voting Deadline, which is the date on which the transfer register for each Class of Claims, or Interests in the Debtor, as such register is maintained by the Debtor, shall be deemed closed.

21.     "<u>Claims Register</u>" means the official Claims register maintained by the Clerk of the Bankruptcy Court for the Chapter 11 Case.

22.     "<u>Class</u>" means each category of holders of Claims or Interests as set forth in <u>Article II</u> pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

23.     "<u>Class 3A Fund</u>" means Cash in the amount of $25,000.00 to be deposited into the Class 3A Fund established by the Debtor for purposes of making Distributions to holders of Allowed Ongoing General Unsecured Claims in accordance with <u>Article II.B.3A</u> (Class 3A).

24.     "<u>Confirmation</u>" means the entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Case. Confirm, Confirmed and Confirmability shall have correlative meanings.

25.     "<u>Confirmation Date</u>" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

26.     "<u>Confirmation Hearing</u>" means the hearing(s) held by the Bankruptcy Court pursuant to sections 1128 and 1129 of the Bankruptcy Code at which the Debtor seeks entry of the Confirmation Order.

27.     "<u>Confirmation Order</u>" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

28.     "<u>Cure Amount</u>" means, with respect to any Executory Contract or Unexpired Lease sought to be assumed or assumed and assigned by the Debtor, the monetary amount, if any, required to cure the Debtor's defaults under any such Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the non-Debtor party to an Executory Contract or Unexpired Lease) at the time such Executory Contract or Unexpired Lease is assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

29.     "<u>Cure and Assumption Notice</u>" means the notice of proposed assumption of, and proposed Cure Amount payable in connection with, an Executory Contract or Unexpired Lease (and, to the extent the Debtor seeks to assume and assign any such Executory Contract or Unexpired Lease pursuant to the Plan, adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code), to be served in accordance with <u>Article V.C.</u>

30.     "<u>Debtor</u>" means DigitalSpeed Communications, Inc., d/b/a Slingshot Technologies Corporation, a Pennsylvania corporation that is a debtor and debtor-in-possession in the Chapter 11 Case.

31.     "<u>Disallowed</u>" means, as to any Claim, a Claim or any portion thereof that: (a) has been disallowed, denied, dismissed, expunged, or overruled pursuant to the terms of the Plan or a Final Order of the Bankruptcy Court or any other court of competent jurisdiction or by a settlement; (b) has been listed on the Schedules at an amount of $0.00 or as contingent, disputed, or unliquidated and as to which a Bar Date has been established, but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order, or otherwise deemed timely filed under applicable law; or (c) has not been scheduled and as to which a Bar Date has been established, but no Proof of Claim has been timely filed, such that the creditor holding

such Claim shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution. "Disallowance" and "Disallowing" have correlative meanings.

32.    "Disbursing Agent" means, the Reorganized Debtor which shall make or facilitate the Distributions contemplated under the Plan.

33.    "Discharge Injunction" means the injunction issued in accordance with sections 524 and 1141 of the Bankruptcy Code and contained in Article IX.E.2.

34.    "Discharges" means the discharges set forth in Article IX.E.

35.    "Disclosure Statement" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

36.    "Disclosure Statement Approval Order" means one or more orders entered by the Bankruptcy Court: (i) finding that the Disclosure Statement (including any amendment, supplement, or modification thereto) contains adequate information pursuant to section 1125 of the Bankruptcy Code; (ii) fixing the amounts of Claims solely for voting purposes and not for purposes of Distributions; (iii) approving the Voting Procedures; and (iv) authorizing solicitation of the Plan.

37.    "Disputed" means, with respect to any Claim or Interest (or portion thereof) (a) that is neither Allowed nor Disallowed, (b) that is listed on the Schedules a "disputed," "contingent," or "unliquidated" or (c) for which a Proof of Claim has been filed or a written request for payment has been made to the extent that any party in interest has interposed a timely objection to such Claim, which objection has not been withdrawn or adjudicated pursuant to a Final Order.

38.    "Disputed Claims Reserve" means the reserve of Cash within the GUC Fund to be Distributed to Holders of Disputed General Unsecured Claims, if and when such Disputed Claims become Allowed.

39.    "Distribution" means the payment or delivery of Cash, property, or interests in property, as applicable, to Holders of Allowed Claims under the terms of the Plan. "Distributed" and "Distribution" have correlative meanings.

40.    "Distribution Date" means (a) the dates on which the Disbursing Agent makes a Distribution, or causes a Distribution to be made from the Class 3A Fund to holders of the Allowed Ongoing General Unsecured Claims (Class 3A) or (b) the dates on which the Disbursing Agent makes a Distribution, or causes a Distribution to be made from the GUC Fund to holders of the Allowed Other General Unsecured Claims (Class 3B), as applicable.  The Distribution Date shall occur as soon as practicable after Reorganized Debtor makes its deposit to the Class 3A Fund in accordance with Article IV.E and its deposits to the GUC Fund in accordance with Articles IV.F.

41.    "Effective Date" means the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date set forth in Article VIII.B shall have been satisfied or waived pursuant to Article VIII.C.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.  Within three (3) Business Days of the Effective Date, the Reorganized Debtor shall file a notice of occurrence of the Effective Date, identifying the Effective Date and that it has occurred.

42.    "Encumbrance" means, with respect to any property (whether real or personal, tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property, including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction, to secure payment of a debt or performance of an obligation.

43.    "Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

44.    "Equity Security Holder" means Adam Pasternack who owns all the Equity Security Interests of the Debtor.

45.    "Equity Security Holder's Contribution" means the amount of Two Million Dollars ($2,000,000) to be paid in Cash by the Equity Security Holder on the Effective Date as his new value contribution and in consideration for the treatment provided to him under the Plan.

46.    "Equity Security Interest" has the meaning set forth in section 101(16) of the Bankruptcy Code.

47.    "Estate" means the estate created for the Debtor in its Chapter 11 Case under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Case.

48.    "Exculpated Parties" means, collectively, the following Persons: (a) the Debtor; (b) the directors, officers, and managers of the Debtor that served during the Chapter 11 Case, (c) all Professionals retained by the Debtor in the Chapter 11 Case, and in each such instance of (a) through (c) acting in their capacity as such.

49.    "Executory Contract" means any executory contract to which the Debtor is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

50.    "Final Order" means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) that has not been reversed, vacated, stayed, modified or amended, and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument, reconsideration, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument, reconsideration, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument, reconsideration, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction)

7

shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument, reconsideration, or rehearing shall have been denied with prejudice or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, reconsideration, or rehearing shall have expired; provided, however, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment to not be a Final Order.

51.     "General Unsecured Claim" means all Claims that are not a Secured Claim, Priority Tax Claim, Other Priority Claim, Professional Fee Claim, or an Administrative Expense Claim.  For the avoidance of doubt, General Unsecured Claims are Ongoing General Unsecured Claims, and Other General Unsecured Claims.

52.     "Governmental Unit" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

53.     "GUC Fund" means Cash in the amount of $2,000,000 to be deposited into the GUC Fund established by the Debtor for purposes of making Distributions to holders of Allowed Other General Unsecured Claims in accordance with Article II.B.3B (Class 3B).  The Reorganized Debtor shall fund the GUC Fund in accordance with Article IV.F.

54.     "Holder" means any holder of an Allowed Claim or Interest.

55.     "Impaired" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

56.     "Injunctions" means the Discharge Injunction, and any other injunctions entered by the Bankruptcy Court in connection with Confirmation of the Plan.

57.     "Insider" means any "insider" as that term is defined in paragraphs (B), (C), (E) or (F) of § 101(31) of the Bankruptcy Code.

58.     " Insurance Policy" means any and all known and unknown contracts, binders, certificates or Insurance Policies currently or previously in effect at any time on or before the Petition Date naming the Debtor, and/or any other Entity, or any of them, or any predecessor, subsidiary, or past or present Affiliate of the Debtor and/or any other Entity, as an insured (whether as the primary or an additional insured), or otherwise alleged to afford the Debtor, and/or any other Entity insurance coverage, upon which any claim could have been, has been, or may be made with respect to any Claim.

59.     "Interest" means any "equity security" in any Debtor as defined in section 101(16) of the Bankruptcy Code.

60.     "Internal Revenue Code" means title 26 of the United States Code, 26 U.S.C. §§ 1 *et seq.*, as in effect on the Petition Date, together with all amendments, modifications,

and replacements of the foregoing as the same may exist on any relevant date to the extent applicable to the Chapter 11 Case.

61.    "Lien" means a "lien" as defined in section 101(37) of the Bankruptcy Code.

62.    "Ongoing General Unsecured Claims" means General Unsecured Claims that are not Other General Unsecured Claims, which are fixed, liquidated, and undisputed payment obligations to a third-party provider of goods or services who are necessary to the Debtor's operations, and/or creditors whose Claims, if Allowed, were incurred in furtherance of the Debtor's business that are neither secured by collateral nor entitled to priority under the Bankruptcy Code of any Final Order of the Bankruptcy Court.

63.    "Other General Unsecured Claims" means any Unsecured Claim against the Debtor that is not an Ongoing General Unsecured Claim.  For the avoidance of doubt, Other General Unsecured Claims include the Prism Claim and all Rejection Damages Claims.

64.    "Other Priority Claim" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Expense Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Case.

65.    "PADOR" means the Pennsylvania Department of Revenue.

66.    "Pasternack Settlement Payment" shall mean the settlement payment as defined in the Pasternack Settlement Agreement, which is equal to twelve thousand three hundred and seventy-five ($12,375.00) dollars.

67.    "Pasternack Settlement Agreement" means the Settlement Agreement between Adam Pasternack and the Debtor as set forth in the Plan Supplement, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof.

68.    "Person" has the meaning set forth in section 101(41) of the Bankruptcy Code.

69.    "Petition Date" means February 6, 2025.

70.    "Plan" means this *Plan of Reorganization proposed by DigitalSpeed Communications, Inc.,* Debtor in Possession, including the Exhibits thereto, as the same may be amended or modified from time to time pursuant to section 1127 of the Bankruptcy Code.

71.    "Plan Documents" means, collectively, the Plan, the Disclosure Statement, the Disclosure Statement Approval Order, each of the documents that comprises the Plan Supplement, and all of the exhibits and schedules attached to any of the foregoing.

72.    "Plan Supplement" means the compilation of documents and forms of documents, agreements, schedules, exhibits, and annexes to the Plan, which the Debtor shall file no

later than fourteen (14) days before the Voting Deadline, unless otherwise ordered by the Bankruptcy Court, and additional documents filed with the Bankruptcy Court before the Effective Date as amendments, modifications or supplements to the Plan Supplement. The Plan Supplement will include the following: (a) the Assumed Contracts and Unexpired Leases Schedule; (b) the Rejected Contracts and Unexpired Leases Schedule (c) the Retained Causes of Action Schedule; (d) change, if any, to Reorganized Debtor's directors and officers; (e) the Pasternack Settlement Agreement; and (f) any additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to, the Plan Supplement through the Effective Date, subject to the terms of the Plan; provided that the Plan Documents listed in the foregoing sentence may be revised, in the Debtor's discretion. The Plan Supplement shall be served only on those parties that have requested notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002 and any party in interest who requests, in writing, a copy from counsel to the Debtor.

73.      "Postpetition Insurance Policies" means insurance policies issued by the insurance companies to the Debtor and effective on or after the Petition Date, but only to the extent of coverage for Claims and Causes of Action arising from acts or events that first took place after the Petition Date.

74.      "Priority Tax Claim" means any Claim of a Governmental Unit against the Debtor that is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

75.      "Prism" means Prism Group, Inc.

76.      "Prism's Claim" means that certain Massachusetts Superior Court Order for Judgment dated November 30, 2022 in the amount of $4,106,289.54, plus interest and costs, entered in the civil action initiated in the Massachusetts Superior Court, Middlesex County, styled *Prism Group, Inc. v. Slingshot Technologies Corportation [sic] et al.*, Case No. 1481-cv-0429, as amended by the Clerk for the Massachusetts Superior Court by entering the Amended Judgment on Finding of the Court in the amount of $8,355,367.86 on December 1, 2022.

77.      "Professional" means any Person retained by the Debtor pursuant to a Final Order of the Bankruptcy Court entered under sections 327, 328, 363, or 1103 of the Bankruptcy Code.

78.      "Professional Fee Claim" means any Claim of a Professional or other Person for Allowance by the Bankruptcy Court and payment by the Debtor of compensation for services rendered and/or reimbursement of costs or expenses incurred in the Chapter 11 Case for the period from the Petition Date to and including the Effective Date under sections 328, 330, 331, or 503(b) of the Bankruptcy Code.

79.      "Professional Fee Escrow Account" means the interest-bearing escrow account to be established and funded by the Debtor with Cash on the Effective Date in an amount equal to the Professional Fee Escrow Amount for the Debtor.

80.      "Professional Fee Escrow Amounts" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate that they have incurred or will incur in rendering services to the Debtor prior to and as of the Effective

Date, which estimates the Professionals shall deliver to the Debtor as set forth in Article III of the Plan.

81.    "Proof of Claim" means any proof of claim filed with the Bankruptcy Court pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rules 3001 or 3002 that asserts a Claim against the Debtor.

82.    "Pro Rata" means, at any time, with respect to any Claim, the proportion that the amount of such Claim in a particular Class or group of Classes bears to the aggregate amount of all Claims (including Disputed General Unsecured Claims) in such Class or group of Classes, unless the Plan provides otherwise.

83.    "Pro Rata Share" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in that Class.

84.    "Quarterly Fees" means all fees due and payable pursuant to section 1930(a)(6) of title 28 of the United States Code.

85.    "Reinstate," "Reinstated," or "Reinstatement" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a nonmonetary obligation, compensating the holder of such Claim (other than the Debtor or an "insider" of the Debtor within the meaning of section 101(31) of the Bankruptcy Code) for any actual pecuniary loss incurred by such holder as the result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the holder thereof.  For the avoidance of doubt, Reinstate, Reinstated, or Reinstatement means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. "Reinstated" has a correlative meaning.

86.    "Rejected Contracts and Unexpired Leases Schedule" means the schedule of Executory Contracts or Unexpired Leases to be rejected by the Debtor under the Plan, as set forth in the Plan Supplement, as may be amended, modified, or supplemented from time to time.

87.    "Rejection Damages Bar Date" has the meaning ascribed to such term in Article V.B.

88.    "Rejection Damages Claim" means a Claim for damages alleged to arise from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 or 1123 of the Bankruptcy Code.

89.    "Related Party" means, with respect to any Entity, such Entity's current and former directors, managers, officers, investment committee members, equity Holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds, or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals and advisors.

90.    "Reorganized Debtor" means the Debtor, as reorganized pursuant to and under the Plan on or after the Effective Date.

91.    "Retained Causes of Action Schedule" means the schedule, which will be included in the Plan Supplement, of certain Causes of Action of the Debtor that is not released, waived, or transferred pursuant to the Plan, as may be amended, modified, or supplemented from time to time.

92.    "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor with the Bankruptcy Court pursuant to sections 521 and 1106(a)(2) of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements may be amended or supplemented from time to time prior to the Effective Date.

93.    "Secured" means, with respect to any Claim, the extent to which the Claim is: (a) secured by a Lien on property of a Debtor's Estate (i) as set forth in the Plan, (ii) as agreed to by the holder of such Claim and the Debtor, or (iii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code, but, with respect to both of the foregoing clauses (a) and (b), only to the extent of the value of the interest of such holder in the Estate's interest in the property securing such Claim or the amount subject to setoff, as applicable.

94.    "Solicitation Materials" means materials used in connection with the solicitation of votes on the Plan, including the Disclosure Statement, Disclosure Statement Approval Order, and any procedures established by the Bankruptcy Court with respect to solicitation of votes on the Plan.

95.    "Unexpired Lease" means a lease to which either Debtor is a party, including any and all pre- and postpetition amendments thereto, that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

96.    "Unimpaired" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, including any Claim that is Reinstated.

97.    "United States Trustee" means the Office of the United States Trustee for the Eastern District of Pennsylvania.

98.    "Voting Deadline" means the date and time as may be set by the Bankruptcy Court pursuant to the Solicitation Materials.

99.    "Voting Procedures" means those certain procedures and supplemental procedures approved by the Bankruptcy Court for soliciting and tabulating the votes to accept or reject the Plan cast by holders of Claims against the Debtor entitled to vote on the Plan.

B.    Rules of Interpretation.  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and neuter; (c) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (d) any reference in this Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (e) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (f) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (g) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (i) subject to the provisions of any contract, Articles of Incorporation, Bylaws, instrument, release or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules; and (j) the rules of construction set forth in §102 of the Bankruptcy Code will apply.

C.    Computation of Time.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.    Governing Law.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

E.    References to Monetary Figures. All references in the Plan to monetary figures shall refer to United States of America currency, unless otherwise expressly provided.

F.      Exhibits.  All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein and, to the extent not annexed hereto, such Exhibits shall be filed with the Bankruptcy Court with the Plan Supplement.

G.      Controlling Document. In the event of any conflict between the terms and provisions in the Plan (without reference to the Plan Supplement), on the one hand, and the terms and provisions in the Disclosure Statement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), on the other hand, the Plan (without reference to the Plan Supplement) shall govern and control.  In the event of any inconsistency between the Plan and the Plan Supplement, the Plan Supplement shall control; provided, however, that in the event of a conflict between Confirmation Order, on the one hand, and the Plan or Plan Supplement or any of the other Plan Document, on the other hand, the Confirmation Order shall govern, control and take precedence in all respects.

## ARTICLE II
## Classification and Treatment of Claims and Interests

A.      Classification of Claims and Interests.

1.      Classification in General. For purposes of organization, voting, and all matters related to Confirmation, and except as otherwise provided herein, all Claims (other than Administrative Expense Claims and Priority Tax Claims) against and Interests in the Debtor are classified as set forth in this Article II.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims are described in Article III, have not been classified and are excluded from the following Classes. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the description of such Class, and is classified in another Class or Classes to the extent that any remainder of the Claim or Interest falls within the description of such other Class or Classes. Notwithstanding anything to the contrary contained in the Plan, no Distribution shall be made on account of any Claim that is not Allowed for Distribution purposes (if applicable) or any Claim that has been satisfied, released, or otherwise settled prior to the Effective Date.

2.      Summary of Classification. The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; or (c) presumed to accept or deemed to reject the Plan.

14

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | PADOR Secured Claim | Impaired | Entitled to Vote |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3A | Ongoing General Unsecured Claims | Impaired | Entitled to Vote |
| 3B | Other General Unsecured Claims | Impaired | Entitled to Vote |
| 4 | Interests in Debtor | Unimpaired | Not Entitled to Vote (Presumed to Accept) |

B.    <u>Treatment of Claims and Interests</u>.  Subject to <u>Article IV</u> hereof, each Holder of an Allowed Claim or Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the Holder of such Allowed Claims or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.    **Class 1.  <u>PADOR Secured Claim</u>.**

a.    <u>Classification</u>**.**  The Class 1 Claim consists of the Pre-Petition Secured Claim held by PADOR for unpaid pre-petition gross receipts taxes in the amount of $350,672.11 as of the Petition Date, and is a fully secured claim.  The Class 1 Claim holds valid, perfected enforceable Liens on the Debtor's property including, property interests, rights and credits up to the Allowed secured amount of the Claim.  On the Effective Date, PADOR shall be deemed to hold an Allowed Class 1 Secured Claim.

b.    <u>Treatment</u>.  The Holder of the Class 1 Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim the following payments: (i) as soon as practicable after the Effective Date, a lump sum payment in the amount of $50,672.11; and (ii) the balance of the PADOR claim ($300,000.00) shall be paid over thirty-six (36) months following the Effective Date (the first payment being payable on the thirty-first Business Day after the Effective Date), in equal monthly payments of principal and interest ($9,263.13), calculated with respect to the secured amount of the Allowed Class 1 Claim at a fixed rate of 7.0%; and amortized over a three-year period from the commencement of such payments; or (iii) such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of the

15

Class 1 Claim and the Debtor.  The Class 1 Claim may be prepaid, in whole or in part, at any time without any prepayment penalty or fee.

c.     <u>Retention of Liens</u>.  Until payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 1 Claim, the Holder of the Allowed Class 1 Claim shall retain its Liens against the Debtor's property to the same extent and priority as exists on the Confirmation Date.

d.     <u>Deficiency Claim</u>.  The Holder of the Class 1 Secured Claim is treated as a fully secured claim and therefore holds no General Unsecured Claim.

e.     <u>Extinguishment of Liens</u>.  Upon payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 1 Claim, the Liens securing the Class 1 Allowed Secured Claim shall be extinguished and shall effect a full and final satisfaction of such Claim.

f.     <u>Voting</u>.  Class 1 is impaired by the Plan and PADOR may vote to accept or reject the Plan.

2.     **Class 2.  <u>Other Priority Claims</u>.**

a.     <u>Classification</u>:  Class 2 consists of all Other Priority Claims.

b.     <u>Treatment</u>:  Each Holder of an Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, shall receive, at the option of the applicable Debtor, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim;

i.     Payment in full in Cash on the Effective Date, or as soon as reasonably practicable thereafter; or

ii.     such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code.

c.     <u>Voting</u>:  Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

16

3A.  **Class 3A.**   <u>**Ongoing General Unsecured Claims.**</u>

    a.    <u>Classification</u>:  Class 3A consists of all Ongoing General Unsecured Claims.

    b.    <u>Treatment</u>:   Except to the extent that a Holder of an Ongoing General Unsecured Claim and the Debtor agree to less favorable treatment, each Holder of an Allowed Ongoing General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for its Claim, its Pro Rata share of the Class 3A Fund within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Ongoing General Unsecured Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date.

    c.    <u>Voting</u>:  Class 3A is Impaired under the Plan.  Therefore, Holders of Ongoing General Unsecured Claims are entitled to vote to accept or reject the Plan.

    d.    <u>General Provisions</u>:  No interest or other similar postpetition charges will be paid on account of Allowed Class 3A Claims.

3B.  **Class 3B.**   <u>**Other General Unsecured Claims**</u>.

    a.    <u>Classification</u>:  Class 3B consists of all Other General Unsecured Claims.

    b.    <u>Treatment</u>:  Except to the extent that a Holder of a Class 3B Other General Unsecured Claim and the Debtor agree to less favorable treatment, each Holder of an Allowed Class 3B Other General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Other General Unsecured Claim, its Pro Rata share of the following:

      i.    the initial distribution of $1,000,000 from GUC Fund within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Class 3B Other General Unsecured Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date); and

      ii.    for each year after the Effective Date (for a four (4) year period after the Effective Date), a distribution of the amount of $250,000 from the GUC Fund.  The first distribution shall be made twelve (12) months after the Effective Date, the second Distribution to be made twenty-four (24) months

after the Effective Date, the third Distribution to be made thirty-six (36) month after the Effective Date, and the fourth Distribution to be made forty-eight (48) months after the Effective Date.

c.   Voting:  Class 3B is Impaired, and each Holder of an Allowed Other General Unsecured Claim is entitled to vote to accept or reject the Plan.

d.   General Provisions:  No interest or other similar postpetition charges will be paid on account of Allowed Class 3B Other General Unsecured Claims.

3.   **Class 4.  Equity Interests in Debtor.**

a.   Classification:  Class 4 consists of all Equity Interests in the Debtor.

b.   Treatment:  As of the Effective Date, the Interests in the Debtor shall remain unchanged and equal to the structure that existed on the Petition Date.

c.   Voting:   Class 4 is unimpaired.  The Holder of the Equity Interests in the Debtor is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holder of Class 4 Equity Interests in the Debtor is not entitled to vote to accept or reject the Plan.

C.   Special Provisions Governing Unimpaired Claims.  Except as otherwise provided in the Plan, nothing in the Plan shall affect the Debtor's rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs of recoupments against any Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are unimpaired shall remain Disputed Claims under the Plan.

D.   Elimination of Vacant Classes.  Any Class of Claims or Interests that does not have at least one Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

E.   Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.  Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article II.B of the Plan.  The Debtor reserves the right to modify the Plan in accordance with Article XI.B of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or

18

Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

F.    Controversy Concerning Impairment.  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

G.    Subordinated Claims.    Except as expressly provided herein, the allowance, classification, and treatment of Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor reserves the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

**ARTICLE III**
**Administrative Expense Claims, Professional Fee Claims,**
**and Priority Tax Claims**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article II hereof.

A.    Administrative Expense Claims.

1.    Administrative Expense Claims Generally.  Unless otherwise agreed to by the Holder of an Allowed Administrative Expense Claim and the Debtor, or the Reorganized Debtor, to the extent an Allowed Administrative Expense Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Case, each Holder of an Allowed Administrative Expense Claim (other than Holders of Professional Fee Claims) will receive in full and final satisfaction of its Allowed Administrative Expense Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Expense Claim in accordance with the following:  (1) if such Administrative Expense Claim is Allowed on or prior to the Effective Date, no later than 45 days after the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Expense Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Expense Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Expense Claim, without any further action by the Holder of such Allowed Administrative Expense Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtor, or the Reorganized Debtor, as applicable; or (5) at such time and upon such terms as set forth in the Final Order of the Bankruptcy Court.

19

2.      Except for Professional Fee Claims, requests for payment of Administrative Expense Claims must be filed and served on the Reorganized Debtor, no later than the Administrative Expense Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.  Objections to such requests must be filed and served on the Reorganized Debtor and the requesting party on or before the Administrative Expense Claim Objection Bar Date.  After notice and hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Expense Claims shall be determined by, and satisfied in accordance with, an order of the Bankruptcy Court that becomes a Final Order.

3.      Except for Professional Fee Claims, Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims that do not file and serve such a request on or before the Administrative Expense Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor, the Estate, or property of any of the foregoing, and such Administrative Expense Claims shall be deemed released as of the Effective Date without the need for any objection from the Debtor, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

B.      <u>Professional Fee Claims</u>.

1.      <u>Final Fee Applications and Payment of Professional Fee Claims</u>.  All Professionals or other Persons requesting the final allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331 and/or 503(b) for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for allowance and payment of Professional Fee Claims on counsel to the Debtor and the United States Trustee no later than the first Business Day that is forty-five (45) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on the Reorganized Debtor and the applicable Professional within fourteen (14) calendar days after the filing of the final fee application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtor or the Reorganized Debtor, as applicable, and the Professional requesting allowance and payment of a Professional Fee Claim).  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice (and, if applicable, a hearing) in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders.  The Reorganized Debtor (or the authorized signatories to the Professional Fee Escrow Account) shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

2.      <u>Professional Fee Escrow Account</u>.  As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtor shall establish and fund a Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amounts, plus a reasonable cushion amount determined by the Debtor.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all

20

Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estate, the Debtor, the Class 3A Fund, or the GUC Fund.

The amount of the Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtor from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after the such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; provided, however, that the Reorganized Debtor's obligations with respect to the Allowed Professional Fee Claims shall not be limited by or deemed limited to the balance of funds held in the Professional Fee Escrow Account. To the extent the funds in the Professional Fee Escrow Account are insufficient to satisfy the Allowed Professional Fee Claims in full, each Holder of an Allowed Professional Fee Claim shall have an Allowed Administrative Expense Claim for any deficiency, which will be satisfied as soon as reasonably practicable by the Reorganized Debtor. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall be promptly paid to the Reorganized Debtor without any further notice to or action, or approval of the Bankruptcy Court or any other Entity.

3.    <u>Professional Fee Amount</u>. The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtor no later than five (5) days before the anticipated Effective Date; provided that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by such estimates. If a professional does not provide an estimate, the Debtor may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtor to determine the amount to be funded to the Professional Fee Escrow Account.

4.    <u>Post-Effective Date Fees and Expenses</u>. From and after the Effective Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.    <u>Priority Tax Claims</u>. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed

Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

### ARTICLE IV
### Means for Implementation of the Plan

A.    General.  On and after the Confirmation Date, the Debtor shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions consistent with the Plan as may be necessary or appropriate to enable it to implement the provisions of the Plan before, on, or after the Effective Date.

B.    Settlement of Claims and Interests.  Pursuant to 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan, including the Pasternack Settlement Agreement, shall constitute and be deemed good-faith compromises and settlements of all Claims, Interests, and controversies among the parties thereto relating to the contractual, legal, equitable and subordination rights that holders of Claims or Interests may have all of which are released, settled, compromised, or otherwise resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromises and settlements under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlements and compromises are fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.

1.    Pasternack Settlement Agreement.  The Plan incorporates the compromise and settlement of all claims and disputes the Debtor has, or may have, against Adam Pasternack, regarding the alleged Avoidance Actions against Adam Pasternack.  The Debtor made payments totaling $12,375 to Mr. Pasternack that were recorded as distributions for tax years ending 2021 and 2022 for which Mr. Pasternack has been unable to locate supporting documents to date.  Even though Mr. Pasternack has asserted defenses, he has agreed to refund the entire amount to eliminate further costs and the Debtor will seek approval of this settlement in connection with the confirmation of the Plan. As part of this compromise and settlement and only upon the Effective Date, Adam Pasternack shall (a) advance the Pasternack Settlement Payment ($12,375) to the Reorganized Debtor.  The Pasternack Settlement Payment is in addition to, and not included in the Equity Security Holder's Contribution.  The Plan shall constitute a motion by the Debtor for the Bankruptcy Court to approve the proposed Pasternack Settlement Agreement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.  The proposed Pasternack Settlement Agreement, with its payment to the Reorganized Debtor is fair, reasonable and in all parties' best interests.  The Debtor will file the Pasternack Settlement Agreement with the Plan Supplement.

C.    Continued Legal Existence of the Debtor.  The Reorganized Debtor shall continue to exist on and after the Effective Date, with all of the powers it is entitled to exercise under applicable law and pursuant to its articles of formation and bylaws in effect prior to the Effective Date, except to the extent such articles of formation and bylaws are amended.

D.    Operations of the Debtor between Confirmation and the Effective Date.  The Debtor shall continue to operate as a debtor and a debtor-in-possession during the period from the Confirmation Date to the Effective Date.

E.    Equity Security Holder's Contribution and Pasternack Settlement Payment. On the Effective Date, the Equity Security Holder shall deposit Cash with the Reorganized Debtor equal to (1) the Equity Security Holder's Contribution ($2,000,000) to enable the Debtor to make the payments due under the Plan and to continue to operate, and (2) the Pasternack Settlement Payment ($12,375).

F.    Class 3A Fund. On the Effective Date, the Reorganized Debtor shall deposit the amount of $25,000 from the Equity Security Holder's Contribution into the GUC Fund.

G.    GUC Fund. On the Effective Date, the Reorganized Debtor shall deposit the amount of $1,000,000 from the Equity Security Holder's Contribution into the GUC Fund. In addition, the Reorganized Debtor shall make four (4) annual deposits into the GUC Fund, each in the amount of $250,000 as follows:  the first deposit twelve (12) months after the Effective Date; the second deposit twenty-four (24) month after the Effective Date; the third deposit thirty-six (36) months after the Effective Date; and the fourth deposit forty-eight (48) months after the Effective Date.

H.    Sources of Consideration for Distributions. Distributions under the Plan shall be funded from the following sources:

1.    the Reorganized Debtor shall fund the initial deposit of $1,000,000 into the GUC Fund and the deposit of $25,000 into the Class 3A Fund with proceeds from the Equity Security Holder's Contribution in accordance with the terms of the Plan and Confirmation Order;

2.    the Reorganized Debtor shall fund the Distributions on account of and to satisfy Allowed Class 3A Claims exclusively from the Class 3A Fund in accordance with the terms of the Plan and Confirmation Order;

3.    the Reorganized Debtor shall fund the Distributions on account of and to satisfy Allowed Class 3B Claims exclusively from the GUC Fund in accordance with the terms of the Plan and Confirmation Order; and

4.    the Reorganized Debtor shall fund Distributions on account of and to satisfy all other Allowed Claims including, the Cure Amounts, with proceeds from the Equity Security Holder's Contribution, the Pasternack Settlement Payment, and Cash on hand on and after the Effective Date in accordance with the terms of the Plan and the Confirmation Order.

I.    Reorganized Debtor's Directors and Officers. Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent that there are anticipated changes in Reorganized Debtor's directors and officers, the Debtor will identify any such changes in the Plan Supplement and the nature of any compensation to be paid to any director or officer that is an Insider.  As of the Petition Date and the date of this Plan, the sole director and sole shareholder of the Debtor is Adam Pasternack.

J.    Due Authorization. As of the Effective Date, all actions contemplated by the Plan that require corporate action of the Debtor, including actions requiring a vote of the Equity Security

Holder, and execution of all documentation incident to the Plan, shall be deemed to have been authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by the Bankruptcy Court, members, officers, or directors of the Debtor, Reorganized Debtor, or any other Person.

K.    <u>Release of Liens</u>. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens or other security interests against any property of the Debtor's Estate that have not been previously released shall be fully released, settled, and compromised, and the Holder of such Liens or other security interest against any property of the Debtor's Estate shall be authorized to take such action as may be reasonably requested by the Debtor (or Reorganized Debtor, as the case may be) to evidence such releases.

L.    <u>Effectuating Documents and Further Transactions</u>. The officers of the Debtor are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan in the name of and on behalf of Reorganized Debtor, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.  The secretary or any assistant secretary of the Debtor, as applicable, shall be authorized to attest any of the foregoing actions.

M.    <u>Disbursing Agent</u>. The Disbursing Agent shall have the rights, powers and responsibilities provided in <u>Article VI</u>.

N.    <u>Single Satisfaction of Allowed General Unsecured Claims</u>.  In no event shall any Holder of an Allowed General Unsecured Claim recover more than the full amount of its Allowed General Unsecured Claim under the Plan, as applicable, and to the extent that the Holder of an Allowed General Unsecured Claim has received, or in the future receives, payment on account of such Allowed General Unsecured Claim from a party that is not a Debtor or Reorganized Debtor, such Holder shall repay, return, or deliver to the applicable Reorganized Debtor, any Distribution held by or transferred to such Holder to the extent the Holder's total recovery on account of its Allowed General Unsecured Claim from the third party and under the Plan exceeds the amount of such Holder's Allowed General Unsecured Claim.

O.    <u>Exemption from Certain Transfer Taxes and Recording Fees</u>. To the maximum extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers of property pursuant to the Plan by the Reorganized Debtor shall constitute "transfers under a plan" within the purview of 1146(a) of the Bankruptcy Code and shall not be taxed under any law imposing a stamp tax or similar tax.

P.    <u>Preservation of Causes of Action</u>.

1.    In accordance with section 1123(b) of the Bankruptcy Code, the Debtor and Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action.

2.	The Debtor and the Reorganized Debtor, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Cause of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.

3.	No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Reorganized Debtor will not pursue any and all available Causes of Action against it.

## ARTICLE V
## Treatment of Executory Contracts and Unexpired Leases

A.	Assumption and Rejection of Executory Contracts and Unexpired Leases.

1.	On the Effective Date, except as otherwise provided herein, all Executory Contracts and Unexpired Leases shall be deemed assumed by the Reorganized Debtor without the need for any further notice to or action, order, or approval of the Bankruptcy Court under sections 365 or 1123 of the Bankruptcy Code, except for Executory Contracts or Unexpired Leases: (a) that are identified on the Rejected Contracts and Unexpired Leases Schedule; (b) that previously expired or terminated pursuant to their terms; (c) that the Debtor has previously assumed or rejected pursuant to a Final Order of the Bankruptcy Court; (d) that are the subject of a motion to reject that remains pending as of the Effective Date; (e) as to which the effective date of rejection will occur (or is requested by the Debtor to occur) after the Effective Date; or (f) as to which the Debtor or Reorganized Debtor, as applicable, determine, in the exercise of its reasonable business judgment, that the Cure Amount, as determined by a Final Order or as otherwise finally resolved, would render assumption of such Executory Contract or Unexpired Lease unfavorable to Debtor or Reorganized Debtor; provided that the Debtor reserve the right to seek enforcement of an assumed or assumed and assigned Executory Contract or Unexpired Lease following the Confirmation Date, including seeking an order of the Bankruptcy Court rejecting such Executory Contract or Unexpired Lease for cause.

2.	Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or rejection, as applicable, of Executory Contracts or Unexpired Leases pursuant to the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code. Except as otherwise set forth herein, the assumption or rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be effective as of the Effective Date; provided that the rejection of an Unexpired Lease shall be effective as of the later of: (a) the Effective Date; and (b) the date on which the leased premises are unconditionally surrendered to the non-Debtor counterparty to the rejected Unexpired Lease.

3.	Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or a Final Order of the Bankruptcy Court shall re-vest in and be fully enforceable by Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, the Confirmation Order, or any Final Order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or

25

Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date, but may be withdrawn, settled, or otherwise prosecuted by Reorganized Debtor.

B.       Rejection Damages Claims. Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim for Rejection Damages Claims, if any, shall be filed within thirty (30) days after the latest to occur of: (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) the effective date of the rejection of such Executory Contract or Unexpired Lease; or (3) the Effective Date (as applicable, the "Rejection Damages Bar Date"). Claims arising from the rejection of an Executory Contract or an Unexpired Lease shall be classified as Class 3B Other General Unsecured Claims and subject to the provisions of Article VI and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  Any Holder of a Rejection Damages Claim that is required to file a Proof of Claim in accordance with this Article V.B, but fails to do so on or before the Rejection Damages Bar Date, shall not be treated as a creditor with respect to such Claim for the purposes of voting or distributions, and such Rejection Damages Claim shall be automatically Disallowed, forever barred from assertion, and unenforceable against the Debtor, its Estate, Reorganized Debtor, or its property, whether by setoff, recoupment, or otherwise, without the need for any objection by the Debtor or Reorganized Debtor or further notice to, or action, order, or approval of the Bankruptcy Court, and such Rejection Damages Claim shall be deemed fully satisfied, released, and discharged.

1.       Except as otherwise provided in the Plan, the Debtor shall, on or before the date of filing of the Plan Supplement, file the Rejected Contracts and Unexpired Leases Schedule and cause the Rejection Notice to be served on affected counterparties to Executory Contracts or Unexpired Leases to be rejected pursuant to the Plan.

C.       Cure of Defaults under Executory Contracts and Unexpired Leases.

1.       Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Effective Date or in the ordinary course of the Debtor's or Reorganized Debtor's operations, subject to the limitation described below.

2.       Except as otherwise provided in the Plan, the Debtor shall, on or before the date of filing of the Plan Supplement, file the Assumed Contracts and Unexpired Leases Schedule and cause the Cure and Assumption Notices to be served on affected counterparties to Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan. Any objection by a non-Debtor counterparty to an Executory Contract or Unexpired Lease to the assumption, assumption and assignment, the related Cure Amount, or adequate assurance, must be filed, served, and actually received by the Debtor on or prior to the deadline for filing objections to the Plan (or such later date as may be provided in the applicable Cure and Assumption Notice); provided that each counterparty to an Executory Contract or Unexpired Lease (a) that the Debtor later determines to assume or (b) as to which the Debtor modifies the applicable Cure Amount, must object to the assumption or Cure Amount, as applicable, by the earlier of: (i) fourteen (14) days after the Debtor serves such counterparty with a corresponding Cure and Assumption Notice; and (ii) the Confirmation Hearing. **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to**

**the proposed assumption of any Executory Contract or Unexpired Lease shall be forever barred, estopped, and enjoined from contesting the Debtor's assumption of the applicable Executory Contract or Unexpired Lease and from requesting payment of a Cure Amount that differs from the amounts paid or proposed to be paid by the Debtor or Reorganized Debtor, without the need for any objection by the Debtor or Reorganized Debtor or any further notice to or action, order, or approval of the Bankruptcy Court. Reorganized Debtor may settle any dispute regarding a Cure Amount without any further notice to or action, order, or approval of the Bankruptcy Court.**

3.      To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed, or assumed and assigned, pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or would be deemed breached by the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any change of control or similar provision), then such provision shall be deemed preempted and modified such that neither the Debtor's assumption or assumption and assignment of the Executory Contract or Unexpired Lease, nor any of the transactions contemplated by the Plan, shall entitle the non-debtor counterparty to terminate or modify such Executory Contract or Unexpired Lease or to exercise any other purported default-related rights thereunder.

4.      **The Debtor's assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and payment of any applicable Cure Amount in accordance with the procedures set forth in this __Article V.C__, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed, or assumed and assigned, Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Case, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of the later of: (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption; (b) the effective date of such assumption; or (c) the Effective Date, without the need for any objection by the Debtor or Reorganized Debtor or any further notice to or action, order, or approval of the Bankruptcy Court.**

D.      <u>Dispute Resolution</u>. In the event of a timely filed objection regarding: (1) a Cure Amount; (2) the ability of Reorganized Debtor or any assignee to provide adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption or the requirements of section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Debtor or Reorganized Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtor or Reorganized Debtor, as applicable, shall pay the applicable Cure Amount as soon as reasonably practicable after entry of a Final Order resolving such dispute and approving such assumption, or as may otherwise be agreed upon by the Debtor or Reorganized Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. To the extent that a dispute regarding the applicable Cure Amount is resolved or determined unfavorably to the Debtor, the Debtor may, in its discretion, reject the applicable Executory Contract or Unexpired

Lease after such determination, which rejection shall supersede, nullify, and render of no force or effect any earlier assumption or assumption and assignment. Under no circumstances shall the status of payment of a Cure Amount required by section 365(b)(1) of the Bankruptcy Code following the entry of a Final Order resolving the dispute and approving the assumption prevent or delay implementation of the Plan or the occurrence of the Effective Date.

E.     Contracts and Leases Entered into After the Petition Date. Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by Debtor, will be performed by the Debtor or Reorganized Debtor in the ordinary course of its operations. Accordingly, such contracts and leases (including any assumed Executory Contract and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

F.     Insurance Policies. Notwithstanding anything to the contrary herein, all Insurance Policies issued to or entered into by the Debtor prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtor; provided, however, that to the extent any Insurance Policy is determined to be an Executory Contract, then, notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such Insurance Policy and pay all future obligations, if any, in respect thereof and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interests of the Debtor, its Estate and all parties in interest. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to any Insurance Policy; and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any Insurance Policy shall be indefeasible. Moreover, as of the Effective Date, all payments of premiums or other charges made by the Debtor on or after the Petition Date under or with respect to any Insurance Policy shall be deemed to have been authorized, approved, and ratified in all respects without any requirement of further action by the Bankruptcy Court. Notwithstanding anything to the contrary contained herein, Confirmation shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim need be filed.

G.     Modifications, Amendments, Supplements, Restatements, or Other Agreements. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless the Debtor rejects or repudiates any of the foregoing agreements. Modifications, amendments, and supplements to, or restatements of, prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

28

H.    <u>Reservation of Rights</u>. Neither the inclusion of any Executory Contract or Unexpired Lease on the Schedules, a Cure and Assumption Notice, or the Rejected Executory contracts and Unexpired Leases Schedule, nor anything contained in any Plan Document, shall constitute an admission by the Debtor that a contract or lease is in fact an Executory Contract or Unexpired Lease or that Reorganized Debtor has any liability thereunder. If there is a dispute as of the Confirmation Date regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor, or, after the Effective Date, Reorganized Debtor, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

## ARTICLE VI
## Provisions Governing Distributions

A.    <u>Distributions Generally</u>. The Disbursing Agent shall make all Distributions to appropriate Holders of Allowed Claims in accordance with the terms of the Plan.

B.    <u>Distributions on Account of Certain Claims Allowed as of the Effective Date</u>. Except as otherwise provided in the Plan, on or as soon as practicable after the Effective Date, the Disbursing Agent shall make Distributions in Cash in amounts equal to all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and if applicable, Allowed Secured Claims.

C.    <u>Distributions on Account of Allowed General Unsecured Claims</u>. In accordance with the provisions of the Plan, the Disbursing Agent shall Distribute to each Holder of an Allowed General Unsecured Claim an amount equal to such Holder's Pro Rata Share, as applicable, as of such date, less the balance of the Disputed Claims Reserve for Class 3A or Class 3B, as applicable.

D.    <u>Distributions on Account of Disputed Claims Allowed After the Effective Date</u>. Distributions on account of any Disputed Claim shall be made to the extent such Claim is Allowed in accordance with the provisions of <u>Article VII</u>. Except as otherwise provided in the Plan, the Confirmation Order, another order of the Bankruptcy Court, or as agreed to by the relevant parties, Distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made as soon as practicable after the Disputed Claim becomes an Allowed Claim.

E.    <u>Rights and Powers of Disbursing Agent</u>.

1.    The Disbursing Agent shall make all Distributions to the appropriate Holders of Allowed Claims in accordance with the terms of the Plan, including this <u>Article VI</u>. Except as otherwise ordered by the Bankruptcy Court, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

2.    The Disbursing Agent shall be empowered to: (a) affect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the

Disbursing Agent to be necessary and proper to implement the provisions hereof. The Disbursing Agent may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns for all taxable periods through the date on which final Distributions are made.

    F.    <u>Delivery of Distributions and Undeliverable or Unclaimed Distributions.</u>

    1.    <u>Claims Record Date</u>. As of the close of business on the Claims Record Date, the various transfer registers for each of the Classes of Claims as maintained by the Debtor shall be deemed closed for purposes of determining whether a Holder of such a Claim is a record holder entitled to a Distribution under the Plan, and there shall be no further changes in the record holders or the permitted designees with respect to such Claims. The Debtor or Reorganized Debtor, as applicable, shall have no obligation to recognize any transfer or designation of such Claims occurring after the close of business on the Claims Record Date. With respect to payment of any Cure Amounts or assumption disputes, neither the Debtor, nor Reorganized Debtor, shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the close of business on the Claims Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

    2.    <u>Delivery of Distributions</u>. If a Person holds more than one Claim in any one Class, in the Disbursing Agent's sole discretion, all such Claims will be aggregated into one Claim and one Distribution will be made with respect to the aggregated Claim.

    3.    <u>Special Rules for Distributions to Holders of Disputed Claims</u>. Except as otherwise provided in the Plan or agreed to by the relevant parties: (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (b) any Person that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on account of the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Disputed Claims have been Allowed or expunged. Any Distributions arising from property Distributed to Holders of Allowed Claims in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such Distributions were earlier paid to Holders of Allowed Claims in such Class.

    G.    <u>Undeliverable and Non-Negotiated Distributions.</u>

    1.    <u>Undeliverable Distributions</u>. If any Distribution to a Holder of an Allowed Claim is returned to Reorganized Debtor as undeliverable, no further Distributions shall be made to such Holder unless and until Reorganized Debtor is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time such previously undeliverable Distribution shall be made to such Holder within ninety (90) days of receipt of such Holder's then-current address or other necessary information; <u>provided</u>, <u>however</u>, that any such undeliverable Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days after the date of the initial attempted Distribution. After such date, all unclaimed property or interests in property shall revert to Reorganized Debtor automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property

30

laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred.

2.    <u>Non-Negotiated Distributions</u>. If any Distribution to a Holder of an Allowed Claim is not negotiated for a period of 180 days after the Distribution, then such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and re-vest in Reorganized Debtor. After such date, all non-negotiated property or interests in property shall revert to Reorganized Debtor automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred.

H.    <u>Manner of Payment under the Plan</u>. Except as otherwise specifically provided in the Plan, at the option of Reorganized Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of Reorganized Debtor.

I.    <u>Satisfaction of Claims</u>. Except as otherwise specifically provided in the Plan, any Distributions to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

J.    <u>Minimum Cash Distributions</u>. Reorganized Debtor shall not be required to make any Distribution of Cash less than twenty dollars ($20) to any Holder of an Allowed Claim; <u>provided</u>, <u>however</u>, that if any Distribution is not made pursuant to this <u>Article VI.J</u>, such Distribution shall be added to any subsequent Distribution to be made on behalf of the Holder's Allowed Claim.

K.    <u>Postpetition Interest</u>. Interest shall not accrue on Impaired Claims; no Holder of an Impaired Claim shall be entitled to interest accruing on or after the Petition Date on any such Impaired Claim, and interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

L.    <u>Setoffs</u>. The Debtor and Reorganized Debtor may, pursuant to the applicable provisions of the Bankruptcy Code, or applicable non-bankruptcy law, set off against any applicable Allowed Claim (before any Distribution is made on account of such Claim) any and all claims, rights, Causes of Action, debts or liabilities of any nature that the Debtor or Reorganized Debtor may hold against the Holder of such Allowed Claim; <u>provided</u>, <u>however</u>, that the failure to effect such a setoff shall not constitute a waiver or release of any such claims, rights, Causes of Action, debts or liabilities.

M.    <u>Claims Paid or Payable by Third Parties</u>.  A Claim shall be reduced in full, and such Claim shall be Disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such Holder shall repay, return, or deliver any Distribution held by or

transferred to such Holder to Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

    N.    <u>Compliance with Tax Requirements and Allocations</u>.

    1.    In connection with the Plan and all Distributions hereunder, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any federal, state or local taxing authority, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, including tax certification forms, or establishing any other mechanisms it believes are reasonable and appropriate.

    2.    For tax purposes, Distributions in full or partial satisfaction of an Allowed Claim shall be allocated first to the principal amount of the Allowed Claim, with any excess allocated to unpaid interest that accrued on such Claim.

## ARTICLE VII
## <u>Procedures for Resolving Contingent, Unliquidated, and Disputed Claims</u>

    A.    <u>Applicability</u>. All Disputed Claims against the Debtor, other than Administrative Expense Claims, shall be subject to the provisions of this <u>Article VII</u>. All Administrative Expense Claims shall be determined and, if Allowed, paid in accordance with <u>Article III</u>.

    B.    <u>Allowance of Claims</u>. After the Effective Date, Reorganized Debtor shall have and retain any and all rights and defenses that the Debtor, had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim becomes Allowed by Final Order of the Bankruptcy Court or by agreement between the Debtor or Reorganized Debtor, on the one hand, and the Holder of such Claim, on the other.

    C.    <u>Claims Administration Responsibilities</u>. Except as otherwise expressly provided in the Plan, from and after the Effective Date, Reorganized Debtor shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

    D.    <u>Estimation of Claims</u>. The Debtor (before the Effective Date) or Reorganized Debtor (on and after the Effective Date) may at any time request that the Bankruptcy Court to estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim or whether

the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any Person. If the estimated amount of a Claim constitutes a maximum limitation on such Claim, the Debtor (before the Effective Date) or Reorganized Debtor (on and after the Effective Date) may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

E.    No Distributions Pending Allowance. No Distributions or other consideration shall be paid with respect to any Claim that is a Disputed Claim unless and until all objections to such Disputed Claim are resolved and such Disputed Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court or agreement between the Debtor or Reorganized Debtor, on the one hand, and the Holder of such Claim, on the other.

F.    Distributions after Allowance. To the extent that a Disputed Claim (or a portion thereof) becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.

G.    Disputed Claims Reserve. The provisions of this Article VII.G apply only to the extent that any General Unsecured Claims remain Disputed as of any Distribution Date.

1.    If any General Unsecured Claims remain Disputed as of any Distribution Date, the undistributed portion of the GUC Fund shall be held in a segregated account. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination from the IRS, the Disbursing Agent shall treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and, to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Debtor, Reorganized Debtor, the Disbursing Agent, and holders of General Unsecured Claims) shall be required to report for tax purposes in a manner consistent with the foregoing. The Disputed Claims Reserve shall be responsible for payment, out of the assets of the Disputed Claims Reserve, of any taxes imposed on the Disputed Claims Reserve or its assets.

2.    The Debtor or Reorganized Debtor, as applicable, shall determine the amount of the Disputed Claims Reserve, if applicable, as of the initial date, based on the least of: (a) the asserted amount of the Disputed General Unsecured Claims in the applicable Proofs of Claim; (b) the amount, if any, estimated by the Bankruptcy Court pursuant to (i) section 502(c) of the Bankruptcy Code or (ii) Article VII.D if, after the Effective Date, a motion is filed by Reorganized Debtor to estimate such Claim; (c) the amount otherwise agreed to by the Debtor (or Reorganized Debtor, if after the Effective Date) and the Holders of such Disputed General Unsecured Claims; or (d) any amount otherwise approved by the Bankruptcy Court. Upon each

33

Distribution Date, Reorganized Debtor shall deposit into the Disputed Claims Reserve an amount of Cash equal to the amount sufficient to make the Distributions to which Holders of Disputed General Unsecured Claims would be entitled under the Plan as of the applicable Distribution Date if the Disputed General Unsecured Claims were Allowed Claims as of such date.

3.      If a Disputed General Unsecured Claim becomes an Allowed Claim after the first Distribution Date, the Disbursing Agent shall, on the next Distribution Date after the Disputed General Unsecured Claim becomes an Allowed Claim (or, if the Disputed General Unsecured Claim becomes an Allowed Claim after the final Distribution Date, as soon as practicable after Allowance), Distribute to the Holder of such Claim, exclusively from the Disputed Claims Reserve, the amount of Cash that such Holder would have received in that Distribution and all prior Distributions (if any) if such Holder's General Unsecured Claim had been Allowed as of the Effective Date, net of any allocable taxes imposed thereon or otherwise payable by the Disputed Claims Reserve.

4.      If a Disputed Claim is Disallowed, in whole or in part, then on the Distribution Date next following the date of Disallowance, Cash shall be released from the Disputed Claims Reserve, as applicable, which Cash shall then be unreserved and unrestricted, and which shall be available for Distribution to Holders of Allowed General Unsecured Claims.

5.      If any assets remain in the Disputed Claims Reserve after all Disputed General Unsecured Claims have been resolved, such assets shall be placed in the GUC Fund and Distributed Pro Rata to all Holders of Allowed General Unsecured Claims on the next Distribution Date (or, if all Disputed General Unsecured Claims are resolved after the final Distribution Date, as soon as practicable thereafter).

H.      Adjustment to Claims Register without Objection. Any duplicate Proof of Claim that has been paid or satisfied, or any Proof of Claim that is clearly marked as amended or superseded by a subsequently filed Proof of Claim that remains on the Claims Register, may be adjusted or expunged on the Claims Register by Notice and Reorganized Debtor' stipulation between the parties in interest without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

I.      Time to File Objections to Claims. Any objections to Claims must be filed on or before the applicable Claims Objection Deadline, as such deadline may be extended from time to time. The expiration of the Claims Objection Deadline shall not limit or affect the Debtor's or Reorganized Debtor's rights to dispute Claims asserted in the ordinary course of the Debtor's or Reorganized Debtor's operations other than through a Proof of Claim.

J.      Treatment of Untimely Claims. Except as provided herein or otherwise agreed, any and all creditors that have filed Proofs of Claim after the applicable Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution.   No Distributions shall be made on account of any Proof of Claim filed after the applicable Bar Date.

**ARTICLE VIII**
**Conditions Precedent to Confirmation and Effective Date**

A.      Conditions Precedent to Confirmation of the Plan.

Confirmation of the Plan shall not occur unless each of the following conditions precedent has been satisfied or waived in accordance with Article VIII.C.

1.      The Bankruptcy Court shall have entered the Disclosure Statement Approval Order, in form and substance reasonably acceptable to the Debtor.

2.      The Debtor and Equity Security Holder, shall have approved of or accepted the Confirmation Order;

3.      The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order and any other order in conjunction therewith, in form and substance acceptable to the Debtor, and Equity Security Holder.

B.      Conditions Precedent to the Effective Date.

Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date shall occur on the first Business Day on which each of the following conditions precedent has been satisfied or waived pursuant to Article VIII.C:

1.      (a) at least fifteen (15) days shall have passed following entry of the Confirmation Order; (b) no court shall have entered an order staying the occurrence of the Effective Date pending an appeal of the Confirmation Order; and (c) no request for a stay of the occurrence of the Effective Date shall be pending;

2.      The Equity Security Holder shall have paid the Equity Security Holder's contribution to the Debtor;

3.      the Debtor shall have adequately funded the Professional Fee Escrow Account so as to permit the Debtor to make Distributions on account of Allowed Professional Fee Claims in accordance with Article III;

4.      the Debtor shall have funded the Class 3A Fund in accordance with Article IV.E;

5.      the Debtor shall have funded the initial deposit in the amount of $1,000,000 into the GUC Fund in accordance Article IV.F;

6.      the Debtor shall have obtained all authorizations, consents, certifications, approvals, rulings, opinions or other documents that are necessary to implement and effectuate the Plan;

7.      all actions, documents, and agreements necessary to implement and effectuate the Plan shall have been affected or executed; and

8.      the Debtor shall have filed a notice of occurrence of the Effective Date.

C.      <u>Waiver of Conditions Precedent</u>. To the fullest extent permitted by law, each condition precedent in this <u>Article VIII,</u> may be waived or modified, in whole or in part, in the discretion of the Debtor, and Equity Security Holder.  Any waiver or modification of a condition precedent which is permitted under this <u>Article VIII</u> may be effectuated at any time, without notice, without leave or order of the Bankruptcy Court, and without any other formal action other than proceedings to Confirm or consummate the Plan.

D.      <u>Substantial Consummation of the Plan</u>. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

E.      *Vacatur* <u>of Confirmation Order; Non-Occurrence of Effective Date</u>. If the Confirmation Order is vacated or the Effective Date does not occur within 180 days after entry of the Confirmation Order (subject to extension by the Debtor in its sole discretion), the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall (1) constitute a waiver or release of any Causes of Action by or Claims against or Interests in the Debtor or any Person; (2) prejudice in any manner the rights of the Debtor, any holders of a Claim or Interest or any other Person; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any holders of a Claim or Interest, or any other Person in any respect; or (4) be used by the Debtor or any other Person as evidence (or in any other way) in any litigation, including with respect to the strengths and weaknesses of positions, arguments or claims of any of the parties to such litigation.

## ARTICLE IX
## Effect of Plan Confirmation

A.      <u>Vesting of Assets in Reorganized Debtor</u>. On the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all property comprising the Estate shall vest in Reorganized Debtor free and clear of all Liens, Claims, interests, charges, other Encumbrances and liabilities of any kind. On and after the Effective Date, Reorganized Debtor may continue its operations and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

B.      <u>Retention of Certain Causes of Action</u>. In accordance with section 1123(b)(3) of the Bankruptcy Code, all Causes of Action that the Debtor may hold against any Person shall vest in Reorganized Debtor on the Effective Date. Thereafter, subject to <u>Article IV.O</u>, Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval

of the Bankruptcy Court. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any specific Cause of Action as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action. The Debtor or Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

C.     Binding Effect. As of the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents entered into in connection with the Plan by the Debtor or Reorganized Debtor, shall be binding upon the Debtor, the Estate, Reorganized Debtor, all holders of Claims against and Interests in the Debtor, each such holder's respective successors and assigns, and all other Persons that are affected in any manner by the Plan, regardless of whether the Claim or Interest of such holder is Impaired under the Plan or whether such holder has accepted the Plan. Except as otherwise expressly provided in the Plan, all agreements, instruments and other documents filed in connection with the Plan shall be given full force and effect and shall bind all Persons referred to therein on and after the Effective Date, whether or not such agreements are actually issued, delivered or recorded on or after the Effective Date and whether or not such Persons have actually executed such agreement.

D.     Post-Confirmation Interim Injunction and Stays. All Injunctions and stays arising under or entered during the Chapter 11 Case, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

E.     Discharge.

1.     Discharge of the Debtor. Except as expressly provided in the Plan or the Confirmation Order, the treatment of Claims under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, termination and release of, all Claims and Interests of any nature whatsoever against or in the Debtor or any of its assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, and, as of the Effective Date, the Debtor shall be deemed discharged and released, and each holder of a Claim or Interest and any successor, assign, and affiliate of such holder shall be deemed to have forever waived, discharged and released the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities, and all debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in this Chapter 11 Case whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (d) the holder of a Claim based upon such debt is deemed to have accepted the Plan.

2.    Discharge Injunction. From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtor or any of its assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtor, Reorganized Debtor, or its property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtor, Reorganized Debtor, or its property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtor, Reorganized Debtor, or its property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtor (including Reorganized Debtor) and its properties and interests in property. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtor pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time to the extent such judgment relates to a discharged Claim or Interest.

F.    **Exculpation.  From and after the Effective Date, none of the Exculpated Parties shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Case, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtor (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith, willful misconduct, or fraud). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.**

G.    **Injunction Related to Exculpation**. **As of the Effective Date, all holders of Claims that are the subject of Article IX.F are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article**

38

**IX.E or exculpated under <u>Article IX.F</u>; <u>provided</u>, <u>however</u>, that the injunctions set forth in this <u>Article IX.G</u> shall not, and shall not be construed to, enjoin any Person that is the subject of <u>Article IX.F</u> from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.**

H.    <u>Disallowed Claims</u>. On and after the Effective Date, the Debtor and Reorganized Debtor shall be fully and finally discharged of any and all liability or obligation on any and all Disallowed Claims, and any order Disallowing a Claim that is not a Final Order as of the Effective Date solely because of a Person's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.

I.    <u>No Successor Liability</u>. Except as otherwise expressly provided in the Plan, Reorganized Debtors do not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify any Person, or otherwise have any responsibility for any liabilities or obligations of the Debtor relating to or arising out of the operations of or assets of the Debtor, whether arising prior to, on or after the Effective Date. Neither the Debtor, nor the Reorganized Debtor, is, or shall be deemed to be, a successor to any of the Debtor by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character; <u>provided</u>, <u>however</u>, that Reorganized Debtor shall assume and remain liable for its obligations specified in the Plan and the Confirmation Order.

## ARTICLE X
## <u>Retention of Jurisdiction</u>

A.    <u>Jurisdiction</u>. Until the Chapter 11 Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including the jurisdiction necessary to ensure that the purposes and intent of the Plan are carried out.

B.    <u>General Retention</u>. Following Confirmation of the Plan, the administration of the Chapter 11 Case will continue until the Chapter 11 Case is closed by a Final Order of the Bankruptcy Court. The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claims and the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claims. The failure by the Debtor or Reorganized Debtor to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of the rights of the Debtor or Reorganized Debtor, as the case may be, to object to or reexamine such Claim in whole or part.

C.    <u>Specific Purposes</u>. In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or relating to, the Chapter 11 Case and the Plan, including jurisdiction to:

1.    modify the Plan after Confirmation pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules;

2.       correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Plan, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance in the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

3.       enforce and interpret the terms and conditions of the Plan, and the Plan Documents;

4.       enter such orders or judgments, including injunctions (a) as are necessary to enforce the title, rights and powers of Reorganized Debtor, (b) to execute, implement, or consummate the provisions of the Plan, the Confirmation Order, and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or the Confirmation Order, and (c) as are necessary to enable holders of Claims to pursue their rights against any Person that may be liable therefor pursuant to applicable law or otherwise;

5.       hear and determine any and all motions, adversary proceedings, contested or litigated matters, and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date (which jurisdiction shall be non-exclusive as to any such non-core matters);

6.       hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters, including contested matters arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Chapter 11 Case;

7.       hear and determine all applications for compensation of Professionals and reimbursement of expenses under sections 328, 330, 331, or 503(b) of the Bankruptcy Code;

8.       hear and determine any Causes of Action arising during the period from the Petition Date to the Effective Date, or in any way related to the Plan;

9.       hear and determine any and all motions for the rejection, assumption or assignment of Executory Contracts or Unexpired Leases and the Allowance of any Claims resulting therefrom;

10.      hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

11.      hear and determine the Allowance and/or Disallowance of any Claims, including Administrative Expense Claims, against or Interests in the Debtor or its Estate, including any objections to any such Claims or Interests, and the compromise and settlement of any Claim, including Administrative Expense Claims, against or Interest in the Debtor or its Estate;

12.      hear and resolve disputes concerning any reserve under the Plan or the administration thereof;

13. hear and determine all questions and disputes regarding title to the assets of the Debtor, or its Estate;

14. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated, or if Distributions pursuant to the Plan are enjoined or stayed;

15. hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Case;

16. resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Case, the Bar Date established in the Chapter 11 Case, or any deadline for responding or objecting to a Cure Amount, in the Chapter 11 Case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

17. enter in aid of implementation of the Plan such orders as are necessary, including the implementation and enforcement of the Discharges and Injunctions, described herein; and

18. enter a Final Order or decree concluding or closing the Chapter 11 Case.

D.    <u>Courts of Competent Jurisdiction</u>. To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference to the "Bankruptcy Court" in this <u>Article X</u> shall be deemed to be replaced by the "District Court." If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XI
## <u>Miscellaneous Provisions</u>

A.    <u>Closing of Chapter 11 Case</u>. After the Chapter 11 Case has been fully administered, the Reorganized Debtor shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close such Chapter 11 Case.

B.    <u>Amendment or Modification of the Plan</u>.

1.    <u>Plan Modifications</u>. The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and after entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend, modify or supplement the Plan in the manner provided for by section 1127

of the Bankruptcy Code or as otherwise permitted by law, in the Chapter 11 Case without additional disclosure pursuant to section 1125 of the Bankruptcy Code unless section 1127 of the Bankruptcy Code requires additional disclosure. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtor may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

        2.       <u>Other Amendments</u>. Before the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court; provided that notice of such proposed adjustments or modifications is filed on the docket at least five (5) days before the Effective Date and no creditor objects to such adjustments or modifications before the Effective Date. In the event such an objection is filed, the Bankruptcy Court shall rule on the objection.

        C.       <u>Revocation or Withdrawal of Plan</u>. The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if Confirmation of the Plan or the occurrence of the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim against, or any Interest in, the Debtor or any other Person; (ii) prejudice in any manner the rights of the Debtor or any other Person; or (iii) constitute an admission of any sort by the Debtor or any other Person.

        D.       <u>Request for Expedited Determination of Taxes</u>. The Debtor and Reorganized Debtor, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date to and including the Effective Date.

        E.       <u>Non-Severability of Plan Provisions</u>. If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the

consent of the Debtor or Reorganized Debtor (as the case may be), and (3) non-severable and mutually dependent.

F.      Notices. All notices, requests, and demands to or upon the Debtor or Reorganized Debtor to be effective shall be in writing (including by email transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

> If to the Debtor, addressed to:
>
>> DigitalSpeed Communications, Inc.
>> Attn: Adam Pasternack, President
>> 100 Front Street, Suite 220
>> West Conshohocken, PA 19428
>> Phone: (215) 963-7200
>> Email: apasternack@digitalspeed.com
>
> With a copy to counsel:
>
>> Karalis PC
>> Attention:  Aris J. Karalis, Esquire
>> 1900 Spruce Street
>> Philadelphia, PA 19103
>> Phone: (215) 546-4500
>> Email:  akaralis@karalislaw.com

G.      Notices to Other Persons. After the occurrence of the Effective Date, Reorganized Debtor has authority to send a notice to any Person providing that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Person must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; provided, however, that the United States Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary. After the occurrence of the Effective Date, Reorganized Debtor is authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to the United States Trustee and those Persons that have filed such renewed requests.

H.      Immediate Binding Effect. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of any Person named or referred to in the Plan and the successors and assigns of such Person.

I.      Timing of Distributions or Actions. In the event that any payment, Distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then such payment, Distribution, act or deadline shall be deemed to occur on the next

succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day, shall be deemed to have been completed or to have occurred as of the required date.

J.    <u>Deemed Acts</u>. Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred by virtue of the Plan or the Confirmation Order without any further act by any Person.

K.    <u>Entire Agreement</u>. The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings and documents. No Person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

L.    <u>Plan Supplement</u>. Any and all exhibits, lists, or schedules referred to herein, but not filed with the Plan, shall be contained in the Plan Supplement to be filed with the Clerk of the Bankruptcy Court prior to the Confirmation Hearing on the Plan, and such Plan Supplement is incorporated into and is part of the Plan as if set forth in full herein. The Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours at the Bankruptcy Court's website (http://ecf.paeb.uscourts.gov).

M.    <u>Withholding of Taxes</u>. The Disbursing Agent, or any other applicable withholding agent, as applicable, shall withhold from any assets or property Distributed under the Plan any assets or property which must be withheld for foreign, federal, state and local taxes payable with respect thereto or payable by the Person entitled to such assets to the extent required by applicable law.

N.    <u>Filing of Reports and Payment of Quarterly Fees</u>.

1.    Until the occurrence of the Effective Date, the Debtor shall continue to file the UST Form 11-MOR, Monthly Operating Report, and shall timely pay to the United States Trustee the Quarterly Fees due through and including the Effective Date.

2.    Following the Effective Date, the Reorganized Debtor shall file a UST Form 11-PCR, Post Confirmation Report, every calendar quarter when it comes due and shall timely pay to the United States Trustee the Quarterly Fees when due and payable. The Reorganized Debtor shall remain obligated to pay its Quarterly Fees to the United States Trustee for its Chapter 11 Case until the earlier of: (1) the case is closed; (2) the entry of a final decree; (3) the conversion of the case to a case under another chapter of the Bankruptcy Code; or (4) the dismissal of the case.

O.    <u>Effective Date Actions Simultaneous</u>. Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

[SIGNATURE PAGE TO FOLLOW]

44

**DIGITALSPEED COMMUNICATIONS, INC.,**
as a Debtor and a Debtor in Possession


By: ___/s/ Adam Pasternack_____
      Name:  Adam Pasternack
      Title:   President




**KARALIS PC**


By: ___/s/ Aris J. Karalis_____
      Aris J. Karalis, Esquire
      Robert W. Seitzer, Esquire
      Robert M. Greenbaum, Esquire
      1900 Spruce Street
      Philadelphia, PA  19103
      215-546-4500
      Attorneys for the Debtor




[SIGNATURE PAGE TO PLAN OF REORGANIZATION]