# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **DIGITALSPEED COMMUNICATIONS, INC.,** | : | **Case No. 25-10500 (AMC)** |
| | : | |
| **Debtor.** | : | |
| | : | |

---

## DISCLOSURE STATEMENT WITH RESPECT TO
## PLAN OF REORGANIZATION PROPOSED BY
## DIGITALSPEED COMMUNICATIONS, INC., DEBTOR-IN-POSSESSION

---

*[THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION
OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED
UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE UNITED
STATES BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING
SUBMITTED FOR APPROVAL, BUT HAS NOT BEEN APPROVED BY
THE UNITED STATES BANKRUPTCY COURT]*

**KARALIS PC**
**Aris J. Karalis**
**Robert W. Seitzer**
**Robert M. Greenbaum**
**1900 Spruce Street**
**Philadelphia, PA 19103**
**(215) 546-4500**
**Attorneys for Debtor and**
**Debtor-In-Possession**

**Dated:   April 28, 2025**

**DISCLAIMER**

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING VOTES TO ACCEPT, AND OBTAINING CONFIRMATION OF, THE PLAN AND MAY NOT BE RELIED UPON FOR ANY OTHER PURPOSE.

ALL CREDITORS AND HOLDERS OF INTERESTS IN THE DEBTOR ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, THE EXHIBITS AND SCHEDULES ATTACHED TO THE PLAN, AND DOCUMENTS INCLUDED IN THE PLAN SUPPLEMENT, WHICH CONTROL OVER THE DISCLOSURE STATEMENT IN THE EVENT OF ANY INCONSISTENCY OR INCOMPLETENESS. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE OF THIS DISCLOSURE STATEMENT, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THIS DATE. ALTHOUGH THE DEBTOR MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTOR HAS NO AFFIRMATIVE DUTY TO DO SO, EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, BY ORDER OF THE BANKRUPTCY COURT OR IN ACCORDANCE WITH APPLICABLE LAW.  ANY STATEMENTS IN THIS DISCLOSURE STATEMENT CONCERNING THE PROVISIONS OF ANY DOCUMENT ARE NOT NECESSARILY COMPLETE, AND IN EACH INSTANCE, REFERENCE IS MADE TO SUCH DOCUMENT FOR THE FULL TEXT THEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

THIS DISCLOSURE STATEMENT AND ANY DOCUMENTS APPROVED AS A PART OF THE SOLICITATION PACKAGE ARE THE ONLY DOCUMENTS TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN. NO SOLICITATION OF VOTES MAY BE MADE UNTIL THE BANKRUPTCY COURT HAS APPROVED THIS DISCLOSURE STATEMENT AND THE DEBTOR HAS DISTRIBUTED THIS DISCLOSURE STATEMENT IN ACCORDANCE WITH THE SOLICITATION PROCEDURES. NO PERSON HAS BEEN AUTHORIZED TO DISTRIBUTE ANY INFORMATION CONCERNING THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STAEMENT AND ANY ACCOMPANYING DOCUMENTS.

THE DEBTOR'S MANAGEMENT PREPARED THE FINANCIAL PROJECTIONS APPENDED TO THIS DISCLOSURE STATEMENT. ALTHOUGH THE DEBTOR HAS

2

PRESENTED THESE PROJECTIONS WITH NUMERICAL SPECIFICITY, THEY HAVE NECESSARILY BASED THE PROJECTIONS ON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE BY MANAGEMENT OF THE DEBTOR AT THE TIME OF PREPARATION, MAY NOT BE REALIZED, AND ARE INHERENTLY SUBJECT TO SIGNIFICANT OPERATIONAL, ECONOMIC, AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH WILL BE BEYOND THE DEBTOR'S OR REORGANIZED DEBTOR'S CONTROL. THE DEBTOR CAUTIONS THAT THEY CANNOT MAKE ANY REPRESENTATIONS AS TO THE ACCURACY OF THESE PROJECTIONS OR TO THE DEBTOR'S OR REORGANIZED DEBTOR'S ABILITY TO ACHIEVE THE PROJECTED RESULTS. SOME ASSUMPTIONS INEVITABLY WILL NOT MATERIALIZE. FURTHER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THESE PROJECTIONS WERE PREPARED MAY DIFFER FROM ANY ASSUMED FACTS AND CIRCUMSTANCES. ALTERNATIVELY, ANY EVENTS AND CIRCUMSTANCES THAT COME TO PASS MAY WELL HAVE BEEN UNANTICIPATED, AND THUS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. THE PROJECTIONS, THEREFORE, MAY NOT BE RELIED UPON AS A GUARANTY OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL, FUTURE RESULTS. IN LIGHT OF THESE RISKS AND UNCERTAINTIES, THE FORWARD-LOOKING EVENTS AND CIRCUMSTANCES DISCUSSED IN THIS DISCLOSURE STATEMENT MAY NOT OCCUR, AND ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THOSE ANTICIPATED IN THE FORWARD-LOOKING STATEMENTS. THE DEBTOR AND THE REORGANIZED DEBTOR DO NOT UNDERTAKE ANY OBLIGATION TO PUBLICLY UPDATE OR REVISE ANY FORWARD- LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE.

ACCORDINGLY, THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCE IMPLY THAT THE INFORMATION CONTAINED HEREIN IS CORRECT OR COMPLETE AS OF ANY TIME SUBSEQUENT TO THE DATE HEREOF.  MOREOVER, THE PROJECTIONS ARE BASED ON ASSUMPTIONS THAT, ALTHOUGH BELIEVED TO BE REASONABLE BY THE DEBTOR, MAY DIFFER FROM ACTUAL RESULTS.

AS TO THE CONTESTED MATTERS, CAUSES OF ACTION, ADVERSARY PROCEEDINGS AND ANY OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED  AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSABLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE

TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR OR REORGANIZED DEBTOR.

[Remainder of Page Intentionally Left Blank]

# TABLE OF CONTENTS

ARTICLE I     INTRODUCTION ...................................................................1

    A.    Background ..................................................................1

    B.    Voting and Confirmation ............................................1

    C.    Summary and Description of Classes and Treatment ...............3

    D.    Modifications and Amendments ..................................6

ARTICLE II    DEBTOR OVERVIEW AND CORPORATE HISTORY ...............7

    A.    Organization Overview – the Debtor's Relationship with Slingshot, ICI and Other Related Parties ....................7

    B.    The Merger...................................................................8

    C.    Corporate Structure and Prepetition Indebtedness.............9

    D.    Summary of the Debtor's Assets and Liabilities as of the Petition Date............................................................9

ARTICLE III    THE CHAPTER 11 CASE ...........................................10

    A.    Events Leading to the Chapter 11 Case: The Prism Group Litigation...............................................................10

        1.    The First Prism Trial.....................................10

        2.    Slingshot's Successful Appeal ......................11

        3.    The Second Prism Trial, the Judgment and the Amended Judgment with Mathematical Errors ............11

    B.    Commencement of the Case and First Day Relief...............12

    C.    Retention of Chapter 11 Professionals............................13

    D.    Filing of Schedules and Assets and Liabilities and Statement of Financial Affairs ..................................13

    E.    Claims Bar Date..........................................................13

    F.    Prism's Contested Motions before the Bankruptcy Court and Prism's Discovery...............................................13

        1.    Prism's Motion to Dismiss Chapter 11 Case ...............13

        2.    Prism's Expedited Motion to Prohibit Debtor Payments to ICI.......................................14

        3.    Prism's Motion to Terminate Exclusive Period.............14

        4.    Prism's Extensive Discovery in Connection with the Prism's Motion...................................14

    G.    The Debtor's Investigation of the Alleged Avoidable Transfers ...............................................................15

    H.    Debtor's Objection to Prism's Proof of Claim .............15

ARTICLE IV    OVERVIEW OF THE PLAN ........................................16

    A.    General......................................................................16

    B.    Distributions..............................................................16

    C.    Treatment of Unclassified Claims ..............................16

        1.    Administrative Expense Claims Generally....................17

        2.    Professional Fee Claims................................17

3. Priority Tax Claims................................................................19
D. Classification of Claims and Interests Summary ......................................19
E. Treatment of Claims and Interests ....................................................21
    1. Class 1. PADOR Secured Claim...............................................21
    2. Class 2. Other Priority Claims .............................................22
    3A. Class 3A. Ongoing General Unsecured Claims............................22
    3B. Class 3B. Other General Unsecured Claims .............................23
    4. Class 4. Equity Interests in Debtor .......................................24
F. Special Provisions Governing Unimpaired Claims ....................................24
G. Elimination of Vacant Classes ........................................................24
H. Voting Classes, Presumed Acceptance by Non-Voting Classes................................................................................24
I. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ..................................................................24
J. Controversy Concerning Impairment ..................................................24
K. Subordinated Claims .................................................................25
L. Means for Implementation of the Plan.................................................25
    1. General ...............................................................................25
    2. Settlement of Claim and Interests ...........................................25
    3. Continued Legal Existence of the Debtor ...................................26
    4. Operations of the Debtor between Confirmation and the Effective Date ...........................................................26
    5. Equity Security Holder's Contribution and Pasternack Settlement Payment ...................................................26
    6. Class 3A Fund ......................................................................26
    7. GUC Fund .........................................................................26
    8. Sources of Consideration for Distributions.................................26
    9. Reorganized Debtor's Directors and Officers.............................27
    10. Due Authorization..............................................................27
    11. Release of Liens ..................................................................27
    12. Effectuating Documents and Further Transactions.......................27
    13. Disbursing Agent ...............................................................27
    14. Single Satisfaction of Allowed General Unsecured Claims ................................................................................27
    15. Exemption from Certain Transfer Taxes and Recording Fees...........................................................................27
    16. Preservation of Causes of Action ...........................................28
M. Vesting of Assets in the Reorganized Debtor ...........................................28
N. Retention of Certain Causes of Action .................................................28
O. Treatment of Executory Contracts and Unexpired Leases ........................29
    1. Assumption and Rejection of Executory Contracts and Unexpired Leases ...........................................................29
    2. Rejection Damages Claims ....................................................29
    3. Cure of Defaults under Executory Contracts and Unexpired Leases................................................................30
    4. Dispute Resolution ..............................................................31

|   |   | 5. | Contracts and Leases Entered into After the Petition Date | 32 |
|   |   | 6. | Insurance Policies | 32 |
|   |   | 7. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 32 |
|   |   | 8. | Reservation of Rights | 32 |
|   | P. | Provisions Governing Distributions | | 33 |
|   |   | 1. | Distributions Generally | 33 |
|   |   | 2. | Distributions on Account of Certain Claims Allowed as of the Effective Date | 33 |
|   |   | 3. | Distribution on Account of Allowed General Unsecured Claims | 33 |
|   |   | 4. | Distributions on Account of Disputed Claims Allowed After the Effective Date | 33 |
|   |   | 5. | Right and Powers of Disbursing Agent | 33 |
|   |   | 6. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 34 |
|   |   | 7. | Undeliverable and Non-Negotiated Distributions | 34 |
|   |   | 8. | Manner of Payment under the Plan | 35 |
|   |   | 9. | Satisfaction of Claims | 35 |
|   |   | 10. | Minimum Cash Distributions | 35 |
|   |   | 11. | Postpetition Interest | 35 |
|   |   | 12. | Setoffs | 35 |
|   |   | 13. | Claims Paid or Payable by Third Parties | 35 |
|   |   | 14. | Compliance with Tax Requirements and Allocations | 36 |
|   | Q. | Procedures for Resolving Contingent, Unliquidated, and Disputed Claims | | 36 |
|   |   | 1. | Applicability | 36 |
|   |   | 2. | Allowance of Claims | 36 |
|   |   | 3. | Claims Administration Responsibilities | 36 |
|   |   | 4. | Estimation of Claims | 36 |
|   |   | 5. | No Distributions Pending Allowance | 37 |
|   |   | 6. | Distributions After Allowance | 37 |
|   |   | 7. | Disputed Claims Reserve | 37 |
|   |   | 8. | Adjustment to Claims Register without Objection | 38 |
|   |   | 9. | Time to File Objections to Claims | 38 |
|   |   | 10. | Treatment of Untimely Claims | 38 |
|   | R. | Discharges, Releases, Exculpations and Injunctions | | 39 |
|   |   | 1. | Discharge | 39 |
|   |   | 2. | Exculpation | 39 |
|   |   | 3. | Injunction Related to Exculpation | 40 |
|   | S. | Disallowed Claims | | 40 |
|   | T. | No Successor Liability | | 40 |
|   | U. | Retention of Jurisdiction | | 41 |
|   |   | 1. | General Retention | 41 |
|   |   | 2. | Specific Purposes | 41 |

         3.    Courts of Competent Jurisdiction ................................................41
   V.   Miscellaneous Provisions...........................................................................41
         1.    Closing of Chapter 11 Case ........................................................41
         2.    Amendment or Modification of the Plan .....................................41
         3.    Revocation or Withdrawal of the Plan.........................................42
         4.    Request for Expedited Determination of Taxes............................42
         5.    Non-Severability of Plan Provisions.............................................42
         6.    Notices ........................................................................................43
         7.    Notices to Other Persons.............................................................43
         8.    Immediate Binding Effect............................................................43
         9.    Timing of Distributions or Actions..............................................43
         10.   Deemed Acts ...............................................................................44
         11.   Entire Agreement ........................................................................44
         12.   Plan Supplement .........................................................................44
         13.   Withholding Taxes.......................................................................44
         14.   Filing of Reports and Payments of Quarterly Fees.......................44
         15.   Effective Date Actions Simultaneous ..........................................44

ARTICLE V       SOLICITATION PROCEDURES AND REQUIREMENTS .........................45
   A.   Voting Summary and Deadline....................................................................45
   B.   Solicitation Procedures ..............................................................................46
         1.    Vote Required for Acceptance by a Claim of Claims....................46
         2.    Solicitation Package....................................................................46
         3.    Solicitation Procedures, Ballots, and Voting
               Deadline ......................................................................................47
   C.   Classes Entitled to Vote on the Plan ..........................................................48
         1.    Holders of Claims Entitled to Vote..............................................49
   D.   Certain Factors to be Considered Prior to Voting.......................................50

ARTICLE VI      CONFIRMATION PROCEDURES.............................................................51
   A.   Hearing on Plan Confirmation ...................................................................51
   B.   Requirements for Confirmation of the Plan................................................51
   C.   Acceptance by an Impaired Class ...............................................................52
   D.   Best Interests Test ......................................................................................52
   E.   Liquidation Analysis and Application of the "Best Interest
        Test"..........................................................................................................53
   F.   Feasibility...................................................................................................53
   G.   Conditions Precedent to Consummation of the Plan ..................................53
   H.   Vacatur of Confirmation Order; Non-Occurrence of
        Effective Date ...........................................................................................54

ARTICLE VII     RISK FACTORS .......................................................................................54
   A.   Risks Relating to the Debtor's Operations, Financial
        Condition and Certain Bankruptcy Law Considerations .............................54
         1.    There is a Risk that the Plan Will Not Be Confirmed....................54
         2.    Risk of Non-Confirmation of the Plan..........................................54

iv

|   |   |   |   |
|---|---|---|---|
| | 3. | Alternative Plans of Reorganization | 55 |
| | 4. | Non-Consensual Confirmation | 55 |
| | 5. | Parties in Interest May Object to the Debtor's Classification of Claim and Interests | 55 |
| | 6. | The Debtor May Object to the Amount or Classification of a Claim | 55 |
| | 7. | The Conditions Precedent to the Plan Confirmation and the Effective Date of the Plan May Not Occur | 55 |
| | 8. | Possible Tax Ramifications | 56 |
| | 9. | Risk of Non-Occurrence of the Effective Date | 56 |
| | 10. | Amendment of Plan Prior to Confirmation by the Debtor | 56 |
| | 11. | Financial Projections | 56 |
| | 12. | Voting Requirements | 56 |
| | 13. | Conversion into a Chapter 7 Case | 57 |
| | 14. | Dismissal of the Chapter 11 Case | 57 |
| | 15. | Parties in Interest May Object to the Plan Based on Section 1129(a)(7) of the Bankruptcy Code | 57 |
| B. | | Additional Factors | 57 |
| | 1. | Debtor Could Withdraw the Plan | 57 |
| | 2. | Debtor Has No Duty to Update | 57 |
| | 3. | No Representations Outside this Disclosure Statement Are Authorized | 57 |
| | 4. | No Legal or Tax Advice is Provided by this Disclosure Statement | 58 |
| | 5. | No Admission Made | 58 |
| ARTICLE VIII | | CONCLUSION AND RECOMMENDATION | 58 |

# ARTICLE I
# INTRODUCTION

A.   <u>Background</u>.  This Disclosure Statement (as may be amended, altered, modified or supplemented from time to time, the "<u>Disclosure Statement</u>") is being furnished by the Debtor in connection with the Plan of Reorganization dated April 28, 2025 (as may be amended, altered, modified or supplemented from time to time, the "<u>Plan</u>"),[1] pursuant to section 1125 of title 11 of the United States Code, and in connection with the solicitation of votes to accept or reject the Plan. The Plan described in this Disclosure Statement is proposed by the Debtor.

The Debtor commenced the Chapter 11 Case to protect and preserve its business, maximize property available to satisfy its creditors and to reorganize its affairs.  Following over ten years of litigation, a *single* creditor had threatened and taken actions in a Massachusetts state court proceeding that, if successful, had the potential to destroy the value of the Debtor's assets and its ongoing business enterprise to the detriment of every other creditor of the Debtor and stakeholder. The Debtor's filing of this Chapter 11 Case was necessary to preserve and rehabilitate its business as a going concern for the benefit of the Debtor, the Debtor's estate and all creditors.

The Disclosure Statement sets forth certain information regarding the Debtor's prepetition operating and financial history, its reasons for seeking protection and reorganization under chapter 11 and significant events that have occurred during the Chapter 11 Case.  This Disclosure Statement also describes certain terms and provisions of the Plan, certain effects of confirmation of the Plan, certain risk factors associated with the Plan and the manner in which distributions will be made under the Plan.  In addition, the Disclosure Statement discusses the confirmation process and voting procedures that holders of Claims entitled to vote on the Plan must follow for their votes to be counted.

By order dated _____, 2025, the Bankruptcy Court approved this Disclosure Statement in accordance with section 1125 of the Bankruptcy Code and found that it contained "adequate information" sufficient to enable a hypothetical investor of the relevant Class to make an informed judgment about the Plan, and authorized its use in connection with the solicitation of votes with respect to the Plan. **Approval of this Disclosure Statement does not, however, constitute a determination by the Bankruptcy Court as to the accuracy or completeness of the information contained herein nor an endorsement by the Bankruptcy Court as to the fairness or merits of the Plan.** No solicitation of votes may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code.

A copy of the Plan accompanies this Disclosure Statement. The rules of interpretation set forth in <u>Article I.B</u> of the Plan govern the interpretation of this Disclosure Statement. **Please note that if any inconsistencies exist between this Disclosure Statement and the Plan, the Plan shall govern in all respects.**

B.   <u>Voting and Confirmation</u>.  **Article V of this Disclosure Statement specifies the deadlines, procedures, and instructions for voting to accept or reject the Plan, as well as the applicable standards for tabulating ballots, used in voting on the Plan (each, generally**

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

referred to herein as a "**Ballot**"). **The following is an overview of certain information related to voting that is contained in** **Article V** **of this Disclosure Statement and elsewhere in this Disclosure Statement.**

This Disclosure Statement is being transmitted in order to provide adequate information to enable holders of Claims in Class 1 (PADOR Secured Claims), Class 3A (Ongoing General Unsecured Claims) and Class 3B (Other General Unsecured Claims, which Claims in such Classes are Impaired and entitled to vote on the Plan, to make an informed judgment in exercising their right to vote to accept or reject the Plan.

Each Class of Claims entitled to vote shall have accepted the Plan pursuant to the requirements of section 1126(c) of the Bankruptcy Code if at least two-thirds (2/3) in amount and more than one-half (1/2) in number of those voting in each such Class voted to accept the Plan. Assuming the requisite acceptances are obtained, the Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing scheduled for _____, 2025, at __: _.m. (Eastern Time) before the Bankruptcy Court. The Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on those parties who have requested notice under Bankruptcy Rule 2002 and the Entities who have filed an objection to the Plan, if any, without further notice to parties in interest. The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing. Subject to section 1127 of the Bankruptcy Code, the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

Additionally, section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation. Any objection or response to Confirmation of the Plan must: (i) be in writing; (ii) state the name and address of the objecting party and the nature and amount of the Claim of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (iv) be filed with the Bankruptcy Court, 900 Market Street, Philadelphia, PA 19107 together with proof of service on or before _____, **2025  at 4:00 p.m. (Eastern Time)** (the "Plan Objection Deadline"), and served on the Debtor and certain other parties in interest in accordance with the Solicitation Procedures Order (defined below) so that they are received on or before the Plan Objection Deadline.

Debtor's counsel will provide additional copies of all materials and will process and tabulate the Ballots, as defined in the *Debtor's Motion for Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [D.I.●] (the "Solicitation Procedures Motion"), filed on [●], 2025, for Classes 1, 3A and 3B, as applicable. You may obtain these documents from the Debtor's counsel free of charge by: (a) calling the offices of Debtor's counsel at 215-546-4500.  You may also access from these materials for a fee via PACER at http://www.paeb.uscourts.gov.

As further described in the Solicitation Procedures (which are annexed to the Solicitation Procedures Order as Exhibit 1), to be counted, your Ballot indicating acceptance or rejection of the Plan must be received by Debtor's counsel no later than 4:00 p.m. (Eastern Time) on _____, 2025 (the "Voting Deadline"), unless the Debtor, in its sole discretion, extends the period during which votes will be accepted on the Plan, in which case the term "Voting Deadline" shall mean the last date on, and time by which, such period is extended. Any executed Ballot that does not indicate either an acceptance or rejection of the Plan or indicates both an acceptance and rejection of the Plan will not be counted as an acceptance or rejection and will not count toward the tabulations required pursuant to either section 1129 of the Bankruptcy Code.

Prior to deciding whether and how to vote on the Plan, each holder of a Claim entitled to vote should consider carefully all of the information in this Disclosure Statement, including Article VII entitled "Risk Factors." **Each holder of a Claim entitled to vote on the Plan should review this Disclosure Statement and the Plan and all Exhibits hereto and thereto before submitting a Ballot. This Disclosure Statement contains a summary of certain provisions of the Plan and certain other documents and financial information. The Debtor believes that these summaries are fair and accurate as of the date hereof and provide adequate information with respect to the documents summarized; however, such summaries are qualified to the extent that they do not set forth the entire text of those documents and as otherwise provided herein.**

C.    Summary and Description of Classes and Treatment.    Except for Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, which are not required to be classified, all Claims and Interests are divided into Classes under the Plan. The following chart summarizes the projected distributions to holders of Allowed Claims against and Interests in the Debtor under the Plan.    This chart is only a summary of such classification and treatment and reference should be made to the entire Disclosure Statement and the Plan for a complete description of the classification and treatment of Claims and Interests. The ability to receive distributions under the Plan depends upon the ability of the Debtor to obtain Confirmation of the Plan and meet the conditions to Confirmation and effectiveness of the Plan, as discussed in this Disclosure Statement.

Moreover, although every reasonable effort was made to be accurate, the projections of estimated recoveries are only an estimate. Any estimates of Claims or Interests in this Disclosure Statement may vary from the final amounts allowed by the Bankruptcy Court. As a result of the foregoing and other uncertainties which are inherent in the estimates, the estimated recoveries in this Disclosure Statement may vary from the actual recoveries received. The projected recoveries set forth below may change based upon changes in the amount of Allowed Claims, as well as other factors related to the Debtor's operations and general economic conditions. The Debtor reserves the right to modify the Plan consistent with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

The summary of classification and treatment of Claims against and Interests in the Debtor is as follows:

| Class | Designation[2] | Treatment under the Plan | Impairment and Entitlement | Estimated Amount and Approximate Percentage Recovery[3] |
|---|---|---|---|---|
| 1 | PADOR Secured Claim | The Holder of the Class 1 Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim the following payments:  (i) as soon as practicable after the Effective Date, a lump sum payment in the amount of $50,672.11; and (ii) the balance of the PADOR claim ($300,000.00) shall be paid over thirty-six (36) months following the Effective Date (the first payment being payable on the thirty-first Business Day after the Effective Date), in equal monthly payments of principal and interest ($9,263.13), calculated with respect to the secured amount of the Allowed Class 1 Claim at a fixed rate of 7.0%; and amortized over a three-year period from the commencement of such payments; or (iii) such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of the Class 1 Claim and the Debtor.  The Class 1 Claim may be prepaid, in whole or in part, at any time without any prepayment penalty or fee. | Impaired **Entitled to Vote** | Estimated Amount: $350,672.11 Estimated Percentage Recovery: 100% |

[2] The Debtor reserves the right to eliminate any Class of Claims in the event they determine that there are no Claims in such Class.

[3] Figures with respect to the Allowed amounts of the Claims set forth in this chart are based upon the Debtor's estimates of such Claims as of the date of this Disclosure Statement.  These estimates are based on various assumptions.  The actual amounts of Allowed Claims may differ significantly from these estimates should one or more underlying assumptions prove to be incorrect.  Such differences may adversely affect the percentage of recovery to holders of Allowed Claims under the Plan.  Moreover, the estimated recoveries set forth herein are based on certain assumptions, the realization of which are beyond the Debtor's control.

| Class | Designation[2] | Treatment under the Plan | Impairment and Entitlement | Estimated Amount and Approximate Percentage Recovery[3] |
|---|---|---|---|---|
| 2 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, shall receive, at the option of the applicable Debtor, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim; (i) payment in full in Cash on the Effective Date, or as soon as reasonably practicable thereafter; or (ii) such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code. | Unimpaired<br><br>**Not Entitled to Vote**<br><br>(Presumed to Accept) | Estimated Amount:  $0.00<br><br>Estimated Percentage Recovery: 100% |
| 3A | Ongoing General Unsecured Claims | Except to the extent that a Holder of an Ongoing General Unsecured Claim and the Debtor agree to less favorable treatment, each Holder of an Allowed Ongoing General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for its Claim, its Pro Rata share of the Class 3A Fund within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Ongoing General Unsecured Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date. | Impaired<br><br>**Entitled to Vote** | Estimated Amount: $25,000<br><br>Estimate Percentage Recovery: 100% |
| 3B | Other General Unsecured Claims | Except to the extent that a Holder of a Class 3B Other General Unsecured Claim and the Debtor agree to less favorable treatment, each Holder of an Allowed Class 3B Other General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Other General Unsecured Claim, its Pro Rata share of the following: | Impaired<br><br>**Entitled to Vote** | Estimated Amount:<br><br>$2,000,000<br><br>Estimated Percentage Recovery: 20% |

5

| Class | Designation[2] | Treatment under the Plan | Impairment and Entitlement | Estimated Amount and Approximate Percentage Recovery[3] |
|---|---|---|---|---|
| | | i. the initial distribution of $1,000,000 from GUC Fund within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Class 3B Other General Unsecured Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date); and

ii. for each year after the Effective Date (for a four (4) year period after the Effective Date), a distribution of the amount of $250,000 from the GUC Fund. The first distribution shall be made twelve (12) months after the Effective Date, the second Distribution to be made twenty-four (24) months after the Effective Date, the third Distribution to be made thirty-six (36) month after the Effective Date, and the fourth Distribution to be made forty-eight (48) months after the Effective Date. | | |
| 4 | Equity Interests in Debtor | As of the Effective Date, the Interests in the Debtor shall remain unchanged and equal to the structure that existed on the Petition Date. | Unimpaired

**Not Entitled to Vote** (Presumed to Accept) | Estimated Amount: N/A

Estimated Percentage Recovery: N/A |

     D.   <u>Modification and Amendments</u>.  Subject to the limitations contained in the Plan, the Debtor reserves the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its rights to alter, amend, or modify materially the Plan with respect to the Debtor one or more times including after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

For the avoidance of doubt, such modification(s) may include a settlement pursuant to Bankruptcy Rule 9019 to resolve any unresolved controversies, including, but not limited to, those described in this Disclosure Statement. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XI.B of the Plan.

If the Bankruptcy Court finds, after a hearing on notice to the parties in interest in the Chapter 11 Case, that the proposed modification does not materially and adversely change the treatment of the Claim or Interest of any holder thereof who has not accepted in writing the proposed modification, the Bankruptcy Court may deem the Plan to be accepted by all holders of Claims or Interests who have previously accepted the Plan.  Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

For the avoidance of doubt, any and all rights of holders of Claims against the Debtor or Interests in the Debtor are expressly reserved under Bankruptcy Rule 3019 and any other applicable provisions under the Bankruptcy Rules, Local Rules of the Bankruptcy Court, or Bankruptcy Code.

## ARTICLE II
## DEBTOR OVERVIEW AND CORPORATE HISTORY

A.    <u>Organization Overview -- the Debtor's Relationship with Slingshot, ICI and Other Related Parties</u>.  The Debtor is a domestic corporation formed and incorporated under the laws of the Commonwealth of Pennsylvania on April 1, 2003. The Debtor is a telecommunications service provider/carrier/utility that is registered, regulated and compliant with the Federal Communications Commission and other government agencies.  It provides services to direct customers and resellers, including private-label resellers that market the Debtor's services under their name/brand to their end-user customers. Mr. Pasternack is the sole shareholder of the Debtor.

Since on or about 2008, in order to provide these services, the Debtor licensed various fax/billing software (the "<u>License</u>") from Innovative Communications, Inc. ("<u>ICI</u>"), a related entity.  The Debtor allows its customers, including Slingshot Technologies Corporation ("<u>Slingshot</u>"), to use the License to service their customers.  In addition to the License, ICI also provides the Debtor with (a) management services, (b) administrative support services, (c) customer and client billing, payment processing and collection services, support and related functions, (d) human resources services, (e) management and maintenance of information technology services, (f) accounting support services, (g) insurance management services, and (h) other agreed services, all of which are integral to Debtor's operations and the services that the Debtor provides to its underlying customers.  Notwithstanding that ICI provided the aforementioned services to the Debtor over the last 15 plus years, these terms were memorialized pursuant to an Administrative Services Agreement between the parties, effective January 1, 2025 (the "<u>ASA Agreement</u>").

Slingshot was the Debtor's largest customer until the Debtor and Slingshot entered into the Merger Agreement (as defined below).  Effective as of February 4, 2025, these two entities

7

merged with the Debtor being the surviving entity. Prior to their merger, the Debtor received revenue from Slingshot for its services provided to Slingshot.

Prior to the merger, Slingshot was a domestic corporation formed and incorporated under the laws of the Commonwealth of Pennsylvania on February 1, 1996. Adam Pasternack, the Debtor's President, was also the President, director and sole shareholder of Slingshot. Slingshot provided, now the Debtor provides, telecommunications and fax services that service direct customers and resellers. These services include, but are not limited to, inbound and outbound APIs, Fax-to-Email, Email-to-Fax, Print-to-Fax and customized services and features.

Mr. Pasternack indirectly owns Rocket Messaging, Inc. ("Rocket") and Accelero Communications ("Accelero"), which provide fax broadcasting services to direct customers and resellers. Prior to the merger, Rocket and Accelero provided those services to Slingshot and, after the merger, continue to provide those same services to the Debtor. Mr. Pasternack also owns Chameleon Colocation ("Chameleon"), which was formed on September 12, 2016 under the laws of the Commonwealth of Pennsylvania. Prior to the merger, Chameleon provided various data center and colocation services to both Slingshot and the Debtor and, after the merger, continues to provide those same services to DSCI. Finally, Mr. Pasternack owns ChameleonCloud, Inc. ("CCI"), which was formed on February 24, 2022 under the laws of the Commonwealth of Pennsylvania. CCI is a single source cloud service provider and a customer of the Debtor.

      B.    The Merger. On February 3, 2025, the Debtor (as the *Surviving Entity*) entered into an Agreement and Plan of Merger ("Merger Agreement") with Slingshot (as the *Merged Entity*). Effective as of February 4, 2025 (the "Merger Effective Date"), Slingshot was merged with and into the Debtor. Since the Merger Effective Date, the Debtor has continued to use the name "DigitalSpeed Communications, Inc." and, at times, also does business, as "Slingshot Technologies."

After the Merger Effective Date, the separate existence of Slingshot ceased, and Slingshot is deemed for any and all purposes to be merged with and into the Debtor. As set forth in the Merger Agreement, the Debtor, *inter alia,* possesses all of the rights, privileges, contracts, powers and franchises of a public and private nature of Slingshot, and all property, whether real, personal or mixed, and all debts due to Slingshot on whatever account is now vested in the Debtor, and all property rights, privileges, powers and franchises, and all and every other interest of Slingshot shall thereafter effectively be the property of the Debtor as they were of Slingshot, and the Debtor DSC has agreed to be deemed for any and all purposes to assume all of the liabilities and obligations of Slingshot.

Additionally, as set forth in the Merger Agreement, the officers of Slingshot serving on the Merger Effective Date, if any, shall be and become the officers of the Debtor from and after the Merger Effective Date, until their successors shall be duly qualified and elected.  As further set forth in the Merger Agreement, from and after the Merger Effective Date, the Articles of Incorporation of the Debtor remain as the Articles of Incorporation of the surviving constituent entity until it is amended by appropriate action of the shareholders of the surviving constituent entity, if necessary and appropriate.

The Debtor's principal place of business is located at 100 Front Street, Suite 220, West Conshohocken, PA 19428.

C.    Corporate Structure and Prepetition Indebtedness.  The Debtor does not have any secured indebtedness.  However, in the ordinary course of business, the Debtor incurred unsecured indebtedness to various trade vendors, and service providers, among others.  The Debtor has also incurred substantial legal fees defending a prepetition lawsuit filed in 2014 in the Massachusetts Superior Court, Middlesex County (the "*Prism Group Litigation*" (as described below)) and faces a judgment awarded in the Prism Group Litigation, as set forth in greater detail below.

D.    Summary of the Debtor's Assets and Liabilities as of the Petition Date.  The Debtor filed its Schedules, as amended, with the Bankruptcy Court that listed the assets which are owned by the Debtor or in which the Debtor has an interest as of the Petition Date [D.I. 32 and D.I. 76].

The Debtor's principal assets totaling $1,336,145.12 as of the Petition Date were as follows:

- Cash and Cash Equivalents of $223,301.27;
- Accounts Receivable of $831,064.49; and
- Machinery, Fixtures and Equipment of $281,779.36 (book value).

The Debtor's liabilities totaling $9,415,327.60 as of the Petition Date were as follows:

- Secured Claims of $0.00;[4]
- Priority Claims of $347,256.44; and
- General Unsecured Claims of $9,068,071.16.[5]

---

[4] On 3/19/25, PADOR filed proof of claim No. 4 asserting a claim in the amount of $364,615.89 of which $350,672.11 is designated as a secured claim and, which after review, the Debtor does not dispute. However, the balance of the PADOR claim in the amount of $10,527.58 (designated as an unsecured priority claim) and in the amount of $3,416.20 (designated as an unsecured non-priority claim) are disputed because these are estimated amounts which the Debtor asserts are not due.

[5] Debtor's Schedule F – General Unsecured Claims reflects the disputed litigation claim of Prism Group, Inc. in the amount of $8,355,367.86 based upon an Amended Order of Judgment filed by the Clerk of Court in the Prism Group Litigation, bringing the scheduled amount of General Unsecured Clams to $9,068,071.16; as detailed below, Slingshot has challenged the Clerk's Amended Judgment based upon a mathematical error made by the Clerk in calculating prejudgment interest on the judgment amount as set forth above. Prior to the Petition Date, Slingshot filed a Motion with the Massachusetts Superior Court, Middlesex County to correct this mathematical error, which motion was stayed by the Chapter 11 Case filing.  Prism Group, Inc. filed proof of claim no. 2 in the Debtor's Chapter 11 Case asserting

The Schedules, as amended, filed by the Debtor may be reviewed on the Bankruptcy Court electronic case filing system.

## ARTICLE III
## THE CHAPTER 11 CASE

A.    Events Leading to the Chapter 11 Case: The Prism Group Litigation.

1.    The First Prism Trial. On April 22, 2014, litigation was initiated in the Massachusetts Superior Court, Middlesex County (the "Trial Court"), styled *Nicholas Z. Baran v. Adam Pasternack and Slingshot Technologies Corporation, et al.*, Case No. 1481-cv-04291, by Nicholas Baran in his individual capacity when he filed a complaint against Adam Pasternack in his individual capacity and Slingshot (the "Complaint") for the alleged breach of a 2004 contract that had been entered into between Prism Group, Inc. ("Prism") and a customer of Slingshot, Rocket Messaging, Inc. ("Rocket"). Given that the Complaint sought to assert a breach of contract claim based upon a contract to which neither the plaintiff nor either defendant was a party, the original defendants moved to dismiss the Complaint. On September 5, 2014, the Trial Court allowed the motion to dismiss as to Mr. Pasternack, but granted leave for an amended complaint to be filed consistent with the discussion in its opinion.

On September 25, 2014, Prism proceeded to file an amended complaint as the sole plaintiff styled *Prism Group, Inc. v. Slingshot Technologies Corportation [sic] et al.*, Case No. 1481-cv-04291 (the "Amended Complaint"). By its Amended Complaint, Prism named Slingshot and Rocket as defendants (together, the "Defendants"), again seeking commissions allegedly due under the 2004 agreement between Prism and Rocket. Prism claimed that Slingshot was liable under a contract to which it was not a party because of either successor liability or the alter ego doctrine. The Amended Complaint also included claims for violation of Massachusetts General Laws c. 93A, *quantum meruit* and breach of the implied covenant of good faith and fair dealing.

Prior to trial, Prism's claims were narrowed significantly as the result of three successful motions for partial summary judgment filed by Defendants. The first motion eliminated Prism's pre-April 2008 claims, which were time barred. The second motion eliminated Prism's claims related to five Rocket customers named in the Amended Complaint as to whom Prism failed to ever adduce any evidence that it was not paid in full. The third successful motion for summary judgment eliminated Prism's claim against Slingshot based on successor liability. As a result, the central claim that proceeded to a bench trial before the Trial Court (Honorable Kenneth J. Fishman presiding) in August 2017 was Prism's claim that Rocket had breached the 2004 contract with Prism and that Slingshot was liable for Rocket's breach because it was Rocket's alter ego. *After* the trial had concluded, Prism sought leave to add two new breach of contract claims, alleging for the first time a direct contractual liability on Slingshot's part with respect to commissions for two Slingshot customers, Curaspan and eClinical. Prism attached to its motion a proposed second amended complaint including those claims (the "Second Amended Complaint").

---

a general unsecured claim of $13,101,590.90; the Debtor has objected to the filed Prism Group, Inc.'s proof of claim [claims register [POC No. 2]].

On February 8, 2018, the Trial Court (Judge Fishman *still* presiding) allowed Prism leave to file its Second Amended Complaint, styled *Prism Group, Inc. v. Slingshot Technologies Corportation [sic] et al.*, Case No. 1481-cv-04291, while simultaneously issuing a decision finding in the Defendants' favor on the merits of the claims from the Amended Complaint that had proceeded to trial, including Prism's theory of liability under the alter ego doctrine against Slingshot. Without allowing Defendants the opportunity to plead or otherwise move in response to the Second Amended Complaint, take discovery concerning the newly-added claims or present a defense in light of those claims at trial, the Trial Court immediately entered judgment in Prism's favor on the newly-added claims.

        2.    <u>Slingshot's Successful Appeal</u>. Slingshot timely filed a notice of appeal as to the Trial Court's rulings against it while Prism did not pursue an appeal from the loss of the claims it pled in the Amended Complaint. On April 23, 2020, a unanimous panel of the Massachusetts Appeals Court (the "<u>Appeals Court</u>") held that the Trial Court abused its discretion by not allowing Slingshot the opportunity to obtain and present evidence in its defense to Prism's newly-pleaded claims for breaches of the Curaspan and eClinical agreements. Accordingly, it vacated the judgment against Slingshot. Prism filed an application for reconsideration with the Appeals Court and for a petition for further appellate review with the Massachusetts Supreme Judicial Court, both of which were denied.

Following remand, Slingshot filed an Answer to the Second Amended Complaint and the parties engaged in additional written discovery, conducted third-party discovery and took additional depositions, including a deposition of Nicholas Baran, Prism's sole shareholder, on August 5, 2021. Prism also took the novel position that *Slingshot's* successful appeal following the trial before Judge Fishman had the legal effect of resurrecting all of *Prism's* unsuccessful claims, necessitating additional motion practice and ultimately resulting in the Trial Court granting the Defendants' motion for summary judgment as to the claims asserted in the first trial on *res judicata* grounds on October 28, 2021. Prism later moved to reconsider that decision, but its motion for reconsideration was denied as well.

Additionally, even though the Appeals Court had vacated the judgment entered by Judge Fishman, Prism nevertheless moved in advance of the second trial for the Trial Court to ignore the Appeals Court decision and reinstate and "affirm" Judge Fishman's original judgment. The Trial Court denied Prism's motion on April 13, 2022.

        3.    <u>The Second Prism Trial, the Judgment and the Amended Judgment with Mathematical Errors</u>. The matter then proceeded to a second bench trial before the Trial Court (this time with the Honorable Joshua Wall presiding) beginning on April 25, 2022. Following trial, on November 30, 2022, Judge Wall entered judgment in favor of Prism on its direct contractual claims against Slingshot in the amount of $4,106,289.54 based on finding breaches of two contracts: Curaspan (in May 2009) and eClinical (in August 2013), plus interest and costs.

After Judge Wall denied Slingshot's motions for post-trial relief, and despite the Trial Court's very clear intention to enter judgment for these commission payments that became due each month over these many years, the Clerk of the Trial Court assumed that interest for commissions that accrued during 2009 through 2022 *were all due on April 22, 2014 when the case was filed* and, based on

that assumption, filed on December 1, 2022, an Amended Judgment and Finding of the Court, docket no. 1481-cv-04291, in favor of Prism Group, Inc. and against Slingshot Technologies Corporation adding $4,248,798.32 of interest on top of the $4,106,289.54 of damages awarded by the Trial Court, and statutory costs of $280.00 for a total judgment of $8,355,367.86.

Interest, of course, can never be due for payment obligations *before* they arise, but the Clerk erroneously computed *all* amounts that the Trial Court awarded for the 2014 through 2022 period as if they were due in April 2014 when Prism's lawsuit was first filed. That error resulted in the Clerk calculating that $4,248,798.32 of prejudgment interest was due when the correct amount of interest is less than half that -- $1,671,117.15. The Clerk's error thus overstated the interest due by at least $2,577,681.17.[6]

On December 7, 2022, Slingshot filed a timely appeal, but the Appeals Court affirmed the judgment on October 9, 2024. On December 13, 2024, the Massachusetts Supreme Judicial Court denied Slingshot's Application for Further Appellate Review.

The Massachusetts statute governing prejudgment interest in contract actions is Mass. Gen. L. c. 231 sec. 6C. It directs the clerk to add to the amount of damages interest "at the rate of twelve per cent per annum from the date of the breach." However, in this case, as set forth above, the Clerk erroneously added the full amount of interest on the judgment amount from the date of inception of the case (April 22, 2014).

Settlement negotiations between Slingshot and Prism were unsuccessful. Despite Slingshot's good faith efforts to resolve Prism's disputed claims, on January 31, 2025, Prism's counsel requested the Clerk of the Superior Court of Middlesex County to issue execution in the Prism Group Litigation, *Prism Group, Inc. v. Slingshot Technologies Corporation*, Docket No. 1481-cv-04291. On February 4, 2025, Slingshot filed a Motion to Correct Mathematical Errors in Judgment in the Trial Court to correct the errors made by the Clerk in calculating prejudgment interest on the judgment amount as set forth above.

The culmination of the above events caused the Debtor to seek protection under Chapter 11 in order to afford the Debtor the opportunity to reorganize its affairs and propose a plan of reorganization for the benefit of all stakeholders.

      B.   <u>Commencement of the Case and First Day Relief</u>. On the Petition Date, the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code with the Bankruptcy Court. As of the date hereof, the Debtor has continued, and will continue on the Effective Date, to operate its businesses and manage its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

      Also, on the Petition Date, the Debtor filed a number of motions seeking typical "first day" relief in its chapter 11 case authorizing the Debtor to maintain its operations in the ordinary course. This relief was designed to ensure a seamless transition into the chapter 11 process and allow the

---

[6] *See* discussion below detailing Slingshot's Motion to Correct Mathematical Errors in Judgment filed in the Trial Court. Additionally, upon further review of the calculations in the Motion to Correct, the overstatement of interest is greater than $2,577,681.17.

Debtor to maintain its operation in the ordinary course, so as to function smoothly while its case progressed. The Bankruptcy Court granted substantially all of the relief requested in the First Day Motions and entered various orders authorizing the Debtor to, among other things:

- continue paying employee wages, benefits and reimbursable expenses [D.I. 6];
- provide utility companies with adequate assurance of payment to ensure uninterrupted telecommunication and internet services for its customers [D.I. 7]; and
- continue the use of the Debtor's bank accounts, and use of existing business forms [D.I. 8].

    C.    <u>Retention of Chapter 11 Professionals</u>. On the Petition Date, the Debtor filed an application to retain Karalis PC as bankruptcy counsel [D.I. 12]. On February 20, 2025, the Bankruptcy Court entered an Order approving the retention of Karalis PC as bankruptcy counsel [D.I. 36]. Thereafter, on February 25, 2025, the Debtor filed an application to retain Asterion, Inc. as financial advisors [D.I. 39]. On March 17, 2025, the Bankruptcy Court entered an Order approving the retention of Asterion, Inc. as financial advisors [D.I. 56].

    D.    <u>Filing of Schedules and Assets and Liabilities and Statement of Financial Affairs</u>. In accordance with and pursuant to Bankruptcy Court Rule 1007, the Debtor filed its Schedules and Statements of Financial Affairs on February 20, 2025 [D.I. 32]; thereafter, the Debtor filed an amended Summary of Schedules, Schedule E/F and G on April 4, 2025 [D.I. 76] and amended Riders "SOFA 3" and "SOFA 4" to the Statement of Financial Affairs on April 17, 2025 [D.I. 85]. The Schedules, as amended, provide summaries of the assets held by the Debtor as of the Petition Date, as well as a listing of the Debtor's liabilities, including secured, unsecured priority, and unsecured non-priority Claims pending against the Debtor during the period prior to the Petition Date.

    E.    <u>Claims Bar Date</u>. The Bankruptcy Court established a Bar Date to file Proofs of Claim in this Chapter 11 Case. The Bar Date fixed by Order of the Court was March 28, 2025 [D.I. 41]. For Claims of Governmental Units, the Bar Date is 180 days from the date of the Order for relief or August 6, 2025.

    F.    <u>Prism's Contested Motions before the Bankruptcy Court and Prism's Discovery</u>.

    1.    <u>Prism's Motion to Dismiss Chapter 11 Case</u>. On March 13, 2025, Prism filed a Motion for an Order Dismissing the Debtor's Chapter 11 Bankruptcy Case ("<u>Prism's Motion to Dismiss</u>") [D.I. 52], together with a Memorandum of Law in support of Prism's Motion to Dismiss [D.I. 52-1]. Among the reasons proffered for its requested relief, Prism alleged that the "Debtor is a mere instrumentality of Adam Pasternack and the hub of an enterprise which has defrauded [Prism]" and, accordingly, Prism had served a letter upon Debtor's counsel requesting "to investigate and pursue *transfers* made by the Debtor and its predecessor entities" ("<u>Alleged Avoidable Transfers</u>"). *See* Prism's Motion to Dismiss at pars. 45 and 46 and Exhibit "C" thereto.[7]

---

[7] Prism's Motion to Dismiss *erroneously* referenced Exhibit "B," but Prism's letter to Debtor's counsel dated March 10, 2025 requesting authority to "investigate, and if appropriate, prosecute all Chapter 5 cause of action against

On March 28, 2025, the Debtor filed the Debtor's Objection and Memorandum of Law in Opposition to Prism's Motion to Dismiss (the "Debtor's Objection and Memo") [D.I. 72].  A hearing on the Prism's Motion to Dismiss is scheduled before the Bankruptcy Court on April 30, 2025.

       2.     Prism's Expedited Motion to Prohibit Debtor Payments to ICI.  On March 21, 2025, Prism filed a Motion for an Order Prohibiting Payments by Debtor, DigitalSpeed Communications, Inc. d/b/a Slingshot Technologies Corporation to Innovative Communication, Inc. and Request for Expedited Hearing ("Prism's Motion to Prohibit Payments" and "Request for Expedited Hearing") [D.I. 59].  In this motion (improperly) seeking injunctive relief, Prism again raised concerns about the Alleged Avoidable Transfers and indicated that, "[i]f the Debtor's case is not dismissed, Prism will request this Court for authority to pursue Innovative Communications, Inc., Adam Pasternack and any immediate or subsequent transferee of all payments received by any of the foregoing from Digital Speed or Slingshot in the four (4) years preceding the Bankruptcy filing."  *See* Prism's Motion to Prohibit Payments at par. 23.  On March 25, 2025, the Debtor filed an Objection to the Prism's Request for Expedited Hearing [D.I. 62], ICI filed a Joinder to the Debtor's Objection [D.I. 63], Prism filed a Supplement in Support of its Request for Expedited Hearing [D.I. 64], and the Bankruptcy Court entered an Order *denying* Prism's Request for Expedited Hearing [D.I. 65].

On April 10, 2025, the Debtor filed an Objection to Prism's Motion to Prohibit Payments [D.I. 80] and ICI filed a Joinder to the Debtor's Objection to Prism's Motion to Prohibit Payments [D.I. 82].  A hearing on the Prism's Motion to Prohibit Payments is also scheduled before the Bankruptcy Court on April 30, 2025.

       3.     Prism's Motion to Terminate Exclusive Period.  On March 27, 2025, Prism filed a Motion to Terminate Exclusive Period ("Prism's Motion to Terminate Exclusivity" and, together with Prism's Motion to Dismiss Case and Prism's Motion to Prohibit Payments, the "Prism Motions") [D.I. 69].  Yet again, in support of this motion, Prism references the Alleged Avoidable Transfers and concluded that the "Debtor will need to value the claims against Innovative and Pasternack which the Debtor is not capable of performing independently or completely."  See Prism's Motion to Terminate Exclusivity at pars. 17 and 18.  On April 10, 2025, the Debtor filed an Objection to Prism's Motion to Terminate Exclusivity [D.I. 81] and ICI filed a Joinder to the Debtor's Objection to Prism's Motion to Terminate Exclusivity [D.I. 83].  A hearing on the Prism's Motion to Terminate Exclusivity is scheduled with the other Prism Motions before the Bankruptcy Court on April 30, 2025.

       4.     Prism's Extensive Discovery in Connection with the Prism Motions.  Prior to filing the Prism Motions, Prism served a request for a Bankruptcy Rule 2004 examination of the Debtor upon Debtor's counsel. However, once Prism's Motion to Dismiss was filed, Prism unleashed a torrent of discovery requests, including, but not limited to, (a) a Notice of Deposition and Document Request directed to the Debtor under Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (b) five (5) Subpoenas and Document Requests directed to ICI, Chameleon Co-Location, Inc. (*sic*), Adam Pasternack, Adrian Puente, and Ian Jenkins, (c) four

---

Innovative Communications, Adam Pasternack, and Chameleon Colocation ("Avoidance Actions")" was actually attached to the Motion as Exhibit "C."

(4) Subpoenas to Produce Documents directed to the Debtor's utility telecom companies, Inteliquent, Inc., Lumen, NumHub, and Nuwave Communications, Inc., and (d) a Subpoena to Produce Documents to the Debtor's former accounting firm, Zelnick Mann & Winikur, PC.

In response to Prism's discovery requests, counsel for the Debtor, ICI and Prism worked to develop a consensual plan of discovery, including the negotiation and execution of a Stipulated Confidentiality and Protective Order [D.I. 79], to facilitate discovery and the Debtor's fulfilment of its obligations under the Bankruptcy Rules. After the Stipulated Confidentiality and Protective Order was approved by the Court, the Debtor and ICI executed upon their consensual discovery plan, and within an agreed timeline for production of documents, produced over eleven thousand pages of documents and facilitated the deposition of Adam Pasternack as an officer of the Debtor and ICI on April 22, 2025.

G.    The Debtor's Investigation of the Alleged Avoidable Transfers.  As detailed above, the Debtor sought and received the Court's authority to retain Asterion, Inc. ("Asterion") as its financial advisor. A primary reason for the Debtor's retention of Asterion was to engage an independent, third-party consultant to effectuate a detailed and comprehensive evaluation and investigation of the Alleged Avoidable Transfers, including a preference analysis of all transfers made with ninety (90) days of the Petition Date and all transfers made to "insiders"[8] within one (1) year of the Petition Date under section 547(b) of the Bankruptcy Code, as well as, a fraudulent conveyance analysis of the Debtor's transfers to "insiders" for the four (4) year period prior to the Petition Date under sections 548 of the Bankruptcy Code and Pennsylvania law applicable herein under section 544 of the Bankruptcy Code.

Based upon Asterion's independent review and evaluation of the Alleged Avoidable Transfers, it identified only two avoidable transfers totaling less than $25,000, including a Debtor distribution to Mr. Pasternack in the amount of $12,375.

H.    Debtor's Objection to Prism's Proof of Claim.  On April 28, 2025, the Debtor filed its objection to Prism's Proof of Claim No. 2 [D.I. 89] based upon, *inter alia*, the MA Trial Court Clerk's mathematical error in calculating the interest on the Damages Award, as well as Prism's calculation of post-Judgment interest on the Clerk's Amended Judgment. Specifically, the Debtor objects to Prism's Proof of Claim because it incorporates and relies upon the Clerk's improper assumption and calculation that commission payments which became due on a monthly basis over an approximately eight (8) year period were *all* retroactively due on April 22, 2014 when Prism commenced its litigation. Based upon that erroneous assumption, the Clerk filed the Amended Judgment adding $4,248,798.32 of interest on top of the Damages Award of $4,106,289.54 for a total (after costs) of $8,355,367.86. Thereafter, Prism calculates interest on the Amended Judgment to the Petition Date, but computes interest on interest (contrary to the Massachusetts statue regarding the application of simple interest at twelve (12%); as a result, Prism's compounding of interest is not authorized and the Prism Claim is further overstated.  Finally, Prism overestimates the Curaspan (naviHealth/Optum) commissions earned from September 2023 to the Petition Date. The objection is pending before the Bankruptcy Court and is scheduled for hearing on June 11, 2025.

---

[8] "Insiders" as defined in section 101(31)(B) of the Bankruptcy Code, including ICI, Mr. Pasternack, Chamelon Colocation and officers of the Debtor.  *See* 11 U.S. C. § 101(31)(B).

## ARTICLE IV
## OVERVIEW OF THE PLAN

A.  <u>General</u>.  This Article of the Disclosure Statement summarizes certain relevant provisions of the Plan. The confirmation of a plan of reorganization is the principal objective of a chapter 11 case. A plan of reorganization sets forth the means for treating claims against, and equity interests in, a debtor. Confirmation of a plan of reorganization by a bankruptcy court makes it binding on the debtor, any person or Entity acquiring property under the plan, and any creditor of, or equity interest holder in, the debtor, whether or not such creditor or equity interest holder has accepted the plan or received or retains any property under the plan. Subject to certain limited exceptions and other than as provided in a plan itself or in a confirmation order, a confirmation order discharges the debtor from any debt that arose prior to the date of confirmation of the plan of reorganization.

Pursuant to <u>Article IV</u> of the Plan, on or after the Confirmation Date, the Debtor shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions consistent with the Plan as may be necessary or appropriate to enable it to implement the provisions of the Plan before, on, or after the Effective Date.

**YOU SHOULD READ THE PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

B.  <u>Distributions</u>.  One of the key concepts under the Bankruptcy Code is that only Claims and Interests that are "allowed" may receive distributions under a chapter 11 plan. This term is used throughout the Plan and the descriptions below. In general, an Allowed Claim means that the Debtor agrees, or if there is a dispute, the Bankruptcy Court determines, that the Claim, and the amount thereof, is in fact a valid obligation of the Debtor. A detailed discussion of the treatment and anticipated means of satisfaction for each Class of Allowed Claims is set forth below.

C.  <u>Treatment of Unclassified Claims</u>.  The treatment of unclassified Claims are as follows:

| Class | Designation | Treatment under the Plan | Estimated Amount Impairment and Entitlement to Vote |
|-------|-------------|--------------------------|------------------------------------------------------|
| N/A | Administrative Expense Claims | Each holder of an Allowed Administrative Expense Claim shall receive payment of Cash in an amount equal to the unpaid portion of such Allowed Administrative Expense Claim. | Unimpaired **Not Entitled to Vote** (Presumed to Accept) |

16

| Class | Designation | Treatment under the Plan | Estimated Amount Impairment and Entitlement to Vote |
|---|---|---|---|
| N/A | Professional Fee Claims | Each holder of an Allowed Professional Fee Claim shall receive payment in Cash from funds held in the Professional Fee Reserve. | Unimpaired **Not Entitled to Vote** (Presumed to Accept) |
| N/A | Priority Tax Claims | Each holder of an Allowed Priority Tax Claim shall receive Cash in an amount equal to such Allowed Priority Tax Claim. | Unimpaired **Not Entitled to Vote** (Presumed to Accept) |

1.    Administrative Expense Claims Generally.  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with respect to such Allowed Administrative Expense Claim, each holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims, which are governed by Article III.B of the Plan) shall receive, on account of and in full and final satisfaction of its Allowed Administrative Expense Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Expense Claim in accordance with the following:  (1) if such Administrative Expense Claim is Allowed on or prior to the Effective Date, no later than 45 days after the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Expense Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Expense Claim is based on liabilities incurred by the Debtor in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Expense Claim, without any further action by the Holder of such Allowed Administrative Expense Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtor, or the Reorganized Debtor, as applicable; or (5) at such time and upon such terms as set forth in the Final Order of the Bankruptcy Court.

**HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE EXPENSE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST THE DEBTOR OR ITS PROPERTY, AND SUCH ADMINISTRATIVE EXPENSE CLAIMS SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE.**

2.    Professional Fee Claims.

a.    Final Fee Applications. All Professionals or other Persons requesting the final Allowance and payment of compensation and/or reimbursement of expenses pursuant to

17

sections 328, 330, 331 and/or 503(b), for services rendered during the period from the Petition Date to and including the Effective Date shall file and serve final applications for Allowance and payment of Professional Fee Claims on counsel to the Debtor and the United States Trustee no later than the first Business Day that is forty-five (45) days after the Effective Date. Objections to any Professional Fee Claim must be filed and served on Reorganized Debtor and the applicable Professional within fourteen (14) calendar days after the filing of the final fee application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtor or Reorganized Debtor, as applicable, and the Professional requesting Allowance and payment of a Professional Fee Claim).

b.     Professional Fee Escrow Account.    As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtor shall establish and fund a Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amounts, plus a reasonable cushion amount determined by the Debtor.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.  No Liens, Claims or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way.  Funds held in the Professional Fee Escrow Account shall not be considered property of the Estate, the Debtor, the Class 3A Fund, or the GUC Fund.

The amount of the Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtor from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after the such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; provided, however, that the Reorganized Debtor's obligations with respect to the Allowed Professional Fee Claims shall not be limited by or deemed limited to the balance of funds held in the Professional Fee Escrow Account.  To the extent the funds in the Professional Fee Escrow Account are insufficient to satisfy the Allowed Professional Fee Claims in full, each Holder of an Allowed Professional Fee Claim shall have an Allowed Administrative Expense Claim for any deficiency, which will be satisfied as soon as reasonably practicable by the Reorganized Debtor.  When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall be promptly paid to the Reorganized Debtor without any further notice to or action, or approval of the Bankruptcy Court or any other Entity.

c.     Professional Fee Amount.    The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtor before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtor no later than five (5) days before the anticipated Effective Date; provided that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by such estimates. If a professional does not provide an estimate, the Debtor may estimate the unpaid and unbilled fees and expenses of such Professional.  The total

aggregate amount so estimated as of the Effective Date shall be utilized by the Debtor to determine the amount to be funded to the Professional Fee Escrow Account.

           d.    <u>Post-Effective Date Fees and Expenses</u>. From and after the Effective Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

       3.    <u>Priority Tax Claims</u>.  Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

       D.    <u>Classification of Claims and Interests Summary</u>.  The Plan establishes a comprehensive classification of Claims and Interests. The table below summarizes the classification, treatment, voting rights, and Claims and Interests, by Class, under the Plan.

| Class | Designation | Treatment under the Plan | Impairment and Entitlement |
|---|---|---|---|
| 1 | PADOR Secured Claim | The Holder of the Class 1 Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim the following payments:  (i) as soon as practicable after the Effective Date, a lump sum payment in the amount of $50,672.11; and (ii) the balance of the PADOR claim ($300,000.00) shall be paid over thirty-six (36) months following the Effective Date (the first payment being payable on the thirty-first Business Day after the Effective Date), in equal monthly payments of principal and interest ($9,263.13), calculated with respect to the secured amount of the Allowed Class 1 Claim at a fixed rate of 7.0%; and amortized over a three-year period from the commencement of such payments; or (iii) such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of the Class 1 Claim and the Debtor.  The Class 1 Claim may be prepaid, in whole or in part, at any time without any prepayment penalty or fee. | Impaired<br><br>**Entitled to Vote** |

| Class | Designation | Treatment under the Plan | Impairment and Entitlement |
|---|---|---|---|
| 2 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, shall receive, at the option of the applicable Debtor, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim; (i) payment in full in Cash on the Effective Date, or as soon as reasonably practicable thereafter; or (ii) such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code. | Unimpaired<br><br>**Not Entitled to Vote**<br><br>(Presumed to Accept) |
| 3A | Ongoing General Unsecured Claims | Except to the extent that a Holder of an Ongoing General Unsecured Claim and the Debtor agree to less favorable treatment, each Holder of an Allowed Ongoing General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for its Claim, its Pro Rata share of the Class 3A Fund within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Ongoing General Unsecured Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date. | Impaired<br><br>**Entitled to Vote** |
| 3B | Other General Unsecured Claims | Except to the extent that a Holder of a Class 3B Other General Unsecured Claim and the Debtor agree to less favorable treatment, each Holder of an Allowed Class 3B Other General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Other General Unsecured Claim, its Pro Rata share of the following:<br><br>i.   the initial distribution of $1,000,000 from GUC Fund within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Class 3B Other General Unsecured Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date); and<br><br>ii.   for each year after the Effective Date (for a four (4) year period after the Effective Date), a distribution of the amount of $250,000 from the GUC Fund.  The first distribution shall be made twelve (12) months after the Effective Date, the second Distribution to be made twenty-four (24) months after the Effective Date, the | Impaired<br><br>**Entitled to Vote** |

20

| Class | Designation | Treatment under the Plan | Impairment and Entitlement |
|---|---|---|---|
| | | third Distribution to be made thirty-six (36) month after the Effective Date, and the fourth Distribution to be made forty-eight (48) months after the Effective Date. | |
| 4 | Equity Interests in Debtor | As of the Effective Date, the Interests in the Debtor shall remain unchanged and equal to the structure that existed on the Petition Date. | Unimpaired<br><br>**Not Entitled to Vote** (Presumed to Accept) |

E.      Treatment of Claims and Interests.  Holders of Claims and Interests shall receive the treatment as set forth below:

1.      **Class 1. PADOR Secured Claim.**

a.      Classification.   The Class 1 Claim consists of the Pre-Petition Secured Claim held by PADOR for unpaid pre-petition gross receipts taxes in the amount of $350,672.11 as of the Petition Date, and is a fully secured claim.   The Class 1 Claim holds valid, perfected enforceable Liens on the Debtor's personal property including, property interests, rights and credits up to the Allowed secured amount of the Claim.   On the Effective Date, PADOR shall be deemed to hold an Allowed Class 1 Secured Claim.

b.      Treatment.  The Holder of the Class 1 Claim shall receive, in full satisfaction, settlement, release, and extinguishment of such Claim the following payments: (i) as soon as practicable after the Effective Date, a lump sum payment in the amount of $50,672.11; and (ii) the balance of the PADOR claim ($300,000.00) shall be paid over thirty-six (36) months following the Effective Date (the first payment being payable on the thirty-first Business Day after the Effective Date), in equal monthly payments of principal and interest ($9,263.13), calculated with respect to the secured amount of the Allowed Class 1 Claim at a fixed rate of 7.0%; and amortized over a three-year period from the commencement of such payments; or (iii) such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of the Class 1 Claim and the Debtor.  The Class 1 Claim may be prepaid, in whole or in part, at any time without any prepayment penalty or fee.

c.    <u>Retention of Liens</u>.  Until payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 1 Claim, the Holder of the Allowed Class 1 Claim shall retain its Liens against the Debtor's property to the same extent and priority as exists on the Confirmation Date.

d.    <u>Deficiency Claim</u>.  The Holder of the Class 1 Secured Claim is treated as a fully secured claim and therefore holds no General Unsecured Claim.

e.    <u>Extinguishment of Liens</u>.  Upon payment in full of the amounts to be paid under the Plan to the Holder of the Allowed Class 1 Claim, the Liens securing the Class 1 Allowed Secured Claim shall be extinguished and shall effect a full and final satisfaction of such Claim.

f.    <u>Voting</u>.   Class 1 is impaired by the Plan and PADOR may vote to accept or reject the Plan.

2.    **Class 2.  <u>Other Priority Claims</u>.**

a.    <u>Classification</u>:  Class 2 consists of all Other Priority Claims.

b.    <u>Treatment</u>:  Each Holder of an Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment, shall receive, at the option of the applicable Debtor, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim;

    i.    Payment in full in Cash on the Effective Date, or as soon as reasonably practicable thereafter; or

    ii.    such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code.

c.    <u>Voting</u>:   Class 2 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

3A.    **Class 3A.      <u>Ongoing General Unsecured Claims</u>.**

a.    <u>Classification</u>:  Class 3A consists of all Ongoing General Unsecured Claims.

b.  <u>Treatment</u>:  Except to the extent that a Holder of an Ongoing General Unsecured Claim and the Debtor agree to less favorable treatment, each Holder of an Allowed Ongoing General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for its Claim, its Pro Rata share of the Class 3A Fund within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Ongoing General Unsecured Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date.

c.  <u>Voting</u>:  Class 3A is Impaired under the Plan.  Therefore, Holders of Ongoing General Unsecured Claims are entitled to vote to accept or reject the Plan.

d.  <u>General Provisions</u>:  No interest or other similar postpetition charges will be paid on account of Allowed Class 3A Claims.

3B.  **Class 3B.**     **<u>Other General Unsecured Claims</u>**.

a.  <u>Classification</u>:  Class 3B consists of all Other General Unsecured Claims.

b.  <u>Treatment</u>:  Except to the extent that a Holder of a Class 3B Other General Unsecured Claim and the Debtor agree to less favorable treatment, each Holder of an Allowed Class 3B Other General Unsecured Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for such Allowed Other General Unsecured Claim, its Pro Rata share of the following:

i.  the initial distribution of $1,000,000 from GUC Fund within forty-five (45) days following the later of (a) the Effective Date or (b) the date that such Class 3B Other General Unsecured Claim becomes Allowed (if such Claim becomes Allowed after the Effective Date); and

ii.  for each year after the Effective Date (for a four (4) year period after the Effective Date), a distribution of the amount of $250,000 from the GUC Fund.  The first distribution shall be made twelve (12) months after the Effective Date, the second Distribution to be made twenty-four (24) months after the Effective Date, the third Distribution to be made thirty-six (36) month after the Effective Date, and the fourth Distribution to be made forty-eight (48) months after the Effective Date.

c.     <u>Voting</u>:  Class 3B is Impaired, and each Holder of an Allowed Other General Unsecured Claim is entitled to vote to accept or reject the Plan.

d.     <u>General Provisions</u>:  No interest or other similar postpetition charges will be paid on account of Allowed Class 3B Other General Unsecured Claims.

4.     **Class 4.  <u>Equity Interests in Debtor</u>.**

a.     <u>Classification</u>:  Class 4 consists of all Equity Interests in the Debtor.

b.     <u>Treatment</u>:  As of the Effective Date, the Interests in the Debtor shall remain unchanged and equal to the structure that existed on the Petition Date.

c.     <u>Voting</u>:   Class 4 is unimpaired.  The Holder of the Equity Interests in the Debtor is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holder of Class 4 Equity Interests in the Debtor is not entitled to vote to accept or reject the Plan.

F.     <u>Special Provisions Governing Unimpaired Claims</u>.  Except as otherwise provided in the Plan, nothing in the Plan shall affect the Debtor's rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs of recoupments against any Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are unimpaired shall remain Disputed Claims under the Plan.

G.     <u>Elimination of Vacant Classes</u>.  Any Class of Claims or Interests that does not have at least one Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

H.     <u>Voting Classes, Presumed Acceptance by Non-Voting Classes</u>.  If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

I.     <u>Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code</u>.  Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to <u>Article II.B</u> of the Plan.  The Debtor reserves the right to modify the Plan in accordance with <u>Article XI.B</u> of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or

Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

J.    Controversy Concerning Impairment.  If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Code shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

K.    Subordinated Claims.    Except as expressly provided herein, the allowance, classification, and treatment of Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtor reserves the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

L.    Means for Implementation of the Plan.

1.    General.    On and after the Confirmation Date, the Debtor shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions consistent with the Plan as may be necessary or appropriate to enable it to implement the provisions of the Plan before, on, or after the Effective Date.

2.    Settlement of Claims and Interests.  Pursuant to 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan, including the Pasternack Settlement Agreement, shall constitute and be deemed good-faith compromises and settlements of all Claims, Interests, and controversies among the parties thereto relating to the contractual, legal, equitable and subordination rights that holders of Claims or Interests may have all of which are released, settled, compromised, or otherwise resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromises and settlements under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlements and compromises are fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.

a.    Pasternack Settlement Agreement.    The Plan incorporates the compromise and settlement of all claims and disputes the Debtor has, or may have, against Adam Pasternack, regarding the alleged Avoidance Actions against Adam Pasternack.  The Debtor made payments totaling $12,375 to Mr. Pasternack that were recorded as distributions for tax years ending 2021 and 2022 for which Mr. Pasternack has been unable to locate supporting documents to date.    Even though Mr. Pasternack has asserted defenses to this repayment, he has agreed to refund the entire amount to eliminate further costs and the Debtor will seek approval of this settlement in connection with the confirmation of the Plan.  As part of this compromise and settlement and only upon the Effective Date, Adam Pasternack shall (a) make a cash payment of $12,375 to the Reorganized Debtor (the "Pasternack Settlement Payment").  The Pasternack Settlement Payment is in addition to, and not included in the Equity Security Holder's

Contribution.  The Plan shall constitute a motion by the Debtor for the Bankruptcy Court to approve the proposed Pasternack Settlement Agreement pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.  The proposed Pasternack Settlement Agreement, with its $12,375 payment is fair, reasonable and in all parties' best interests.[9]

       3.     <u>Continued Legal Existence of the Debtor</u>.  The Reorganized Debtor shall continue to exist on and after the Effective Date, with all of the powers it is entitled to exercise under applicable law and pursuant to its articles of formation and bylaws in effect prior to the Effective Date, except to the extent such articles of formation and bylaws are amended.

       4.     <u>Operations of the Debtor between Confirmation and the Effective Date</u>. The Debtor shall continue to operate as a debtor and a debtor-in-possession during the period from the Confirmation Date to the Effective Date.

       5.     <u>Equity Security Holder's Contribution and Pasternack Settlement Payment</u>. On the Effective Date, the Equity Security Holder shall deposit Cash with the Reorganized Debtor equal to (1) the Equity Security Holder's Contribution ($2,000,000,000) to enable the Debtor to make the payments due under the Plan and to continue to operate, and (2) the Pasternack Settlement ($12,375).

       6.     <u>Class 3A Fund</u>.  On the Effective Date, the Reorganized Debtor shall deposit the amount of $25,000 from the Equity Security Holder's Contribution into the GUC Fund.

       7.     <u>GUC Fund</u>.  On the Effective Date, the Reorganized Debtor shall deposit the amount of $1,000,000 from the Equity Security Holder's Contribution into the GUC Fund.  In addition, the Reorganized Debtor shall make four (4) annual deposits into the GUC Fund, each in the amount of $250,000 as follows:  the first deposit twelve (12) months after the Effective Date; the second deposit twenty-four (24) month after the Effective Date; the third deposit thirty-six (36) months after the Effective Date; and the fourth deposit forty-eight (48) months after the Effective Date.

       8.     <u>Sources of Consideration for Distributions</u>.  Distributions under the Plan shall be funded from the following sources:

          a.     the Reorganized Debtor shall fund the initial deposit of $1,000,000 into the GUC Fund and the deposit of $25,000 into the Class 3A Fund with proceeds from the Equity Security Holder's Contribution in accordance with the terms of the Plan and Confirmation Order;

          b.     the Reorganized Debtor shall fund the Distributions on account of and to satisfy Allowed Class 3A Claims exclusively from the Class 3A Fund in accordance with the terms of the Plan and Confirmation Order;

---

[9] The Debtor will file the Pasternack Settlement Agreement with the Plan Supplement.

       c.     the Reorganized Debtor shall fund the Distributions on account of and to satisfy Allowed Class 3B Claims exclusively from the GUC Fund in accordance with the terms of the Plan and Confirmation Order; and

       d.     the Reorganized Debtor shall fund Distributions on account of and to satisfy all other Allowed Claims including, the Cure Amounts, with proceeds from the Equity Security Holder's Contribution, the Pasternack Settlement Payment, and Cash on hand on and after the Effective Date in accordance with the terms of the Plan and the Confirmation Order.

       9.     <u>Reorganized Debtor's Directors and Officers</u>.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, to the extent that there are anticipated changes in Reorganized Debtor's directors and officers, the Debtor will identify any such changes in the Plan Supplement and the nature of any compensation to be paid to any director or officer that is an Insider.  As of the Petition Date and the date of this Plan, the sole director and sole shareholder of the Debtor is Adam Pasternack.

       10.     <u>Due Authorization</u>. As of the Effective Date, all actions contemplated by the Plan that require corporate action of the Debtor, including actions requiring a vote of the Equity Security Holder, and execution of all documentation incident to the Plan, shall be deemed to have been authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by the Bankruptcy Court, members, officers, or directors of the Debtor, Reorganized Debtor, or any other Person.

       11.     <u>Release of Liens</u>. Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens or other security interests against any property of the Debtor's Estate that have not been previously released shall be fully released, settled, and compromised, and the Holder of such Liens or other security interest against any property of the Debtor's Estate shall be authorized to take such action as may be reasonably requested by the Debtor (or Reorganized Debtor, as the case may be) to evidence such releases.

       12.     <u>Effectuating Documents and Further Transactions</u>. The officers of the Debtor are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan in the name of and on behalf of Reorganized Debtor, without the need for any approvals, authorizations, actions, or consents except for those expressly required pursuant to the Plan.  The secretary or any assistant secretary of the Debtor, as applicable, shall be authorized to attest any of the foregoing actions.

       13.     <u>Disbursing Agent</u>. The Disbursing Agent shall have the rights, powers and responsibilities provided in <u>Article VI</u> of the Plan.

       14.     <u>Single Satisfaction of Allowed General Unsecured Claims</u>.  In no event shall any Holder of an Allowed General Unsecured Claim recover more than the full amount of its Allowed General Unsecured Claim under the Plan, as applicable, and to the extent that the Holder

of an Allowed General Unsecured Claim has received, or in the future receives, payment on account of such Allowed General Unsecured Claim from a party that is not a Debtor or Reorganized Debtor, such Holder shall repay, return, or deliver to the applicable Reorganized Debtor, any Distribution held by or transferred to such Holder to the extent the Holder's total recovery on account of its Allowed General Unsecured Claim from the third party and under the Plan exceeds the amount of such Holder's Allowed General Unsecured Claim.

15.     Exemption from Certain Transfer Taxes and Recording Fees. To the maximum extent permitted by section 1146(a) of the Bankruptcy Code and applicable law, any transfers of property pursuant to the Plan by the Reorganized Debtor shall constitute "transfers under a plan" within the purview of 1146(a) of the Bankruptcy Code and shall not be taxed under any law imposing a stamp tax or similar tax.

16.     Preservation of Causes of Action.

a.     In accordance with section 1123(b) of the Bankruptcy Code, the Debtor and Reorganized Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action.

b.     The Debtor and the Reorganized Debtor, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Cause of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.

c.     No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Reorganized Debtor will not pursue any and all available Causes of Action against it.

M.     Vesting of Assets in the Reorganized Debtor.  In accordance with Article IX.A of the Plan, and except as explicitly provided in the Plan, on the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, all property comprising the Estate shall vest in the Reorganized Debtor free and clear of all Liens, Claims, interests, charges, other Encumbrances and liabilities of any kind unless expressly provided by the Plan or the Confirmation Order. On and after the Effective Date, the Reorganized Debtor may continue its operations and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

N.     Retention of Certain Causes of Action.  In accordance with section 1123(b)(3) of the Bankruptcy Code, all Causes of Action that the Debtor may hold against any Person shall vest in Reorganized Debtor on the Effective Date. Thereafter, subject to Article IV.P of the Plan, Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to

judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. The Debtor advises that no Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any specific Cause of Action as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action.   The Debtor or Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

      O.     <u>Treatment of Executory Contracts and Unexpired Leases</u>

      1.     <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.

      a.     As set forth in <u>Article V</u> of the Plan, on the Effective Date, except as otherwise provided in the Plan, all Executory Contracts and Unexpired Leases shall be deemed assumed by Reorganized Debtor without the need for any further notice to or action, order, or approval of the Bankruptcy Court under sections 365 or 1123 of the Bankruptcy Code, except for Executory Contracts or Unexpired Leases: (a) that are identified on the Rejected Contracts and Unexpired Leases Schedule; (b) that previously expired or terminated pursuant to their terms; (c) that the Debtor has previously assumed or rejected pursuant to a Final Order of the Bankruptcy Court; (d) that are the subject of a motion to reject that remains pending as of the Effective Date; (e) as to which the effective date of rejection will occur (or is requested by the Debtor to occur) after the Effective Date; or (f) as to which the Debtor or Reorganized Debtor, as applicable, determine, in the exercise of its reasonable business judgment, that the Cure Amount, as determined by a Final Order or as otherwise finally resolved, would render assumption of such Executory Contract or Unexpired Lease unfavorable to Debtor or Reorganized Debtor; <u>provided</u> that the Debtor reserves the right to seek enforcement of an assumed or assumed and assigned Executory Contract or Unexpired Lease following the Confirmation Date, including seeking an order of the Bankruptcy Court rejecting such Executory Contract or Unexpired Lease for cause.

      b.     Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or rejection, as applicable, of Executory Contracts or Unexpired Leases pursuant to the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code. Except as otherwise set forth in the Plan, the assumption or rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall be effective as of the Effective Date; *provided*, that the rejection of an Unexpired Lease shall be effective as of the later of: (a) the Effective Date; and (b) the date on which the leased premises are unconditionally surrendered to the non-Debtor counterparty to the rejected Unexpired Lease.

      c.     Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or a Final Order of the Bankruptcy Court shall re-vest in and be fully enforceable by Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, the Confirmation Order, or any Final Order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts

or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date, but may be withdrawn, settled, or otherwise prosecuted by Reorganized Debtor.

2.    <u>Rejection Damages Claims</u>. Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim for Rejection Damages Claims, if any, shall be filed within thirty (30) days after the latest to occur of: (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) the effective date of the rejection of such Executory Contract or Unexpired Lease; or (3) the Effective Date (as applicable, the "<u>Rejection Damages Bar Date</u>"). Claims arising from the rejection of an Executory Contract or an Unexpired Lease shall be classified as Class 3B Other General Unsecured Claims and subject to the provisions of <u>Article VI</u> of the Plan and the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.  Any Holder of a Rejection Damages Claim that is required to file a Proof of Claim in accordance with <u>Article V.B</u> of the Plan, but fails to do so on or before the Rejection Damages Bar Date, shall not be treated as a creditor with respect to such Claim for the purposes of voting or distributions, and such Rejection Damages Claim shall be automatically Disallowed, forever barred from assertion, and unenforceable against the Debtor, its Estate, Reorganized Debtor, or its property, whether by setoff, recoupment, or otherwise, without the need for any objection by the Debtor or Reorganized Debtor or further notice to, or action, order, or approval of the Bankruptcy Court, and such Rejection Damages Claim shall be deemed fully satisfied, released, and discharged.

a.    Except as otherwise provided in the Plan, the Debtor shall, on or before the date of filing of the Plan Supplement file the Rejected Contracts and Unexpired Leases Schedule and cause the Rejection Notice to be served on affected counterparties to Executory Contracts or Unexpired Leases to be rejected pursuant to the Plan.

3.    <u>Cure of Defaults under Executory Contracts and Unexpired Leases</u>.

a.    Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Amount in Cash on the Effective Date or in the ordinary course of the Debtor's or Reorganized Debtor's operations, subject to the limitation described below.

b.    Except as otherwise provided in the Plan, the Debtor shall, on or before the date of filing of the Plan Supplement file the Assumed Contracts and Unexpired Leases Schedule and cause the Cure and Assumption Notices to be served on affected counterparties to Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan. Any objection by a non-Debtor counterparty to an Executory Contract or Unexpired Lease to the assumption, assumption and assignment, the related Cure Amount, or adequate assurance, must be filed, served, and actually received by the Debtor on or prior to the deadline for filing objections to the Plan (or such later date as may be provided in the applicable Cure and Assumption Notice); <u>provided</u> that each counterparty to an Executory Contract or Unexpired Lease (a) that the Debtor later determines to assume or (b) as to which the Debtor modifies the applicable Cure Amount, must object to the assumption or Cure Amount, as applicable, by the earlier of: (i) fourteen (14) days after the Debtor serves such counterparty with a corresponding Cure and Assumption Notice; and (ii) the

Confirmation Hearing. **Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease shall be forever barred, estopped, and enjoined from contesting the Debtor's assumption of the applicable Executory Contract or Unexpired Lease and from requesting payment of a Cure Amount that differs from the amounts paid or proposed to be paid by the Debtor or Reorganized Debtor, without the need for any objection by the Debtor or Reorganized Debtor or any further notice to or action, order, or approval of the Bankruptcy Court. Reorganized Debtor may settle any dispute regarding a Cure Amount without any further notice to or action, order, or approval of the Bankruptcy Court**.

c.    To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed, or assumed and assigned, pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or would be deemed breached by the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any change of control or similar provision), then such provision shall be deemed preempted and modified such that neither the Debtor's assumption or assumption and assignment of the Executory Contract or Unexpired Lease, nor any of the transactions contemplated by the Plan, shall entitle the non-debtor counterparty to terminate or modify such Executory Contract or Unexpired Lease or to exercise any other purported default-related rights thereunder.

d.    **The Debtor's assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and payment of any applicable Cure Amount in accordance with the procedures set forth in <u>Article V.C of the Plan</u>, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed, or assumed and assigned, Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Case, including pursuant to the Confirmation Order, shall be deemed Disallowed and expunged as of the later of: (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption; (b) the effective date of such assumption; or (c) the Effective Date, without the need for any objection by the Debtor or Reorganized Debtor or any further notice to or action, order, or approval of the Bankruptcy Court**.

4.    <u>Dispute Resolution</u>. In the event of a timely filed objection regarding: (1) a Cure Amount; (2) the ability of Reorganized Debtor or any assignee to provide adequate assurance of future performance within the meaning of section 365 of the Bankruptcy Code under the Executory Contract or Unexpired Lease to be assumed; or (3) any other matter pertaining to assumption or the requirements of section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon by the Debtor or Reorganized Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtor or Reorganized Debtor, as applicable, shall pay the applicable Cure Amount as soon as reasonably practicable after entry of a Final Order resolving such dispute and approving such assumption, or as may otherwise be agreed upon by the Debtor or Reorganized

Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. To the extent that a dispute regarding the applicable Cure Amount is resolved or determined unfavorably to the Debtor, the Debtor may, in its discretion, reject the applicable Executory Contract or Unexpired Lease after such determination, which rejection shall supersede, nullify, and render of no force or effect any earlier assumption or assumption and assignment. Under no circumstances shall the status of payment of a Cure Amount required by section 365(b)(1) of the Bankruptcy Code following the entry of a Final Order resolving the dispute and approving the assumption prevent or delay implementation of the Plan or the occurrence of the Effective Date.

       5.    <u>Contracts and Leases Entered into After the Petition Date</u>.  Contracts and leases entered into after the Petition Date by the Debtor, including any Executory Contracts and Unexpired Leases assumed by the Debtor, will be performed by the Debtor or Reorganized Debtor in the ordinary course of its operations. Accordingly, such contracts and leases (including any assumed Executory Contract and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

       6.    <u>Insurance Policies</u>.  Notwithstanding anything to the contrary herein, all Insurance Policies issued or entered into prior to the Petition Date shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtor; *provided, however*, that to the extent any Insurance Policy is determined to be an Executory Contract, then, subject to <u>Article V.F.</u> of the Plan, and notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such Insurance Policy and pay all future obligations, if any, in respect thereof and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interests of the Debtor, its Estate and all parties in interest. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to any Insurance Policy; and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any Insurance Policy shall be indefeasible. Moreover, as of the Effective Date, all payments of premiums or other charges made by the Debtor on or after the Petition Date under or with respect to any Insurance Policy shall be deemed to have been authorized, approved, and ratified in all respects without any requirement of further action by the Bankruptcy Court. Notwithstanding anything to the contrary contained herein, Confirmation shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim need be filed.

       7.    <u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>.  Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless the Debtor rejects or repudiates any of the foregoing agreements. Modifications, amendments, and supplements to, or restatements of, prepetition Executory Contracts and Unexpired Leases that

have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

        8.     <u>Reservation of Rights</u>.  Neither the inclusion of any Executory Contract or Unexpired Lease on the Schedules, a Cure and Assumption Notice, or the Rejected Executory contracts and Unexpired Leases Schedule, nor anything contained in any Plan Document, shall constitute an admission by the Debtor that a contract or lease is in fact an Executory Contract or Unexpired Lease or that Reorganized Debtor has any liability thereunder. If there is a dispute as of the Confirmation Date regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor, or, after the Effective Date, Reorganized Debtor, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

        P.     <u>Provisions Governing Distributions</u>

        1.     <u>Distributions Generally</u>. The Disbursing Agent shall make all Distributions to appropriate Holders of Allowed Claims in accordance with the terms of the Plan.

        2.     <u>Distributions on Account of Certain Claims Allowed as of the Effective Date</u>. Except as otherwise provided in the Plan, on or as soon as practicable after the Effective Date, the Disbursing Agent shall make Distributions in Cash in amounts equal to all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and if applicable, Allowed Secured Claims.

        3.     <u>Distributions on Account of Allowed General Unsecured Claims</u>. In accordance with the provisions of the Plan, the Disbursing Agent shall Distribute to each Holder of an Allowed General Unsecured Claim an amount equal to such Holder's Pro Rata Share, as applicable, as of such date, less the balance of the Disputed Claims Reserve for Class 3A or Class 3B, as applicable.

        4.     <u>Distributions on Account of Disputed Claims Allowed After the Effective Date</u>. Distributions on account of any Disputed Claim shall be made to the extent such Claim is Allowed in accordance with the provisions of <u>Article VII</u> of the Plan. Except as otherwise provided in the Plan, the Confirmation Order, another order of the Bankruptcy Court, or as agreed to by the relevant parties, Distributions under the Plan on account of Disputed Claims that become Allowed after the Effective Date shall be made as soon as practicable after the Disputed Claim becomes an Allowed Claim.

        5.     <u>Rights and Powers of Disbursing Agent</u>.

        a.     The Disbursing Agent shall make all Distributions to the appropriate Holders of Allowed Claims in accordance with the terms of the Plan, including <u>Article VI</u> of the Plan. Except as otherwise ordered by the Bankruptcy Court, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

b.      The Disbursing Agent shall be empowered to: (a) affect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. The Disbursing Agent may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns for all taxable periods through the date on which final Distributions are made.

6.      Delivery of Distributions and Undeliverable or Unclaimed Distributions.

a.      Claims Record Date. As of the close of business on the Claims Record Date, the various transfer registers for each of the Classes of Claims as maintained by the Debtor shall be deemed closed for purposes of determining whether a Holder of such a Claim is a record holder entitled to a Distribution under the Plan, and there shall be no further changes in the record holders or the permitted designees with respect to such Claims. The Debtor or Reorganized Debtor, as applicable, shall have no obligation to recognize any transfer or designation of such Claims occurring after the close of business on the Claims Record Date. With respect to payment of any Cure Amounts or assumption disputes, neither the Debtor, nor Reorganized Debtor, shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the close of business on the Claims Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

b.      Delivery of Distributions. If a Person holds more than one Claim in any one Class, in the Disbursing Agent's sole discretion, all such Claims will be aggregated into one Claim and one Distribution will be made with respect to the aggregated Claim.

c.      Special Rules for Distributions to Holders of Disputed Claims. Except as otherwise provided in the Plan or agreed to by the relevant parties: (a) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (b) any Person that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on account of the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order or the Disputed Claims have been Allowed or expunged. Any Distributions arising from property Distributed to Holders of Allowed Claims in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such Distributions were earlier paid to Holders of Allowed Claims in such Class.

7.      Undeliverable and Non-Negotiated Distributions.

a.      Undeliverable Distributions. If any Distribution to a Holder of an Allowed Claim is returned to Reorganized Debtor as undeliverable, no further Distributions shall be made to such Holder unless and until Reorganized Debtor is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time such previously undeliverable Distribution shall be made to such Holder within ninety (90) days of receipt of such

Holder's then-current address or other necessary information; provided, however, that any such undeliverable Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 days after the date of the initial attempted Distribution. After such date, all unclaimed property or interests in property shall revert to Reorganized Debtor automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred.

b.      Non-Negotiated Distributions. If any Distribution to a Holder of an Allowed Claim is not negotiated for a period of 180 days after the Distribution, then such Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and re-vest in Reorganized Debtor. After such date, all non-negotiated property or interests in property shall revert to Reorganized Debtor automatically and without the need for any notice to or further order of the Bankruptcy Court (notwithstanding any applicable non-bankruptcy escheatment, abandoned, or unclaimed property laws to the contrary), and the right, title, and interest of any Holder to such property or interest in property shall be discharged and forever barred.

8.      Manner of Payment under the Plan. Except as otherwise specifically provided in the Plan, at the option of Reorganized Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of Reorganized Debtor.

9.      Satisfaction of Claims. Except as otherwise specifically provided in the Plan, any Distributions to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

10.     Minimum Cash Distributions. Reorganized Debtor shall not be required to make any Distribution of Cash less than twenty dollars ($20) to any Holder of an Allowed Claim; provided, however, that if any Distribution is not made pursuant to Article VI.J of the Plan, such Distribution shall be added to any subsequent Distribution to be made on behalf of the Holder's Allowed Claim.

11.     Postpetition Interest. Interest shall not accrue on Impaired Claims; no Holder of an Impaired Claim shall be entitled to interest accruing on or after the Petition Date on any such Impaired Claim, and interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

12.     Setoffs. The Debtor and Reorganized Debtor may, pursuant to the applicable provisions of the Bankruptcy Code, or applicable non-bankruptcy law, set off against any applicable Allowed Claim (before any Distribution is made on account of such Claim) any and all claims, rights, Causes of Action, debts or liabilities of any nature that the Debtor or Reorganized Debtor may hold against the Holder of such Allowed Claim; provided, however, that the failure to effect such a setoff shall not constitute a waiver or release of any such claims, rights, Causes of Action, debts or liabilities.

35

13.     Claims Paid or Payable by Third Parties.  A Claim shall be reduced in full, and such Claim shall be Disallowed without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such Holder shall repay, return, or deliver any Distribution held by or transferred to such Holder to Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan.

14.     Compliance with Tax Requirements and Allocations.

a.      In connection with the Plan and all Distributions hereunder, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any federal, state or local taxing authority, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, including tax certification forms, or establishing any other mechanisms it believes are reasonable and appropriate.

b.      For tax purposes, Distributions in full or partial satisfaction of an Allowed Claim shall be allocated first to the principal amount of the Allowed Claim, with any excess allocated to unpaid interest that accrued on such Claim.

Q.      Procedures for Resolving Contingent, Unliquidated, and Disputed Claims.

1.      Applicability.    All Disputed Claims against the Debtor, other than Administrative Expense Claims, shall be subject to the provisions of Article VII of the Plan.  All Administrative Expense Claims shall be determined and, if Allowed, paid in accordance with Article III of the Plan.

2.      Allowance of Claims.  After the Effective Date, Reorganized Debtor shall have and retain any and all rights and defenses that the Debtor, or either of them, had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim becomes Allowed by Final Order of the Bankruptcy Court or by agreement between the Debtor or Reorganized Debtor, on the one hand, and the Holder of such Claim, on the other.

3.      Claims Administration Responsibilities.   Except as otherwise expressly provided in the Plan, from and after the Effective Date, Reorganized Debtor shall have the authority (a) to file, withdraw, or litigate to judgment objections to Claims; (b) to settle or compromise any

Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

4.      Estimation of Claims.    The Debtor (before the Effective Date) or Reorganized Debtor (on and after the Effective Date) may at any time request that the Bankruptcy Court to estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim against any Person.  If the estimated amount of a Claim constitutes a maximum limitation on such Claim, the Debtor (before the Effective Date) or Reorganized Debtor (on and after the Effective Date) may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

5.      No Distributions Pending Allowance.    No Distributions or other consideration shall be paid with respect to any Claim that is a Disputed Claim unless and until all objections to such Disputed Claim are resolved and such Disputed Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court or agreement between the Debtor or Reorganized Debtor, on the one hand, and the holder of such Claim, on the other.

6.      Distributions After Allowance.  To the extent that a Disputed Claim (or a portion thereof) becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.

7.      Disputed Claims Reserve.  The provisions of Article VII.G of the Plan apply only to the extent that any General Unsecured Claims remain Disputed as of any Distribution Date.

a.      If any General Unsecured Claims remain Disputed as of any Distribution Date, the undistributed portion of the GUC Fund shall be held in a segregated account. Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, or the receipt of a determination from the IRS, the Disbursing Agent shall treat the Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 and, to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes. All parties (including the Debtor, Reorganized Debtor, the Disbursing Agent, and holders of General Unsecured Claims) shall be required to report for tax purposes in a manner consistent with the foregoing. The Disputed Claims Reserve shall be responsible for payment, out of the assets of the Disputed Claims Reserve, of any taxes imposed on the Disputed Claims Reserve or its assets.

b.      The Debtor or Reorganized Debtor, as applicable, shall determine the amount of the Disputed Claims Reserve, if applicable, as of the initial date, based on the least of: (a) the asserted amount of the Disputed General Unsecured Claims in the applicable Proofs of Claim; (b) the amount, if any, estimated by the Bankruptcy Court pursuant to (i) section 502(c) of the Bankruptcy Code or (ii) Article VII.D of the Plan if, after the Effective Date, a motion is filed by Reorganized Debtor to estimate such Claim; (c) the amount otherwise agreed to by the Debtor (or Reorganized Debtor, if after the Effective Date) and the Holders of such Disputed General Unsecured Claims; or (d) any amount otherwise approved by the Bankruptcy Court. Upon each Distribution Date, Reorganized Debtor shall deposit into the Disputed Claims Reserve an amount of Cash equal to the amount sufficient to make the Distributions to which Holders of Disputed General Unsecured Claims would be entitled under the Plan as of the applicable Distribution Date if the Disputed General Unsecured Claims were Allowed Claims as of such date.

c.      If a Disputed General Unsecured Claim becomes an Allowed Claim after the first Distribution Date, the Disbursing Agent shall, on the next Distribution Date after the Disputed General Unsecured Claim becomes an Allowed Claim (or, if the Disputed General Unsecured Claim becomes an Allowed Claim after the final Distribution Date, as soon as practicable after Allowance), Distribute to the Holder of such Claim, exclusively from the Disputed Claims Reserve, the amount of Cash that such Holder would have received in that Distribution and all prior Distributions (if any) if such Holder's General Unsecured Claim had been Allowed as of the Effective Date, net of any allocable taxes imposed thereon or otherwise payable by the Disputed Claims Reserve.

d.      If a Disputed Claim is Disallowed, in whole or in part, then on the Distribution Date next following the date of Disallowance, Cash shall be released from the Disputed Claims Reserve, as applicable, which Cash shall then be unreserved and unrestricted, and which shall be available for Distribution to Holders of Allowed General Unsecured Claims.

e.      If any assets remain in the Disputed Claims Reserve after all Disputed General Unsecured Claims have been resolved, such assets shall be placed in the GUC Fund and Distributed Pro Rata to all Holders of Allowed General Unsecured Claims on the next Distribution Date (or, if all Disputed General Unsecured Claims are resolved after the final Distribution Date, as soon as practicable thereafter).

8.      Adjustment to Claims Register without Objection.  Any duplicate Proof of Claim that has been paid or satisfied, or any Proof of Claim that is clearly marked as amended or superseded by a subsequently filed Proof of Claim that remains on the Claims Register, may be adjusted or expunged on the Claims Register by Notice and Reorganized Debtor's stipulation between the parties in interest without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

9.      Time to File Objections to Claims.  Any objections to Claims must be filed on or before the applicable Claims Objection Deadline, as such deadline may be extended from time to time. The expiration of the Claims Objection Deadline shall not limit or affect the Debtor's or Reorganized Debtor's rights to dispute Claims asserted in the ordinary course of the Debtor's or Reorganized Debtor's operations other than through a Proof of Claim.

10.    <u>Treatment of Untimely Claims</u>.  Except as provided herein or otherwise agreed, any and all creditors that have filed Proofs of Claim after the applicable Bar Date shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution.  No Distributions shall be made on account of any Proof of Claim filed after the applicable Bar Date.

R.     <u>Discharges, Releases, Exculpations and Injunctions</u>

1.     <u>Discharge</u>

a.     <u>Discharge of the Debtor.</u> Except as expressly provided in the Plan or the Confirmation Order, the treatment of Claims under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, termination and release of, all Claims and Interests of any nature whatsoever against or in the Debtor or any of its assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, and, as of the Effective Date, the Debtor shall be deemed discharged and released, and each holder of a Claim or Interest and any successor, assign, and affiliate of such holder shall be deemed to have forever waived, discharged and released the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities, and all debts of the kind specified in section 502 of the Bankruptcy Code, based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date, in each case whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code, (c) a Claim based upon such debt is or has been Disallowed by order of the Bankruptcy Court, or (d) the holder of a Claim based upon such debt is deemed to have accepted the Plan.

b.     <u>Discharge Injunction.</u> From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all holders of Claims or Interests of any nature whatsoever against or in the Debtor or any of its assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtor, Reorganized Debtor, or its or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtor, Reorganized Debtor, or its or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtor, Reorganized Debtor, or its or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtor (including Reorganized Debtor) and its and their respective properties and interests in property. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge or termination of all Claims, Interests and other debts and liabilities against or in the Debtor pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtor at any time to the extent such judgment relates to a discharged Claim or Interest.

2.     **<u>Exculpation.</u>  From and after the Effective Date, none of the Exculpated**

**Parties[10] shall have or incur any liability to, or be subject to any right of action by, any Person for any act, omission, transaction, event, or other circumstance occurring on or after the Petition Date up to and including the Effective Date in connection with, relating to or arising out of the Chapter 11 Case, the negotiation of the Plan Documents, the Releases and Injunctions, the pursuit of Confirmation of the Plan, the administration, consummation and implementation of the Plan or the property to be Distributed under the Plan, or the management or operation of the Debtor (except for any liability that results primarily from such Exculpated Party's gross negligence, bad faith, willful misconduct, or fraud). In all respects, each and all such Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the matters referenced in the preceding sentence.**

**3.    Injunction Related to Exculpation. As of the Effective Date, all holders of Claims that are the subject of Article IX.F of the Plan are, and shall be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Exculpated Party on account of or based on the subject matter of such Claims, whether directly or indirectly, derivatively or otherwise: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien or Encumbrance; and/or (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation that is discharged under Article IX.E of the Plan or exculpated under Article IX.F of the Plan; provided, however, that the injunctions set forth in Article IX.G of the Plan shall not, and shall not be construed to, enjoin any Person that is the subject of Article IX.F of the Plan from taking any action arising out of, or related to, any act or omission of a Exculpated Party that is a criminal act or that constitutes fraud, gross negligence or willful misconduct.**

S.    Disallowed Claims.  On and after the Effective Date, the Debtor and Reorganized Debtor shall be fully and finally discharged of any and all liability or obligation on any and all Disallowed Claims, and any order Disallowing a Claim that is not a Final Order as of the Effective Date solely because of a Person's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.

T.    No Successor Liability. Except as otherwise expressly provided in the Plan, Reorganized Debtor does not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify any Person, or otherwise have any responsibility for any liabilities or obligations of the Debtor relating to or arising out of the operations of or assets of the Debtor, whether arising prior to,

---

[10] "Exculpated Parties" means, collectively, the following Persons: (a) the Debtor; (b) the directors, officers, and managers of the Debtor that served during the Chapter 11 Case, (c) all Professionals retained by the Debtor in the Chapter 11 Case, and in each such instance of (a) through (c) acting in their capacity as such.

on or after the Effective Date.  Neither the Debtor, nor the Reorganized Debtor, is, or shall be deemed to be, a successor to any of the Debtor by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character; provided, however, that Reorganized Debtor shall assume and remain liable for its respective obligations specified in the Plan and the Confirmation Order.

U.    Retention of Jurisdiction.  Until the Chapter 11 Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including the jurisdiction necessary to ensure that the purposes and intent of the Plan are carried out.

1.    General Retention.  Following Confirmation of the Plan, the administration of the Chapter 11 Case will continue until the Chapter 11 Case is closed by a Final Order. The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claims and the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claims. The failure by the Debtor or Reorganized Debtor to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of the rights of the Debtor, or Reorganized Debtor, as the case may be, to object to or reexamine such Claim in whole or part.

2.    Specific Purposes.  In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction, as more fully set forth in Article X.C. of the Plan, over all matters arising out of, or relating to, the Chapter 11 Case and the Plan.

3.    Courts of Competent Jurisdiction.  To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference to the "Bankruptcy Court" in Article X of the Plan shall be deemed to be replaced by the "District Court." If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

V.    Miscellaneous Provisions

1.    Closing of Chapter 11 Case.  After the Chapter 11 Case has been fully administered, Reorganized Debtor shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close such Chapter 11 Case.

2.    Amendment or Modification of the Plan

a.    Plan Modifications. The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and after entry of the Confirmation Order, the Debtor may, upon order of the Bankruptcy Court, amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code unless section 1127 of the Bankruptcy Code requires

additional disclosure. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtor may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

b.    <u>Other Amendments</u>. Before the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court; provided that notice of such proposed adjustments or modifications is filed on the docket at least five (5) days before the Effective Date and no creditor objects to such adjustments or modifications before the Effective Date.  In the event such an objection is filed, the Bankruptcy Court shall rule on the objection.

3.    <u>Revocation or Withdrawal of the Plan</u>.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan has been revoked or withdrawn prior to the Effective Date, or if Confirmation of the Plan or the occurrence of the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (3) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim against, or any Interest in, the Debtor or any other Person; (ii) prejudice in any manner the rights of the Debtor or any other Person; or (iii) constitute an admission of any sort by the Debtor or any other Person.

4.    <u>Request for Expedited Determination of Taxes</u>.    The Debtor and Reorganized Debtor, as applicable, shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date to and including the Effective Date.

5.    <u>Non-Severability of Plan Provisions</u>.    If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor or Reorganized Debtor (as the case may be), and (3) non-severable and mutually dependent.

43

6.    <u>Notices</u>.   All notices, requests, and demands to or upon the Debtor or Reorganized Debtor to be effective shall be in writing (including by email transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

with copies to:

>       DigitalSpeed Communications, Inc.
>       Attn: Adam Pasternack, President
>       100 Front Street, Suite 220
>       West Conshohocken, PA 19428
>       Phone: (215) 963-7200
>       Email: apasternack@digitalspeed.com

with a copy to counsel:

>       Karalis PC
>       Attention: Aris J. Karalis, Esquire
>       1900 Spruce Street
>       Philadelphia, PA 19103
>       Phone: (215) 546-4500

7.    <u>Notices to Other Persons</u>.   After the occurrence of the Effective Date, Reorganized Debtor have authority to send a notice to any Person providing that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Person must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; *provided, however*, that the United States Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary. After the occurrence of the Effective Date, Reorganized Debtor is authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to the United States Trustee and those Persons that have filed such renewed requests.

8.    <u>Immediate Binding Effect</u>.   Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of any Person named or referred to in the Plan and the successors and assigns of such Person.

9.    <u>Timing of Distributions or Actions</u>.   In the event that any payment, Distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then such payment, Distribution, act or deadline shall be deemed to occur on the next succeeding Business Day, but if so made, performed or completed by such next succeeding Business Day, shall be deemed to have been completed or to have occurred as of the required date.

10.    <u>Deemed Acts</u>.  Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred by virtue of the Plan or the Confirmation Order without any further act by any Person.

11.    <u>Entire Agreement</u>.  The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings and documents. No Person shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

12.    <u>Plan Supplement</u>.  Any and all exhibits, lists, or schedules referred to herein but not filed with the Plan shall be contained in the Plan Supplement to be filed with the Clerk of the Bankruptcy Court prior to the Confirmation Hearing on the Plan, and such Plan Supplement is incorporated into and is part of the Plan as if set forth in full herein. The Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours, and at the Bankruptcy Court's website (http://ecf.paeb.uscourts.gov).

13.    <u>Withholding of Taxes</u>.  The Disbursing Agent or any other applicable withholding agent, as applicable, shall withhold from any assets or property Distributed under the Plan any assets or property which must be withheld for foreign, federal, state and local taxes payable with respect thereto or payable by the Person entitled to such assets to the extent required by applicable law.

14.    <u>Filing of Reports and Payment of Quarterly Fees</u>.  Until the occurrence of the Effective Date, the Debtor shall continue to file the UST Form 11-MOR, Monthly Operating Report, and shall timely pay to the United States Trustee the Quarterly Fees[11] due through and including the Effective Date.   Following the Effective Date, the Reorganized Debtor shall file a UST Form 11-PCR, Post Confirmation Report, every calendar quarter when they come due and shall timely pay to the United States Trustee the Quarterly Fees when due and payable.   The Reorganized Debtor shall remain obligated to pay its Quarterly Fees to the United States Trustee for its Chapter 11 Case until the earlier of: (1) the case is closed; (2) the entry of a final decree; (3) the conversion of the case to a case under another chapter of the Bankruptcy Code; or (4) the dismissal of the case.

15.    <u>Effective Date Actions Simultaneous</u>.  Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

---

[11] "Quarterly Fees" is a defined term under the Plan which means all fees due and payable pursuant to section 1930(a)(6) of title 28 of the United States Code.

# ARTICLE V
## SOLICITATION PROCEDURES AND REQUIREMENTS

Before voting to accept or reject the Plan, each holder of a Claim entitled to vote should carefully review the Plan. All descriptions of the Plan set forth in this Disclosure Statement are subject to the terms and provisions of the Plan.

A.    <u>Voting Summary and Deadline.</u>[12]   The Bankruptcy Court entered an order in the Chapter 11 Case [D.I. ●] (the "<u>Solicitation Procedures Order</u>") that, among other things, approved certain procedures governing the solicitation of votes to accept or reject the Plan from holders of Claims against the Debtor, including setting the deadline for voting, specifying which holders of Claims are eligible to receive Ballots to vote on the Plan, and establishing other voting and tabulation procedures attached to the Solicitation Procedures Order as Exhibit 1 (the "<u>Solicitation Procedures</u>").

**THE SOLICITATION PROCEDURES ORDER IS HEREBY INCORPORATED BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN. YOU SHOULD READ THE SOLICITATION PROCEDURES ORDER, THE SOLICITATION PROCEDURES, THE CONFIRMATION HEARING NOTICE, AND THE INSTRUCTIONS ATTACHED TO YOUR BALLOT IN CONNECTION WITH THIS SECTION, AS THEY SET FORTH IN DETAIL PROCEDURES GOVERNING VOTING DEADLINES AND OBJECTION DEADLINES.**

| | |
|---|---|
| **Voting Classes:** | The Debtor is soliciting votes to accept or reject the Plan from the holders of Claims in Classes 1, 3A and 3B. |
| **Voting Record Date:** | The Voting Record Date is _____, 2025. Only holders in the Voting Classes as of this date will be entitled to vote to accept or reject the Plan. The Debtor reserves the right to set a later Voting Record Date if the Debtor decides to extend the Voting Deadline. |
| **Voting Deadline; Extension:** | The Voting Deadline is _____, 2025 at 4:00 p.m. (Eastern Time), unless the date by which the Ballots will be accepted is extended in accordance with the Solicitation Procedures. If the Voting Deadline is extended, the term "Voting Deadline" will mean the time and date that is designated. Any extension of the Voting Deadline will be followed as promptly as practicable by notice of the extension in accordance with the Solicitation Procedures. |

---

[12] Capitalized terms used in this <u>Article V</u> and not otherwise defined herein or in the Plan shall have the meanings ascribed to such terms in the Solicitation Procedures Motion, Solicitation Procedures Order, or Solicitation Procedures, as applicable.

| | |
|---|---|
| **Solicitation Procedures:** | If you are a holder of a Claim in the Voting Classes, you should deliver a properly completed Ballot to Debtor's counsel.  Ballots must be received by Debtor's counsel on or before the Voting Deadline. To be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered by (1) mail, (2) overnight delivery, or (3) personal delivery, so that it is ***actually received***, in each case, by the Debtor's counsel no later than the Voting Deadline. Specifically, each Ballot must be returned (a) by mail using the envelope included in the Solicitation Package, as applicable, or by overnight or personal delivery to the following address: Karalis PC, attention Aris J. Karalis, Esquire, 1900 Spruce Street, Philadelphia, PA 19103. |
| **Revocation or Withdrawal of Ballots:** | After the Voting Deadline, a Ballot may only be withdrawn or modified pursuant to an order of the Bankruptcy Court authorizing such withdrawal or modification; *provided*, that prior to the Voting Deadline, a voter may withdraw a valid Ballot by delivering a written notice of withdrawal to the Debtor's counsel. The withdrawal must be signed by the party who signed the Ballot, and the Debtor reserves the right to contest any withdrawals, rights and any such withdrawal shall be detailed in the Voting Report filed by the Debtor's counsel. |

The following instructions for voting to accept or reject the Plan, together with the instructions contained in the Ballot and the Solicitation Procedures, constitute the voting instructions. Only holders of Claims in Classes 1, 3A and 3B (the "Voting Classes") as of the Voting Record Date are entitled to vote on the Plan. To vote, you must fill out and sign the Ballot enclosed in the Solicitation Package (as defined below).

B.    Solicitation Procedures

1.    Vote Required for Acceptance by a Class of Claims.  Under the Bankruptcy Code, acceptance of a plan of reorganization by a class of claims or interests is determined by calculating the amount and, if a class of claims, the number, of claims and interests voting to accept, as a percentage of the allowed claims or interests, as applicable, that have voted. Acceptance by a class of claims requires an affirmative vote of more than one-half in number of total allowed claims in such class that have voted and an affirmative vote of at least two-thirds in dollar amount of the total allowed claims in such class that have voted.

2.    Solicitation Package.  The package of materials (the "Solicitation Package") sent to the Voting Classes contains:

a.    a cover letter describing the contents of the Solicitation Package, and urging holders of Claims in the Voting Classes to vote to accept the Plan;

b.    the *Notice of Hearing to Consider Confirmation of Plan of Reorganization Proposed by DigitalSpeed Communications, Inc.*, *Debtor-In-Possession*

substantially in the form annexed to the Solicitation Procedures Order as Exhibit 3 (the "<u>Confirmation Hearing Notice</u>");

c.       the Disclosure Statement with all exhibits, including the Plan and all exhibits (to the extent such exhibits are filed with the Bankruptcy Court before the Solicitation Date), which shall be provided in the formats set forth in the Solicitation Procedures Order;

d.       The Solicitation Procedures Order, including the Solicitation Procedures, but excluding all other exhibits, which shall be provided in the formats set forth in the Solicitation Procedures Order;

e.       an appropriate form of Ballot with return instructions and a return envelope, as applicable; and

f.       any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

The Debtor has distributed the Solicitation Packages to holders of Claims in the Voting Classes as of the Solicitation Date. In addition, the Debtor will provide parties in interest (at no charge) the Plan and/or Disclosure Statement, as well as any exhibits thereto, upon request to the Debtor's counsel by (1) calling Debtor's law firm at (215) 546-4500; (2) writing to Debtor's counsel at Karalis PC, Attn: Aris J. Karalis, Esquire, 1900 Spruce Street, Philadelphia, PA 19103; or (3) emailing Jill Hysley at jhysley@karalislaw.com.

If you are a holder of a Claim who is entitled to vote on the Plan and you or your attorney did not receive a Ballot, received a damaged Ballot, or lost your Ballot, please contact Debtor's counsel by (1) emailing Jill Hysley at jhysley@karalislaw.com, (2) calling Debtor's law firm at (215) 546-4500, or (3) writing to Debtor's counsel at Karalis PC, Attn: Aris J. Karalis, Esquire, 1900 Spruce Street, Philadelphia, PA 19103.

3.       <u>Solicitation Procedures, Ballots, and Voting Deadline</u>.  If you are entitled to vote to accept or reject the Plan, one or more Ballot(s) has been enclosed in your Solicitation Package for the purpose of voting on the Plan. Please vote and return your Ballot(s) in accordance with the instructions accompanying your Ballot(s).

You should carefully review (1) the Plan, (2) this Disclosure Statement, (3) the Solicitation Procedures Order, (4) the Confirmation Hearing Notice, and (5) the detailed instructions accompanying your Ballot prior to voting on the Plan.

After carefully reviewing these materials, including the detailed instructions accompanying your Ballot(s), please indicate your acceptance or rejection of the Plan by completing the Ballot(s). All votes to accept or reject the Plan with respect to any Class of Claims entitled to vote on the Plan must be cast by properly submitting the duly completed and executed form of Ballot designated for such Class. Holders of Claims voting on the Plan should complete and sign the Ballot(s) in accordance with the instructions thereon, being sure to check the appropriate box

48

entitled "Accept (vote in favor of) the Plan" or "Reject (vote against) the Plan." In order for your vote to be counted, you must complete and return your Ballot(s) in accordance with the instructions accompanying your Ballot(s) on or before the Voting Deadline. Each Ballot has been coded to reflect the Class of Claims it represents. Accordingly, in voting to accept or reject the Plan, you must use only the coded Ballot or Ballots sent to you.

**In order for the holder of a Claim in the Voting Class to have such holder's Ballot counted as a vote to accept or reject the Plan, such holder's Ballot must be properly completed, executed, and delivered by (1) mail, (2) overnight delivery, or (3) personal delivery, so that such holder's Ballot is actually received by the Debtor's counsel on or before the Voting Deadline, *i.e.*, _____, 2025 at 4:00 p.m. (Eastern Time).**

**Specifically, each Ballot must be returned by mail using the envelope included in the Solicitation Package, as applicable, or by overnight or personal delivery to the following address:**

**KARALIS PC**
**Attn: Aris J. Karalis, Esquire**
**1900 Spruce Street**
**Philadelphia, PA 19103**

**IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED UNLESS THE DEBTOR DETERMINES OTHERWISE.**

**ANY BALLOT THAT IS PROPERLY EXECUTED BY THE HOLDER OF A CLAIM IN THE VOTING CLASSES BUT THAT DOES NOT CLEARLY INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN, OR ANY BALLOT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN, WILL NOT BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN.**

**EACH HOLDER OF A CLAIM IN THE VOTING CLASSES MUST VOTE ALL OF ITS CLAIMS WITHIN SUCH CLASS EITHER TO ACCEPT OR REJECT THE PLAN AND MAY NOT SPLIT SUCH VOTES. IF A HOLDER OF A CLAIM SUBMITS MORE THAN ONE INCONSISTENT BALLOT RECEIVED BY THE SOLICITATION AGENT ON THE SAME DAY, SUCH BALLOTS WILL NOT BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN.**

**IT IS IMPORTANT THAT THE HOLDER OF A CLAIM IN THE VOTING CLASSES FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED ON SUCH HOLDER'S BALLOT AND THE ACCOMPANYING INSTRUCTIONS.**

C.    <u>Classes Entitled to Vote on the Plan</u>.  Under the Bankruptcy Code, holders of Claims and Interests are not entitled to vote if their contractual rights are unimpaired by the proposed plan or if they will receive no property under the plan. Holders of Claims in Class 2 are Unimpaired under the Plan and are, therefore, conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Holders of Interests in Debtor in Class 4 are

49

Unimpaired under the Plan and are, therefore, are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Accordingly, no holders of Claims or Interests in such Classes shall be entitled to vote to accept or reject the Plan.

Each of the following Classes: (i) Class 1 (PADOR Secured Claim), (ii) Class 3A (Ongoing General Unsecured Claims), and (iii) Class 3B (Other General Unsecured Claims) are Impaired and the Holders of Claims in Classes 1, 3A and 3B are entitled to vote to accept or reject the Plan.

If your Claim or Interest is not included in the Voting Classes, you are not entitled to vote and you will not receive a Solicitation Package, including a Ballot setting forth detailed voting instructions. If your Claim is included in the Voting Classes, you should read your Ballot and carefully follow the instructions included in the Ballot. Please use only the Ballot that accompanies this Disclosure Statement or the Ballot that the Debtor otherwise provided to you.

1.    <u>Holders of Claims Entitled to Vote</u>. Under section 1124 of the Bankruptcy Code, a class of claims or equity interests is deemed to be "impaired" under a plan unless (1) the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or equity interest entitles the holder thereof or (2) notwithstanding any legal right to an accelerated payment of such claim or equity interest, the plan (a) cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy or defaults of a kind that do not require cure), (b) reinstates the maturity of such claim or equity interest as it existed before the default, (c) compensates the holder of such claim or equity interest for any damages from such holder's reasonable reliance on such legal right to an accelerated payment, (d) if such claim or such interest arises from a failure to perform nonmonetary obligations, other than a default arising from a failure to operate a nonresidential real property lease, compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure and (e) does not otherwise alter the legal, equitable, or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

The following table sets forth a simplified summary of which Classes are entitled to vote on the Plan and which are not and the voting status for each of the separate Classes of Claims and Interests provided for in the Plan.

| Class | Claim or Interest | Entitled to Vote |
|---|---|---|
| 1 | PADOR Secured Claim | Yes - Impaired |
| 2 | Other Priority Claims | No - Presumed to Accept |
| 3A | Ongoing General Unsecured Claims | Yes - Impaired |
| 3B | Other General Unsecured Claims | Yes - Impaired |
| 4 | Interests in Debtor | No – Presumed to Accept |

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Voting Classes are Impaired under the Plan and, to the extent Claims in the Voting Classes are deemed

Allowed, the holders of such Claims will receive distributions under the Plan. As a result, the holders of Claims in each of these Classes are entitled to vote to accept or reject the Plan.

If you have filed a Proof of Claim that is subject to an objection, other than a "reclassify" or "reduce and allow" objection, that is filed with the Bankruptcy Court on or before the Solicitation Date (a "Disputed Claim"), you are not entitled to vote on the Plan. If you seek to challenge the disallowance or estimation of your Disputed Claim for voting purposes, you must file with the Bankruptcy Court a motion for an order, pursuant to Bankruptcy Rule 3018(a), temporarily allowing such Claim for purposes of voting to accept or reject the Plan (a "Rule 3018(a) Motion"). **As set forth in the Confirmation Hearing Notice and the Solicitation Procedures, any Rule 3018(a) Motion shall be filed with the Bankruptcy Court and served on the Debtor on or before _____, 2025. If a holder of a Disputed Claim files a timely Rule 3018(a) Motion, such holder's Ballot shall not be counted unless a Resolution Event occurs with respect to such Disputed Claim on or prior to _____, 2025 or as otherwise ordered by the Bankruptcy Court.** For the avoidance of doubt, any Claim that is subject to an objection other than a "reclassify" or "reduce and allow" objection that is filed with the Bankruptcy Court *after* the Solicitation Date shall be deemed temporarily allowed solely for voting purposes in accordance with the Solicitation Procedures, without further action by the Debtor or the holder of the Claim, and without further order of the Bankruptcy Court, unless the Debtor and claimant agree to other treatment for voting purposes or the Bankruptcy Court orders otherwise.

A vote on the Plan may be disregarded if the Bankruptcy Court determines, pursuant to section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code. The Solicitation Procedures also set forth assumptions and procedures for determining the amount of Claims that each creditor is entitled to vote in the Chapter 11 Case and how votes will be counted under various scenarios.

**Your vote on the Plan is important.** The Bankruptcy Code requires as a condition to confirmation of a plan of reorganization that each class that is impaired and entitled to vote under a plan votes to accept such plan, unless the plan is being confirmed under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code. Section 1129(b) permits confirmation of a plan of reorganization, notwithstanding the nonacceptance of the plan by one or more impaired classes of claims or equity interests, as long as at least one impaired class of claims or interests votes to accept a proposed plan. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each nonaccepting class.

     D.    <u>Certain Factors to Be Considered Prior to Voting</u>.  There are a variety of factors that all holders of Claims and Interests entitled to vote on the Plan should consider prior to voting to accept or reject the Plan. These factors, which may impact recoveries under the Plan, include the following:

     1.    unless otherwise specifically indicated, the financial information contained in this Disclosure Statement has not been audited and is based on an analysis of data available at the time of the preparation of the Plan and this Disclosure Statement;

2.      although the Debtor believes that the Plan complies with all applicable provisions of the Bankruptcy Code, the Debtor can neither assure such compliance, nor that the Bankruptcy Court will confirm the Plan;

3.      the Debtor may request Confirmation without the acceptance of all Impaired Classes entitled to vote in accordance with section 1129(b) of the Bankruptcy Code; and

4.      any delays of either Confirmation or the occurrence of the Effective Date could result in, among other things, increased Administrative Expense Claims and Professional Fee Claims.

For a further discussion of risk factors, please refer to Article VII of this Disclosure Statement, entitled "Risk Factors."

### ARTICLE VI
### CONFIRMATION PROCEDURES

A.      Hearing on Plan Confirmation.  Under section 1128(a) of the Bankruptcy Code, the Bankruptcy Court, after notice, shall hold a hearing to confirm a plan of reorganization. The Confirmation Hearing pursuant to section 1128 of the Bankruptcy Code will be held on _____, 2025 at _____.m. (Eastern Time), before the Honorable Ashely M. Chan, United States Bankruptcy Judge for the Eastern District of Pennsylvania, in the Bankruptcy Court, located at 900 Market Street, Courtroom 4, Philadelphia, PA 19107. The Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on those parties who have requested notice under Bankruptcy Rule 2002 and the Entities who have filed an objection to the Plan, if any, without further notice to parties in interest. The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing. Subject to section 1127 of the Bankruptcy Code, the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

Additionally, section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation. Any objection to Confirmation of the Plan must: (i) be made in writing; (ii) state the name and address of the objecting party and the nature and amount of the Claim or Interest of such party; (iii) state with particularity the legal and factual basis and nature of any objection to the Plan and include any evidentiary support therefor; and (iv) be filed with the Bankruptcy Court, 900 Market Street, Suite 400, Philadelphia, PA 19107 together with proof of service **on or before the Plan Objection Deadline (_____, 2025 at 4:00 p.m. (Eastern Time))**, and served so as to be actually received by the notice parties set forth in the Confirmation Hearing Notice before the Plan Objection Deadline, which service may be through the CM/ECF system, with courtesy copies by email.

B.      Requirements for Confirmation of the Plan.  The Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met. Among

the requirements for confirmation are that the Plan is (A) accepted by all impaired Classes of Claims and Interests entitled to vote or, if rejected or deemed rejected by an impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class; (B) in the "best interests" of the holders of Claims and Interests impaired under the Plan; and (C) feasible.

C.    Acceptance by an Impaired Class.  The Bankruptcy Code requires, as a condition to confirmation, that each class of claims or interests that is impaired under a plan of reorganization, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. As stated above, the Voting Classes are Impaired Classes and are comprised of the holders of Claims in Class 1, Class 3A and Class 3B. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as an affirmative vote of more than one-half in number of total allowed claims in such class that have voted and an affirmative vote of at least two-thirds in dollar amount of the total allowed claims in such class that have voted. Thus, the Voting Classes described herein will have voted to accept the Plan only if one-half of the holders of Allowed Claims, with at least two-thirds of the total dollar amount of the Allowed Claims vote on the Plan to accept.

**AS EXPLAINED IN <u>ARTICLE IV.I</u> OF THIS DISCLOSURE STATEMENT, THE BANKRUPTCY CODE CONTAINS PROVISIONS FOR CONFIRMATION OF A PLAN EVEN IF IT IS NOT ACCEPTED BY ALL CLASSES. THESE SO-CALLED "CRAMDOWN" PROVISIONS ARE SET FORTH IN SECTION 1129(b) OF THE BANKRUPTCY CODE, WHICH PROVIDES THAT A PLAN OF REORGANIZATION CAN BE CONFIRMED EVEN IF IT HAS NOT BEEN ACCEPTED BY ALL IMPAIRED CLASSES OF CLAIMS AND INTERESTS AS LONG AS AT LEAST ONE IMPAIRED CLASS OF NON-INSIDER CLAIMS HAS VOTED TO ACCEPT THE PLAN.**

D.    Best Interests Test.  The Bankruptcy Code requires a bankruptcy court to determine that the plan is in the best interests of all holders of claims or interests that are impaired by the plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code requires a bankruptcy court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if the Debtor was liquidated under chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from the debtor's assets if its chapter 11 case were converted to a chapter 7 case under the Bankruptcy Code.  This "liquidation value" would consist primarily of the proceeds from a forced sale of the Debtor's assets by a chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by, first, the claims of secured creditors to the extent of the value of their collateral and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of both the chapter 7 case and the chapter 11 case.  Costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a chapter 7 trustee, as well as of counsel and other professionals retained by the chapter 7 trustee, asset disposition expenses, all unpaid administrative expenses incurred by the Debtor in the Chapter 11 Case that are allowed, litigation costs and claims arising from the operations of the Debtor during the pendency of the Chapter 11 Case.  The liquidation itself may also trigger certain priority payments that otherwise would be due in the ordinary course of business.  Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay general unsecured claims or to may any distribution in respect of equity security interests.

Once the bankruptcy court ascertains the recoveries in liquidation of secured creditors and priority claimants, it must determine the probable distribution to general unsecured creditors and equity security holders from the remaining available proceeds in liquidation.  If such probable distribution has a value greater than the distribution to be received by such creditors and equity security holders under the plan, then the plan is not in the best interests of creditors and equity security holders.

E.    Liquidation Analysis and Application of the "Best Interest Test".  For purposes of the Best Interests Test, the Debtor is providing a Liquidation Analysis which is attached as **Exhibit A**.  It is impossible to determine with certainty the value each Holder of a Claim will receive under the Plan as a percentage of any Allowed Claim. Notwithstanding the difficulty in quantifying recoveries with precision, the Debtor believes that the financial disclosures and projections contained herein imply a greater recovery to holders of Allowed Claims in Impaired Classes than the recovery available in a chapter 7 liquidation. Accordingly, the Debtor believes that the "best interests test" of section 1129 of the Bankruptcy Code is satisfied.

F.    Feasibility.  The Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan of reorganization is not likely to be followed by liquidation or the need for further financial reorganization. For purposes of determining whether the Plan meets this requirement, the Debtor has analyzed its ability to meet obligations under the Plan.

The Debtor has prepared projections which are attached as **Exhibit B** (the "Financial Projections"). The Financial Projections assume that the Plan will be implemented in accordance with its stated terms. Accordingly, the Debtor believes that Confirmation is not likely to be followed by liquidation or the need for further reorganization.

G.    Conditions Precedent to Consummation of the Plan.  The Plan provides for certain conditions that must be satisfied (or waived) prior to confirmation of the Plan and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of this Disclosure Statement, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived). Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Plan will be consummated.

H.    *Vacatur* of Confirmation Order; Non-Occurrence of Effective Date.    If the Confirmation Order is vacated or the Effective Date does not occur within 180 days after entry of the Confirmation Order (subject to extension by the Debtor in its sole discretion), the Plan shall be null and void in all respects and nothing contained in the Plan or this Disclosure Statement shall (1) constitute a waiver or release of any Causes of Action by or Claims against or Interests in the Debtor or any Person; (2) prejudice in any manner the rights of the Debtor, any holders of a Claim or Interest or any other Person; (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any holders of a Claim or Interest, or any other Person in any respect; or (4) be used by the Debtor or any other Person as evidence (or in any other way) in any litigation, including with respect to the strengths and weaknesses of positions, arguments or claims of any of the parties to such litigation.

## ARTICLE VII
## RISK FACTORS

**HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR INCORPORATED BY REFERENCE, PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION. THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE THE DEBTOR'S ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE MATERIALLY DIFFERENT FROM THOSE IT MAY PROJECT, AND THE DEBTOR UNDERTAKES NO OBLIGATION TO UPDATE ANY SUCH STATEMENT.**

A.    Risks Relating to the Debtor's Operations, Financial Condition and Certain Bankruptcy Law Considerations

1.    There is a Risk that the Plan Will Not Be Confirmed.    If confirmed and consummated, the Debtor believes the Plan will ensure that the Debtor is able to reorganize its affairs. If the Plan cannot be Confirmed, or if the Bankruptcy Court otherwise finds that conditions necessary for Confirmation cannot be met, the Debtor may be required to liquidate and/or voluntarily convert the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.

2.    Risk of Non-Confirmation of the Plan.    Although the Debtor believes that the Plan satisfies all requirements necessary for Confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that modifications to the Plan will not be required for Confirmation or that such modifications would not necessitate re-solicitation of votes. Moreover, the Debtor can make no assurances that it will receive the requisite acceptances to confirm the Plan, and even if all Voting Classes vote in favor of the Plan or the requirements for "cramdown" are met with respect to any Class that rejects or is deemed to reject

55

the Plan, the Bankruptcy Court may exercise discretion as a court of equity and choose not to confirm the Plan. If the Plan is not confirmed, it is unclear what distributions holders of Claims or Interests would ultimately receive with respect to their Claims or Interests in a subsequent plan of reorganization, a liquidation, or other proceedings.

3.      Alternative Plans of Reorganization.  If other parties in interest were to propose an alternative plan of reorganization, such a plan may be less favorable to the Debtor, its Estate, and its stakeholders. In addition, if there were competing plans of reorganization, the Chapter 11 Case would likely become longer, more complicated, and more expensive, thereby reducing recoveries to holders of Claims.

4.      Non-Consensual Confirmation.  If any Impaired Class of Claims does not accept or is deemed not to accept a plan of reorganization, a Bankruptcy Court may nevertheless confirm such plan at the proponent's request if at least one Impaired Class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and as to each impaired class that has not accepted the plan, the Bankruptcy Court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired classes. If any Class votes to reject or is deemed to reject the Plan, then these requirements must be satisfied with respect to such rejecting Class. The Debtor believes that the Plan satisfies these requirements.

5.      Parties in Interest May Object to the Debtor's Classification of Claims and Interests.  Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if the claim or interest is substantially similar to the other claims or interests in that class. Parties in interest may object to the classification of certain claims and interests both on the grounds that certain claims and interests have been improperly placed in the same Class and/or that certain claims and interests have been improperly placed in different Classes. The Debtor believes that the classification of Claims and Interests under the Plan complies with the requirements of the Bankruptcy Code because the Classes established under the Plan each encompass Claims or Interests that are substantially similar to similarly classified Claims or Interests. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Parties in interest may object to the classification of certain Claims and Interests both on grounds that certain Claims and Interests have been improperly placed in the same Class and/or that certain Claims and Interests have been improperly placed in different Classes.

6.      The Debtor May Object to the Amount or Classification of a Claim.  Except as otherwise provided in the Plan, the Debtor reserves the right to object to the amount or classification of any Claim under the Plan. The estimates set forth in this Disclosure Statement cannot be relied on by any holder of a Claim where such Claim is subject to an objection. Any holder of a Claim that is subject to an objection may, therefore, not receive its expected share of the estimated distributions described in this Disclosure Statement.

7.      The Conditions Precedent to Plan Confirmation and the Effective Date of the Plan May Not Occur.  As more fully set forth in Article VIII of the Plan, Plan Confirmation and the Effective Date are subject to a number of conditions precedent. If such conditions precedent are not satisfied or waived, Plan Confirmation, the Effective Date, or both will not occur.

8.    <u>Possible Tax Ramifications</u>.   Each Creditor and Interest holder should consult their own tax advisor as to the specific tax consequences to such person of any term of the Plan, including the application and effect of federal, state and local income and other tax laws before determining whether to accept or reject the Plan.

9.    <u>Risk of Non-Occurrence of the Effective Date</u>.   Although the Debtor believes that the Effective Date will occur soon after the Confirmation Date, there can be no assurance as to the timing of the Effective Date. If the conditions precedent to the Effective Date set forth in the Plan have not occurred or have not been waived as set forth in <u>Article VIII</u> of the Plan, then the Confirmation Order may be vacated, in which event no distributions would be made under the Plan, the Debtor and all holders of Claims or Interests would be restored to the *status quo* as of the day immediately preceding the Confirmation Date, and the Debtor's obligations with respect to Claims and Interests would remain unchanged. Any delay to the Confirmation Date may materially negatively impact the Debtor's business and may result in a liquidation.

10.    <u>Amendment of Plan Prior to Confirmation by the Debtor</u>.   The Debtor, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan or waive any conditions thereto if and to the extent necessary or desirable for confirmation. The potential impact of any such amendment or waiver on holders of Claims and Interests cannot presently be foreseen, but may include a change in the economic impact of the Plan on some or all of the proposed Classes or a change in the relative rights of such Classes.

11.    <u>Financial Projections</u>.   The Debtor has prepared financial projections with respect to the Reorganized Debtor based on certain assumptions, as set forth in **Exhibit B** hereto. The projections have not been compiled, audited, or examined by independent accountants, and neither the Debtor, nor its advisors make any representations or warranties regarding the accuracy of the projections or the ability to achieve forecasted results.

Many of the assumptions underlying the projections are subject to significant uncertainties that are beyond the control of the Debtor or the Reorganized Debtor, including the timing, Confirmation, and consummation of the Plan. Some assumptions may not materialize, and unanticipated events and circumstances may affect the actual results. Projections are inherently subject to substantial and numerous uncertainties and to a wide variety of significant economic, and operational risks, and the assumptions underlying the projections may be inaccurate in material respects. In addition, unanticipated events and circumstances occurring after the approval of this Disclosure Statement by the Bankruptcy Court, including any natural disasters, terrorist attacks, or health epidemics, may affect the actual financial results achieved. Such results may vary significantly from the forecasts and such variations may be material.

12.    <u>Voting Requirements</u>.   If sufficient votes are not received, the Debtor may seek to confirm an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the holders of Allowed Claims as those proposed in the Plan.

13.   <u>Conversion into a Chapter 7 Case</u>.  If no plan of reorganization can be confirmed, the Debtor may choose to convert the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. Under section 1112(c) of the Bankruptcy Code, the Chapter 11 Case may not be converted to a case under chapter 7 without the Debtor's consent.

14.   <u>Dismissal of the Chapter 11 Case</u>.  If the Plan is not confirmed, the Debtor or other parties in interest may seek dismissal of the Chapter 11 Case pursuant to section 1112 of the Bankruptcy Code. Without limitation, dismissal of the Chapter 11 Case would terminate the automatic stay and might allow certain creditors to file lawsuits against the Debtor or take other action to pursue their Claims against the Debtor. Accordingly, the Debtor believes that dismissal of the Chapter 11 Case would significantly reduce the value of the Debtor's remaining assets.

15.   <u>Parties in Interest May Object to the Plan Based on Section 1129(a)(7) of the Bankruptcy Code</u>.  The Debtor need to satisfy the "best interests" test, embodied in section 1129(a)(7) of the Bankruptcy Code. The Debtor will be prepared at confirmation to address best interest test standards, including through the Liquidation Analysis, which shows that the Debtor satisfies the test, and/or through other expert testimony related to whether holders of Impaired Claims will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive in a liquidation under chapter 7. If the Bankruptcy Court determines that the Plan does not satisfy the requirements of the best interests test, the Plan may not be Confirmed or may only be Confirmed with modifications. If the Plan cannot be Confirmed because of this issue, the Debtor's options going forward may be limited to: (1) reaching agreement on a fully consensual plan; (2) satisfying the best interest of creditors test; (3) voluntary or involuntary dismissal; and, (4) voluntary conversion to Chapter 7.

B.   <u>Additional Factors</u>

1.   <u>Debtor Could Withdraw the Plan</u>.  Subject to, and without prejudice to, the rights of any party in interest, the Plan may be revoked or withdrawn before the Confirmation Date by the Debtor.

2.   <u>Debtor Has No Duty to Update</u>.  The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. Additionally, the Debtor has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

3.   <u>No Representations Outside this Disclosure Statement Are Authorized</u>.  No representations concerning or related to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than those contained in, or included with, this Disclosure Statement should not be relied upon in making the decision to accept or reject the Plan.

4. <u>No Legal or Tax Advice Is Provided by this Disclosure Statement</u>.  The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each holder of a Claim or Interest should consult its own legal counsel and accountant as to legal, tax, and other matters concerning their Claim or Interest. This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation of the Plan.

5. <u>No Admission Made</u>.  Nothing contained herein or in the Plan shall constitute an admission of, or shall be deemed evidence of, the tax or other legal effects of the Plan on the Debtor or holders of Claims or Interests.

## ARTICLE VIII
## CONCLUSION AND RECOMMENDATION

In the opinion of the Debtor, the Plan is preferable to all other available alternatives and provides for a larger and more timely distribution to the Debtor's creditors than would otherwise result from any other scenario.  Any alternative to Confirmation of the Plan, moreover, could result in extensive delays, increased administrative expenses, reduced financial performance, and a potential liquidation. Accordingly, the Debtor believes that the Plan provides the best available recovery to its stakeholders and urge the holders of Claims in the Voting Classes to vote in favor thereof.  The Debtor supports confirmation of the Plan and recommends that holders of Claims in the Voting Classes vote to accept the Plan.

[SIGNATURE PAGE TO FOLLOW]

59

**DIGITALSPEED COMMUNICATIONS, INC.**
as a Debtor and a Debtor-in-Possession


By:___*/s/ Adam Pasternack*_____
      Name:  Adam Pasternack
      Title:   President



**KARALIS PC**


By:___/s/ Aris J. Karalis_____
      Aris J. Karalis, Esquire
      Robert W. Seitzer, Esquire
      Robert M. Greenbaum, Esquire
      1900 Spruce Street
      Philadelphia, PA  19103
      215-546-4500
      Attorneys for the Debtor







[SIGNATURE PAGE TO DISCLOSURE STATEMENT]

## <u>EXHIBITS TO DISCLOSURE STATEMENT</u>

Exhibit A        Liquidation Analysis (to be supplied)

Exhibit B         Financial Projections (to be supplied)